**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOHN SKRANDEL, individually and on behalf of all others similarly Situated,

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

Defendant.

Case No. 9:21-cv-80826-AMC

CLASS ACTION

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................ 1

II. FACTUAL BACKGROUND AND ALLEGATIONS ........................................ 2

A. Costco and Its Membership Program ........................................ 2

B. The Interstate Batteries ........................................ 2

C. Costco's Uniform Conduct Relating to the Interstate Batteries ........................................ 3

D. Class Members' Damage ........................................ 4

III. ARGUMENT ........................................ 4

A. The Class Certification Threshold Requirements are Satisfied ........................................ 5

1. Plaintiff Possess Standing to Assert His Claims ........................................ 5

2. The Class is Adequately Defined and Ascertainable ........................................ 6

B. The Proposed Classes Satisfies the Rule 23(a) Requirements ........................................ 8

1. The Classes Are Sufficiently Numerous ........................................ 8

2. There Are Questions of Law and Fact Common to the Class ........................................ 8

3. Plaintiff's Claim Is Typical of the Classes' Claim ........................................ 9

4. Plaintiff and Counsel Are Adequate Class Representatives ........................................ 10

C. Class Treatment Is Appropriate Pursuant to Rule 23(b) ........................................ 12

1. Common Issues Predominate Over Any Individual Issues ........................................ 12

a. FDUTPA ........................................ 13

b. Breach of Express Warranty ........................................ 14

c. Breach of Implied Warranty ........................................ 14

d. Unjust Enrichment ........................................ 14

2. Class-Wide Damages Can Be Calculated ........................................ 16

3. Class Treatment Is a Superior Method of Adjudication ........................................ 18

a. Class Member Interests Are Supported by Class Treatment ........................................ 18

b. No Other Litigation Precludes Class Treatment ........................................ 19

c. It Is Desirable to Concentrate Litigation in This Forum ........................................ 19

d. Class Treatment Is Manageable ........................................ 19

IV. CONCLUSION ........................................ 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
321 F.R.D. 688 (S.D. Fla. 2017)........................................................................................10

*Alhassid v. Bank of Am.*, N.A.,
307 F.R.D. 684 (S.D. Fla. 2015)..........................................................................................6

*Allapattah v. Exxon Corp.*,
333 F.3d 1248 (11th Cir. 2003) ..........................................................................................9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................................................17

*Arlandson v. Hartz Mt. Corp.,*
792 F. Supp. 2d 691 (D.N.J. 2011) ....................................................................................16

*Bowe v. Pub. Storage*,
318 F.R.D. 160 (S.D. Fla. 2015)........................................................................................13

*Brown v. Brewer*,
No. CV 06–3731–GHK (JTLx), 2009 WL 1574556 (C.D. Cal. May 29, 2009)....................12

*Brown v. Electrolux Home Products, Inc.*,
817 F.3d 1225 (11th Cir. 2016) ..................................................................................13, 16

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
562 Fed. Appx. 782 (11th Cir. 2014). ...............................................................................5, 7

*Carriuolo v. GM Co.*,
823 F.3d 977 (11th Cir. 2016) ...................................................................................13, 14, 18

*Cheny v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003)..........................................................................................9

*Cherry v. Dometic Corp.*,
No. 19-13242, 2021 WL 346121 (11th Cir. Feb. 2, 2021)..............................................7, 19

*City of Rome, Georgia v. Hotels.com, LP*,
No. 4:05-CV-249-HLM, 2011 WL 13229684 (N.D. Ga. Mar. 21, 2011)..............................17

*City of St. Petersburg v. Total Containment, Inc.*,
265 F.R.D. 630 (S.D. Fla. 2010)........................................................................................17

*Connor v. Permanent Gen. Assurance Corp.*,
No. 9:20-CV-81979-WPD, 2022 WL 1642866 (S.D. Fla. April 11, 2022)...........................17

*County of Monroe v. Priceline.com, Inc.*,
265 F.R.D. 659 (S.D. Fla. 2010)......................................................................11, 15, 17, 19

*Cox v. Cmty. Loans of Am. Inc.*,
625 Fed. Appx. 453 (11th Cir. 2015) ..................................................................................4

*CV Relt, Inc. v. Levy*,
144 F.R.D. 690 (S.D. Fla. 1992)........................................................................................10

*Davis v. Powertel, Inc.*,
776 So.2d 971 (Fla. 1st DCA) ........................................ 14

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) ........................................ 5

*Dickens v. GC Servs. Ltd. P'ship*,
706 Fed. Appx. 529 (11th Cir. 2017) ........................................ 17

*Florida Power Corp. v. City of Winter Park*,
887 So.2d 1237 (Fla. 2004) ........................................ 15

*Fresco v. Auto Data Direct, Inc.*,
No. 03-61063-CIV, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ........................................ 11

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1986) ........................................ 5

*Hines v. Widnall*,
334 F.3d 1253 (11th Cir. 2003) ........................................ 11

*In re Checking Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011) ........................................ 13

*In re Checking Account Overdraft Litig.*,
281 F.R.D. 667 (S.D. Fla. 2012) ........................................ 10

*In re Checking Account Overdraft Litig.*,
286 F.R.D. 645 (S.D. Fla. 2012) ........................................ 17

*In re Checking Account Overdraft Litig.*,
MDL No. 2036, 2015 WL 3551527 (S.D. Fla. June 8, 2015) ........................................ 16

*In re Checking Account Overdraft Litig.*,
307 F.R.D. 630 (S.D. Fla. 2015) ........................................ 9, 13

*In re Checking Account Overdraft Litigation*,
307 F.R.D. 656 (S.D. Fla. 2015) ........................................ 14, 18

*In re J.P. Morgan Chase Bank Home Equity Line of Credit Litig.*,
794 F. Supp. 2d 859 (N.D. Ill. 2011) ........................................ 16

*James D. Hinson Elec. Constr. Co. v. BellSouth Telecomms., Inc.*,
275 F.R.D. 638 (M.D. Fla. 2011) ........................................ 16

*J W v. Birmingham Bd. of Educ.*,
904 F.3d 1248 (11th Cir. 2018) ........................................ 5

*Jones v. Jeld-Wen, Inc.*,
250 F.R.D. 685 (S.D. Fla. 2008) ........................................ 17

*Kennedy v. Tallant*,
710 F.2d 711 (11th Cir. 1983) ........................................ 19

*Kerr v. City of West Palm Beach*,
875 F.2d 1546 (11th Cir. 1989) ........................................ 13

*Kilgo v. Bowman Transp. Inc.*,
789 F.2d 859 (11th Cir. 1986) .......... 8

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) .......... *passim*

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) .......... 10

*Leszczynski v. Allianz Ins.*,

176 F.R.D. 659, 676 (S.D. Fla. 1997) .......... 17

*Little v. T-Mobile, USA, Inc.*,
691 F.3d 1302 (11th Cir. 2012) .......... 6

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013) .......... 8

*Miccosukee Tribe of Indians v. Florida State Athletic Comm'n*,
226 F.3d 1226 (11th Cir. 2000) .......... 5

*Mills v. Foremost Ins. Co.*,
269 F.R.D. 663 (M.D. Fla. 2010) .......... 10

*Muzuco v. Re$ubmitit, LLC,*
297 F.R.D. 504 (S.D. Fla. 2013) .......... 16

*Nadreau v. Lush Cosmetics NY, LLC*,
No. 2:10–CV–298–FtM–99SPC, 2012 WL 3852231 (M.D. Fla. Aug. 13, 2012) .......... 12

*Ohio State Troopers Ass'n v. Point Blank Enters.*,
347 F. Supp. 3d 1207 (S.D. Fla. 2018) .......... 4

*Overka v. Am. Airlines, Inc.*,
265 F.R.D. 14 (D. Mass. 2010) .......... 15

*Paris v. Progressive Am. Ins. Co.*,
No. 19-21761-CIV-DIMITROULEAS, 2020 WL 7039018 (S.D. Fla. Nov. 13, 2020) .......... 8

*Paxton v. Union National Bank*,
688 F.2d 552 (8th Cir. 1982) .......... 10

*Perez v. Metabolife Int'l, Inc.*,
218 F.R.D. 262 (S.D. Fla. 2003) .......... 6

*Prindle v. Carrington Mortg. Servs.*, LLC,
2016 U.S. Dist. LEXIS 112881 (M.D. Fla. Aug. 24, 2016) .......... 12

*Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co.*, No. 19-61422-CIV-CANNON,
2021 WL 4990313 (S.D. Fla. Sept. 22, 2021) .......... 6

*Reyes v. BCA Fin. Servs.*,
2018 U.S. Dist. LEXIS 106449 (S.D. Fla. Jun. 26, 2018) .......... 6

*Reyes v. BCA Fin. Servs.*,
2018 U.S. Dist. LEXIS 106449 (S.D. Fla. Jun. 26, 2018) .......... 6

*Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.*,
601 F.3d 1159 (11th Cir. 2010) .......................................................................... 9, 17

*Singer v. AT & T Corp.,*
185 F.R.D. 681 (S.D. Fla. 1998)............................................................................. 16

*Teahl v. Lazy Flamingo, Inc.*,
2016 U.S. Dist. LEXIS 99440 (M.D. Fla. Jun. 21, 2016) ....................................................... 6

*Terrill v. Electrolux Home Prods.*,
295 F.R.D. 671 (S.D. Ga. 2013) ............................................................................... 6

*United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*,
220 F.R.D. 672 (S.D. Fla. 2004)......................................................................... 8, 16

*Upshaw v. Ga. Catalog Sales, Inc.*,
206 F.R.D. 694 (M.D. Ga. 2002)............................................................................. 18

*Valley Drug Co. v. Geneva Pharms., Inc.*,
350 F.3d 1181 (11th Cir. 2003) ............................................................................. 12

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ........................................................................... 4, 9

*Venerus v. Avis Budget Car Rental, LLC*,
723 Fed. Appx. 807 (11th Cir. 2018) ........................................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)......................................................................................... 10

*Washington v. Brown & Williamson Tobacco Corp.*,
959 F.2d 1566 (11th Cir. 1992) .............................................................................. 4

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ......................................................................9, 10, 11

*Williams v. Wells Fargo Bank, N.A.*,
280 F.R.D. 665 (S.D. Fla. 2012)............................................................................. 18

Plaintiff John Skrandel ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), seeks an order granting class certification, and in support, states as follows.

## I. INTRODUCTION

The public understands that when a "free" replacement warranty offer is made upon the purchase of a product that the consumer will pay *nothing* to obtain a replacement product when it is returned within the warranty period. "Free means free," says the FTC—it's that simple. So, too, are the facts and theories of liability in this case, making it ideally suited for class treatment.

Plaintiff John Skrandel ("Mr. Skrandel") seeks certification of narrowly-defined, ascertainable classes comprising thousands of customers of Defendant Costco Wholesale Corporation ("Costco" or "Defendant") who, like him, purchased an Interstate-branded battery bearing a "Free Replacement" warranty on its main display panel ("Interstate Battery") from one of Costco's warehouses. Also, like Mr. Skrandel, each member of the below-defined classes ("Class members") returned his or her Interstate Battery to Costco within its warranty period, yet was required to pay out of pocket to obtain a "free replacement" battery. While the merits of Plaintiff's claims are not at issue at this stage, Costco admitted in its Amended Answer to Plaintiff's Class Action Complaint [ECF No. 29] ("Answer") that Plaintiff was wrongfully charged for his replacement battery (*id.* at ¶¶6, 25, 30, 32-33), and that Class members should not have paid any out-of-pocket cost to replace an Interstate Battery under the warranty (*id.* at p. 22).

The record amply establishes that Plaintiff's claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of express warranty, breach of implied warranty of good faith and fair dealing, and unjust enrichment will be determined on the basis of common evidence of Costco's admitted misconduct.[1] None of these claims involve individual issues of reliance, and the facts underlying each claim are materially-identical for all Class members. Questions related to both lability and damages are not only common, but *identical* as well. And, because Class members' Interstate Battery transactions were made using their Costco membership cards and logged into Costco's systems, Class members can be seamlessly identified and their exact damages calculated from Costco's records.

---

[1] Plaintiff's claims for violation of FDUTPA, breach of express warranty, and breach of implied warranty are brought on behalf of a Florida class, while the unjust enrichment claim is brought on behalf of a National class. Plaintiff is not moving to certify his fraudulent concealment claim.

Based on the above core, common facts, and for the reasons set forth below, Plaintiff seeks certification of the following classes:

> All Costco members, persons or entities that purchased an Interstate-branded battery with the words "Free Replacement" on the label (the "Interstate Batteries") at a Costco location in the State of Florida who: (a) returned the Interstate Battery to Costco within the warranty period, and (b) incurred an out-of-pocket cost to obtain a replacement Interstate-branded battery (the "Florida Class")

> All Costco members, persons or entities in the United States (including its Territories and the District of Columbia) that purchased an Interstate-branded battery with the words "Free Replacement" on the label (the "Interstate Batteries") at a Costco location who: (a) returned the Interstate Battery to Costco within the warranty period, and (b) incurred an out-of-pocket cost to obtain a replacement Interstate-branded battery (the "National Class")

Plaintiff further requests that the Court appoint him as Class Representative and his counsel as Class Counsel, and direct the parties to submit a notice plan pursuant to Fed. R. Civ. P. 23(c).

## II. FACTUAL BACKGROUND AND ALLEGATIONS

### A. Costco and Its Membership Program

Costco is the second largest retailer in the world and operates a chain of 559 retail stores (referred to as "warehouses") in the United States, including 28 throughout the state of Florida. Class Action Complaint ¶13.[2] [redacted]

### B. The Interstate Batteries

Costco began selling Interstate-branded batteries in 2014. ¶20. *See also* Deposition of Robert Moyer, dated May 27, 2022 ("Moyer Depo."), attached as **Exhibit D**, at 25:20-23, 44:17-

---

[2] References to "¶_" are to the Class Action Complaint [Dkt. No. 1] ("Complaint").

22. From 2014 to 2019, each Interstate-branded battery sold at Costco's warehouse contained a label bearing the words "Free Replacement" on its main display panel (*i.e.*, the Interstate Batteries), which Costco referred to as a "warranty" on its price tag for the Interstate Battery at the point of sale (¶21):






*See also* Costco_000172-173 and Costco_000175, attached as **Exhibit E** (showing the form labels used by Costco for the Interstate Batteries during the relevant period)

There was no written warranty document that described the "Free Replacement" warranty. Deposition of Chris Herbig, dated May 20, 2922, (Herbig Depo."), attached as **Exhibit F**, at 112:11-18. The only written warranty document that existed at that time was the Costco Limited Battery Warranty. *See id.* at 113:3-10. There were no qualifying limitations to the "Free Replacement" warranty on the Interstate Battery labels. *See* Herbig Depo. At 46:25-47:5. Neither Costco nor the Interstate Battery's label disclosed any terms or conditions that applied to the "Free Replacement" warranty, or directt customers to a location where such additional information could be found, prior to or at the point of sale. ¶22; Berndt Depo. at 70:17-71:15. Costco discontinued selling the Interstate Batteries in approximately October 2019, when it began selling Interstate-branded batteries bearing the words "LIMITED WARRANTY REPLACEMENT" on their main display panels, which, contrary to the display panels of the "Free Replacement" Interstate Batteries, directed customers to Costco's website "[f]or complete warranty information." ¶30; *see* Costco_000171, attached as **Exhibit G**; *Herbig Depo.* at 60:21-61:6.

**C. <u>Costco's Uniform Conduct Relating to the Interstate Batteries</u>**

While Costco represented to Plaintiff and Class members that a "Free Replacement" "warranty" accompanied the purchase of an Interstate Battery, Costco does not have an exchange process. *See* Berndt Depo. at 61:23-25; 127:11-14; Herbig Depo. at 42:20-43:8; Kang Depo. at 38:3-4. Thus, as set forth in Costco's Refund Manual (excerpts attached as **Exhibit H**), it is Costco's policy that if an Interstate Battery is returned under the "Free Replacement" warranty,

Costco will refund the original purchase amount, and if the customer chooses to purchase another battery and the price is different, Costco is to override the price of the new purchase so the replacement battery is the same price as the original Interstate Battery. *See* Berndt Depo. at 93:22-25; Herbig Depo. at 34:4-9; Kang Depo. at 19:1-8. The manual is the only document setting forth Costco's policies and procedures for the return of Interstate Batteries. Kang. Depo. at 30:24-31:6.

Despite the "Free Replacement" representation and Costco's return policy set forth in its Refund Manual (which applied uniformly in all Costco warehouses), Costco did not provide Plaintiff and Class members with a free replacement battery when they returned their Interstate Batteries during the applicable warranty period. ¶27-33. Instead, Costco refunded its members the purchase price of the original Interstate Battery and then charged them for a replacement battery *at an increased purchase price*. *See* Kang Depo. at 31:7-12. That is, Costco never provided a "free replacement" battery under the "Free Replacement" warranty when the price of the replacement battery it stocked at the time of return is more than the original Interstate Battery purchase. Costco does admit that its practice is wrong and that customers who purchased Interstate Batteries and who incurred an out-of-pocket cost for their replacement batteries during the warranty period were overcharged (and therefore damaged), by that amount. *See* Answer at ¶¶6, 25, 30, 32-33 ("Costco admits that its records show that an error led to Plaintiff paying $2.00 for his replacement battery."); *id.* at p. 22 ("Costco did not intend for Plaintiff or consumers to pay any money out-of-pocket to replace a defective Interstate Battery when returned within the applicable warranty period."); Kang Depo. 31:7-12.

**D. <u>Class Members' Damage</u>**

Plaintiff and Class members have all suffered the same damage—they paid out-of-pocket to replace their Interstate Batteries when they should have received a "free replacement" battery under the Interstate Batteries' "Free Replacement" warranty. Thus, as set forth in greater detail in the Expert Report of Bo Martin, Ph.D. ("Martin Report"), attached as **Exhibit I**, damages can be calculated in the same manner for each Class member by identifying from Costco's transactional data the difference in amount paid by each Class member for a replacement battery in excess of the price of their originally purchased Interstate Battery.

## III. <u>ARGUMENT</u>

A district court has broad discretion in determining class certification. *See, e.g.,*

*Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).[3] To certify a class, the named plaintiff must have standing, all Rule 23(a) requirements must be satisfied, and at least one Rule 23(b) subsection must be satisfied. *See, e.g., Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Courts should analyze the merits of the pleadings to the extent necessary to determine whether the Rule 23 requirements are satisfied, *see, e.g., Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1218 (S.D. Fla. 2018), but not to "engage in free-ranging merits inquiries at the certification stage." *Cox v. Cmty. Loans of Am. Inc.*, 625 Fed. Appx. 453, 455 (11th Cir. 2015).

## A. <u>The Class Certification Threshold Requirements are Satisfied</u>

To certify a case for class treatment, courts must find two threshold requirements are met: first, that the proposed representative possesses standing to assert each claim, and second, that the class is adequately defined and ascertainable.

### 1. Plaintiff Possesses Standing to Assert His Claims

The first threshold question is whether the plaintiff possesses Article III standing to assert each claim, which in this case are claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), breach of express warranty, breach of implied warranty, and unjust enrichment. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1986); *J W v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1272 (11th Cir. 2018) (that a suit is brought as a class action "adds nothing to the question of standing").

To satisfy Article III, a plaintiff must allege a redressable injury-in-fact that is traceable to the defendant's conduct. *Miccosukee Tribe of Indians v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1228 (11th Cir. 2000) (setting forth the three-part test for constitutional standing). Here, Plaintiff purchased an Interstate Battery with a "Free Replacement" warranty, and Costco charged him more than the original purchase price of his Interstate Battery for a "free" replacement battery. *See, e.g.*, Deposition of John Skrandel ("Skrandel Depo."), attached as **Exhibit J**, at 20:8-12; 66:12-17; 105:5-11. Plaintiff asserts that Costco's conduct constitutes an unfair and deceptive trade practice, breach of the express warranty set forth in the "Free Replacement" warranty, breach of the implied warranty of good faith and fair dealing, and that he has suffered damages as a result of this conduct. *Id.* at 92:4-95:16. Plaintiff also asserts that Costco has been unjustly enriched by this

---

[3] Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

practice, to Plaintiff's detriment. *See* ¶¶79-83. By alleging that he has been damaged as a result of Costco's conduct, Plaintiff has established Article III standing. *See Venerus v. Avis Budget Car Rental, LLC*, 723 Fed. Appx. 807, 813-14 (11th Cir. 2018); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury.").

**2. The Class Is Adequately Defined and Ascertainable**

Ascertainability of the members comprising a proposed class is considered before embarking on an analysis of the Rule 23 requirements for class certification. *See Little v. T-Mobile, USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Because ascertainability is designed to aid the determination of whether proper notice is directed to class members, ascertainability is a "narrow inquiry." *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, at *28-30 (S.D. Fla. Jun. 26, 2018). "A class is clearly ascertainable if we are certain that its membership is capable of being determined." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. Feb. 2, 2021) (holding "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination."). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co.*, No. 19-61422-CIV-CANNON, 2021 WL 4990313, at *4 (S.D. Fla. Sept. 22, 2021) (quoting *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014)). Plaintiff easily satisfies this standard.

Here, there is no question the Classes can be ascertained by objective criteria. Costco has produced transaction data—*i.e.*, objective criteria—that can identify members of the Classes defined in the Complaint. Martin Report at ¶11. The identification of Class members can be achieved despite Costco's lack of a process to record the exchange of an Interstate Battery as a single record in its transactions data.[4] *Id.* Instead, this identification reasonably uses patterns in the transactions electronic data that clearly indicate a return and replacement causing damage to the Class member occurred. *Id.* [redacted]

---

[4] Per deposition testimony, ". . . because of the system's limitations that we have where we don't have an exchange program, so the way that we replace it is by giving you a refund and you're going to repurchase another one." Berndt Depo. at 93:22-25.

[redacted]

Moreover, because every Class member purchased an Interstate Battery and was not provided with a free replacement battery when the Interstate Battery was returned during the warranty period, the Classes are not overbroad. *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (class definition should not be overly broad, amorphous, or vague); *Terrill v. Electrolux Home Prods.*, 295 F.R.D. 671, 684 (S.D. Ga. 2013) (class definition tailored to include those who suffered harm as alleged in complaint is not overbroad) *rev'd on other grounds* 2016 U.S. App. LEXIS 5112 (11th Cir. Mar. 21, 2016). Costco cannot claim the Classes are fail-safe because class membership is not defined by reference to the merits of Plaintiff's claims – *e.g.*, Costco's failure to provide Class members with a free replacement battery may or may not constitute a breach of express warranty, and class membership is not defined such that membership depends on whether this Court determines that a breach occurred. *See, e.g., Alhassid v. Bank of Am.*, N.A., 307 F.R.D. 684, 694 (S.D. Fla. 2015) (finding proposed classes were unascertainable where and impermissibly fail-safe where defendant's liability was the essential element in class composition). Finally, because it is clear who is and is not a member of the Classes, the Class definitions are not vague or amorphous. *See, e.g.*, *Teahl v. Lazy Flamingo, Inc.*, 2016 U.S. Dist. LEXIS 99440, at *15-16 (M.D. Fla. Jun. 21, 2016) (class was not vague because it made clear who

---

[5] Since the warranty period was 36 months or 42 months depending on location of the warehouse for the purchase, damages may still be occurring for Households and the Classes are not yet closed.

qualified as a class member and was not difficult to apply).

**B. <u>The Proposed Classes Satisfies the Rule 23(a) Requirements</u>**

After considering the threshold issues, "the analysis shifts to the requirements of Fed. R. Civ. P. 23." *United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*, 220 F.R.D. 672, 684 (S.D. Fla. 2004). First, a plaintiff must satisfy the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy. *Id.*

**1. The Classes Are Sufficiently Numerous**

"To establish numerosity, [a plaintiff] must show that 'the class is so numerous that joinder of all members is impracticable.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013); Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Rule 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno*, 289 F.R.D. at 684; *see also Kilgo v. Bowman Transp. Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"). In the Eleventh Circuit, "'[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003). "Thus, the 'sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied.'" *Paris v. Progressive Am. Ins. Co.*, Case No. 19-21761-CIV-DIMITROULEAS, 2020 WL 7039018, at *6 (S.D. Fla. Nov. 13, 2020). Here, [redacted]. The members of the Classes are therefore so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Numerosity is clearly satisfied.

**2. There Are Questions of Law and Fact Common to the Class**

"Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Satisfying the commonality requirement is a "low hurdle" under Fed. R. Civ. P. 23(a)(2). *Id.* at 1356. "Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality." *Martinez v. Wells Fargo Bank, N.A. (In re Checking Account Overdraft Litig.)*, 307 F.R.D. 630, 640 (S.D. Fla. 2015). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega*, 564 F.3d at 1268.

Here, Costco uniformly sold the subject Interstate Batteries with the words "Free Replacement" on the label and with a "Free Replacement" warranty that was available during the applicable period. *See* section II.B, *supra*. This litigation centers on Costco's failure to provide Plaintiff and Class members with a free replacement battery under the "Free Replacement" warranty when they returned their Interstate Batteries during the warranty period.

Commonality is satisfied in this case because whether Costco's failure to provide Plaintiff and Class members with free replacement batteries when their Interstate Batteries were returned during the warranty period constitutes a deceptive and unfair trade practice, breach of express warranty, breach of implied warranty, and unjust enrichment are common questions of law, for which interpretation of the uniform Free Replacement Warranty language will provide a common answer for the entire putative Class. *See, e.g., Allapattah v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (commonality established where the court interpreted materially similar contracts); *Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 671 (M.D. Fla. 2010) (Commonality requirement "will often be satisfied in cases of form contracts such as insurance policies, so long as the policy documents are uniform or largely the same throughout the case.").

Resolution of these common issues "will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355. Even if this was the only common question, it would satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]"). *Id.; see also Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (The commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."); *CV Relt, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992) ("Factual differences concerning treatment of damages will not defeat a finding of commonality."). Thus, commonality is satisfied.

**3. Plaintiff's Claim Is Typical of the Classes' Claim**

To demonstrate Fed. R. Civ. P. 23(a)(3) typicality, a plaintiff should "demonstrate that a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017). Thus, "[t]he claim of a class

representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

Rule 23(a)(3) typicality is satisfied where a plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 675 (S.D. Fla. 2012). "Moreover, if the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *Id.*; *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.").

Costco's practices described herein are uniform. Costco sold Interstate Batteries containing a Free Replacement Warranty to all putative Class members during the applicable warranty period; when putative Class members returned their Interstate Batteries to Costco, Costco did not give them a free replacement battery, but rather, refunded or voided the transaction of the original purchase price; and then Costco sold putative Class Members a replacement battery at a higher price than the original Interstate Battery.

Likewise, Plaintiff's and Class members' claims are based on the same legal theories—that Costco's failure to provide Plaintiff and Class members with a free replacement battery under the "Free Replacement" warranty is an unfair and deceptive trade practice, breach of an express warranty, breach of the implied warranty of good faith and fair dealing, and unjust enrichment. *See Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) ("[T]ypicality measures whether a significant nexus exists between claims of the named representative and those of the class at large."); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 668 (S.D. Fla. 2010) (typicality met where class representative's claim was premised on the same injury as class members and subject to class-wide proof). Plaintiff and Class members' claims are also subject to the same defenses, meritorious or not. *Williams*, 568 F.3d at 1356-57. There is no record evidence of unique claims or defenses precluding a typicality finding. Plaintiff's claims are typical.

**4. Plaintiff and Counsel Are Adequate Class Representatives**

Finally, Fed. R. Civ. P. 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of

the proposed class representatives are not antagonistic to the interests of the class. *See, e.g., Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *2 (S.D. Fla. May 14, 2007).

Here, Plaintiff is knowledgeable about the nature of this case and is ready and able to serve as a class representative in this action. *See, e.g.*, Skrandel Depo. at 92:4-95:16; 109:6-9; 110:25-111:12; 111:18-19. Plaintiff, himself an attorney, is seeking to serve as a class representative on behalf of a National Class and a Florida Class of persons or entities who purchased Interstate Batteries at Costco and were not provided with a free replacement battery when they were returned to Costco during the applicable warranty period. *Id.* at 10:12-13, 107:21-108:1. Plaintiff understands that he, as the class representative, will have the duty to represent the interests of all unnamed class members. *Id.*; *see also id.* at 109:18-20. Plaintiff has dedicated a significant amount of time to this matter, including working with his counsel and providing answers to interrogatories and producing documents in response to Costco's request for production of documents in this matter and being deposed. *Id.* at 48:1-17; 49:2-13; 111:20-25; 177:16-19; 119:6-8; 119:16-19; 120:10-121:13. Plaintiff has also remained informed as to the status of the case. *Id.* at 112:13-113:16. In addition to having testified at his deposition, Plaintiff is willing to make himself available to testify at a trial and to consider and review a potential settlement with Costco on behalf of the Classes. *Id.* at 112:2-12.

The interests of Plaintiff and the members of the Class are fully aligned in seeking all available remedies stemming from Costco's failure to provide Plaintiff and Class members with a free replacement battery when they returned their Interstate Batteries during the applicable warranty period. Plaintiff has demonstrated his adequacy by producing discovery responses, becoming knowledgeable about the nature of the litigation, keeping informed about the status of the case, and declaring his willingness to testify at trial. *See Nadreau v. Lush Cosmetics NY, LLC*, No. 2:10–CV–298–FtM–99SPC, 2012 WL 3852231, at *5 (M.D. Fla. Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 3853443 (M.D. Fla. Sept. 5, 2012); *Brown v. Brewer*, No. CV 06–3731–GHK (JTLx), 2009 WL 1574556, at *4 (C.D. Cal. May 29, 2009).

Plaintiff is committed to protecting the interests of the Classes by prosecuting the action, as seen by his prosecution of the claims through the counsel he retained and engagement in the discovery process. *See Prindle v. Carrington Mortg. Servs.*, LLC, 2016 U.S. Dist. LEXIS 112881, at *19-20 (M.D. Fla. Aug. 24, 2016). There is no suggestion that any conflict of interests exists, and there is no threat that action in this litigation could benefit some class members while harming

others. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (a conflict precluding class representation addresses situations where "some party members claim to have been harmed by the same conduct that benefitted other members of the class.").

Plaintiff also satisfies the second prong of the adequacy requirement by retaining counsel with significant experience in prosecuting class actions, including consumer protection class actions. *See* Firm Resumes of Kopelowitz Ostrow Ferguson Weiselberg Gilbert and Gordon & Partners, P.A., attached as **Composite Exhibit K**. Thus, Plaintiff and his counsel will protect the interests of the class and adequately prosecute the claim. The adequacy of the representation requirement is clearly met.

**C. <u>Class Treatment Is Appropriate Pursuant to Rule 23(b)</u>**

Plaintiff seeks certification pursuant to Rule 23(b)(3), which permits class treatment where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . [class treatment] is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Common Issues Predominate Over Any Individual Issues**

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *In re Checking Overdraft Litig.*, 275 F.R.D. 666, 676 (S.D. Fla. 2011). "Determining whether common questions of law or fact predominate over questions affecting only individual members . . . requires a showing that 'the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject only to individualized proof.'" *Bowe v. Pub. Storage*, 318 F.R.D. 160, 176 (S.D. Fla. 2015); *see Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (common issues predominate where subject to generalized proof). An absence of individual issues is not necessary. *See, e.g.*, *Carriuolo v. GM Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (that certain questions may be common to some but not all class members does not defeat predominance; at most, it might merit creation of subclasses); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) ("it is not necessary that all questions . . . be common, but only that some questions are common and that they predominate over individual questions").

The Eleventh Circuit has articulated the test for predominance as follows:

[I]f common issues truly predominate over individualized issues in a lawsuit, then

> the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered . . . If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1235 (11th Cir. 2016).

Plaintiff satisfies his burden to show that common issues predominate because the core issues at the heart of this litigation center around Costco's scheme to offer a "Free Replacement" warranty and then charge members to obtain replacement batteries when their Interstate Batteries were returned during the warranted period. Any analysis of this scheme will depend on evidence relating to the standardized Free Replacement Warranty affecting all Class members in a uniform manner. "Predominance is 'a test readily met in certain cases alleging consumer ... fraud,' particularly where, as here, uniform practices and misrepresentations give rise to the controversy." *In re Checking Account Overdraft Litigation*, 307 F.R.D. 656, 673 (S.D. Fla. 2015).[6]

***a. FDUTPA***

The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Carriuolo*, 823 F.3d at 983. Critically, "[a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue. Hence, the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist in the present case." *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. 1st DCA). Rather, whether Costco's conduct constitutes a deceptive act turns on whether its conduct in charging its members an out-of-pocket cost to obtain their "free replacement" battery was "likely to mislead customers," *Carriuolo*, 823 F.3d at 984, a question common to the putative Class members.

Here, because each member of the Florida Class purchased an Interstate Battery, returned

---

[6] Although Costco has not set forth evidence to support its affirmative defenses, they nonetheless do not defeat certification because they raise common question of proof that predominate over individualized issues. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 307 F.R.D. at 650-651 (statute of limitations, failure to mitigate). And even if Costco had evidence supporting its defense of "consent or authorization" with regard to some Class members, "the presence of individualized defenses against a small number of class members would not destroy the predominance of common liability questions." *Id.* Moreover, Costco's "good faith conduct" and "bona fide error" defenses, to the extent they even apply to Plaintiff's claims, turns on *Costco's* conduct and, therefore, both defenses are common to all Class members.

the Interstate Battery during the warranty period, and incurred out-of-pocket costs to obtain a replacement battery, "it does not matter that there may have been differences among the class members' subjective reliance." *Id.* at 986. "Moreover, because the injury is not determined by the plaintiffs' subjective reliance on the alleged inaccuracy, causation and damages may also be amenable to class-wide resolution." *Id.* Indeed, "FDUTPA damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* And while individual determinations of damages do not defeat class certification, *see, e.g.*, *Carriuolo*, 823 F.3d at 988, "there is no evidence to suggest that the class-wide adjudication of any FDUTPA liability will be subsumed in or overwhelmed by an individualized damages inquiry" here. *Id.* at 989.

***b. Breach of Express Warranty***

Common issues of law and fact also predominate as to Plaintiff's breach of express warranty claim. In connection with the purchase of all Interstate Batteries, and as detailed above, Costco promised Plaintiff and the Florida Class members a free replacement battery of their Interstate Batteries during the warranted period. As discussed in section II.B., *supra*, the "Free Replacement" warranty was uniform and issued directly from Costco to Plaintiff and each Florida Class member with the purchase of their Interstate Batteries. Whether Costco's "Free Replacement" warranty constitutes an express warranty under section Fla. Stat. § 672.313(a) and (b), and whether Costco breached this express warranty by failing to replace the Interstate Batteries at no cost within the warranty period are common issues that can be decided one time.

***c. Breach of Implied Warranty***

Plaintiff and Florida Class members' implied warranty claims also satisfy the predominance inquiry. The only real issue for determination is whether Costco breached the implied warranty of good faith and fair dealing accompanying the sale of its Interstate Batteries when it offered a "Free Replacement" warranty and then charged consumers to obtain replacement batteries for their Interstate Batteries during the warranted period in violation of the warranty. This is clearly a common issue that should be decided on a class-wide basis. Accordingly, Plaintiff and the Florida Class members' breach of implied warranty claim satisfies the predominance inquiry.

***d. Unjust Enrichment***

Common issues of law and fact will also predominate in the resolution of Plaintiffs' claim

for unjust enrichment. Under Florida law, the "elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it in equitable for him to retain it without paying the value thereof." *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004). Further, the claim involves three universal elements, which are "substantially similar" among states: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant accepted or retained the benefit, and (3) under the circumstances, it would be unjust for the defendant to keep the benefit. *See, e.g.*, *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20-21 (D. Mass. 2010); *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011); *In re J.P. Morgan Chase Bank Home Equity Line of Credit Litig.*, 794 F. Supp. 2d 859, 885 (N.D. Ill. 2011).

It is not surprising, then, that this Court has observed that the law of unjust enrichment is materially uniform throughout the United States. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 & n.40 (S.D. Fla. 2004) (certifying multi-state unjust enrichment class after finding that "[t]he standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical" and that minor variation in states' laws "present[ed] no obstacle to class certification"); *Singer v. AT & T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (certifying nationwide unjust enrichment claims stating that the elements of the claim were "materially the same throughout the United States"). More recently, the Court certified a near-national unjust enrichment class, concluding that "[t]here is general agreement among courts that the minor variations in the elements of unjust enrichment under the laws of the various states ... are not material and do not create an actual conflict." *In re Checking Account Overdraft Litig.*, MDL No. 2036, 2015 WL 3551527, at *16 (S.D. Fla. June 8, 2015).

As with Plaintiff's other claims, unjust enrichment will rise and fall on the common evidence of Costco's course of conduct—selling members Interstate Batteries with a "Free Replacement" warranty and then charging those members an out-of-pocket cost to obtain their "free" replacement" batteries—and the resulting unjust retention of the proceeds of its conduct. First, because Class members transacted directly with Costco, it is not open to dispute that they conferred a benefit upon Costco when they paid the incurred an out-of-pocket cost to obtain their "free" replacement battery. Second, for the same reason, there can be no dispute that Costco retained the benefits conferred from the sale of the replacement batteries to all Class members. The fact of Costco's retention of benefits is plainly common to the National Class. Third, whether

Costco's retention of any benefits is inequitable or unjust is common to all Class members. Given those proceeds were obtained from sales that follow a uniform conduct common to all class members, "it is difficult to conceive of any significant equitable differences between the class members." *James D. Hinson Elec. Constr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011). This is because the unjust enrichment claim here focuses on the conduct of Costco, and Costco's "business operations are the same to all members of the putative class." *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013) ("Where, as here, highly individualized issues are absent, class certification for an unjust enrichment claim is appropriate."). *See also In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012) ("Unjust enrichment claims can be certified for class treatment where there are common circumstances bearing on whether the defendant's retention of a benefit received from class members was just or not."). Here, as in the above cases, "class-wide proof is available to show that [Costco] deliberately concealed from all customers important information about [Interstate Batteries] . . . factors which bear on the justness of [Costco's] retention of the [monetary gain] it collected as a result." *Id.*

While the Eleventh Circuit has found that unjust enrichment claims are sometimes inappropriate for class-wide resolution, *see, e.g., Klay*, 382 F.3d at 1241, its "underlying concern is that unjust enrichment claims typically require individualized inquiries into the equities of each class member's interaction with each defendant." *Cnty. of Monroe, Fla.*, 265 F.R.D. at 671. But here, there are no significant equitable differences between the Class members; indeed, *all the evidence* in this case shows that Costco's business practices are the same to all members of the putative Classes, and therefore, any findings of liability would be uniform across the Classes. *See Connor v. Permanent Gen. Assurance Corp.*, No. 9:20-CV-81979-WPD, 2022 WL 1642866, at *10 (S.D. Fla. April 11, 2022) (certifying unjust enrichment claim where there no significant equitable differences between class members and defendant's business practices were the same to all members of the class, thus any finding of liability would be uniform across the class); *City of Rome, Georgia v. Hotels.com, LP*, No. 4:05-CV-249-HLM, 2011 WL 13229684, at *23 (N.D. Ga. Mar. 21, 2011) (same); *Cty. of Monroe, Fla.*, 265 F.R.D. at 671 (same). Here, predominance is met given the nature and factual basis of Plaintiff's claim.

**2. Class-Wide Damages Can Be Calculated**

As for the Plaintiff and Class members' damage claims, damages can be quantified using the same transactional data identified through the return and replacement pattern discussed above.

*See* section III.2.b, *supra*; Martin Report at ¶11. Given this automated method of precisely identifying a Class member and calculating their exact damages, the same method can be used to identify all Class members and to calculate their individual damages from the transactions. *Id.* at ¶12. And, while the *amount* of damages may vary (because, for example, Class members paid varying amounts for their original Interstate Batteries and/or their replacement batteries), the *measure* of damages is a common issue, and it is the methodology that matters for purposes of predominance, not the actual calculated amount. *See Klay*, 382 F.3d at 1259-60 ("[W]here damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."); *see also Newberg on Class Actions* § 12:2 ("a common method for showing individual damages—a simple formula could be applied to each class member's … records—[is] sufficient for the predominance and superiority requirements to be met."). The fact that each member of the Classes may have suffered different amounts of damages does not alter this analysis. *See Brown*, 817 F.3d at 1239 ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'"). This was confirmed in *Allapattah Servs., Inc.*, where the Eleventh Circuit held that "[w]hether [the defendant] breached that obligation was a question common to the class and the issue of liability was appropriately determined on a class-wide basis" under uniform contracts." 333 F.3d at 1248. This was notwithstanding questions of whether there were individualized damages. *Id.* ("Based upon the facts of this case, we believe that Exxon's liability to the class for breach of the dealer agreements predominated over the individual issues relating to damages.").

After adjudicating class-wide issues, all that will remain will be the ministerial, electronic calculation of damages utilizing Costco's own records and computer data—certainly, there will be no need for individualized proof concerning "most or all" of the elements of the claims. *See Klay*, 382 F.3d at 1255. Aggregate damages for all Class members, along with pre-judgment interest calculations, will be proven on summary judgment or at trial, and individual damages can be electronically calculated and confirmed in a supervised post-judgment process. *Id.* at 1273 (district courts may appoint magistrate to "preside over individual damages proceedings"); *see also* Martin Report at ¶12. Thus, predominance is easily met here.

### 3. Class Treatment Is a Superior Method of Adjudication

Fed. R. Civ. P. 23(b)(3) also requires that class treatment be superior to alternative methods of litigation. The focus is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Systems, Inc.*, 601 F.3d at 1183–84. Generally, where common issues predominate, class treatment is superior because "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id*. at 1184.

"To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 695 (S.D. Fla. 2008); *see also City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 657 (S.D. Fla. 2010). Each factor demonstrates the superiority of class treatment over other methods of adjudication for the claims alleged in this litigation.

#### ***a. Class Member Interests Are Supported by Class Treatment***

The typical claim of each Class member here is relatively small when compared to the cost of litigating the claims against Costco, the second largest retailer in the world. *See Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 676 (S.D. Fla. 1997) ("Class actions are particularly appropriate, where… multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs."); *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 538 (11th Cir. 2017) (reversing denial of class certification because, *inter alia*, district court failed to consider that "low per-class-member recovery militates in favor of class adjudication."). The fact that individual recovery is low is virtually dispositive of superiority. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("While…Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.");

This Court has made clear that where the potential recovery is relatively small, the inevitable conclusion is that class members cannot have an interest in individual prosecution of a

claim for which the recovery would not justify such prosecution. *See In re Checking Account Overdraft Litig.*, 307 F.R.D. at 678 ("Nearly all of the Class members in these actions have claims that are so small that…there is no reason to believe that the Class members have any particular interest in controlling their own litigation."). This factor clearly counsels in favor of class treatment. *See Carriuolo*, 823 F.3d at 989 (S.D. Fla. 2016) (superiority met where "individual claims may be too small for a separate action by each class member"); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012) ("Since the damage amounts allegedly owed to each individual defendant are relatively low . . . the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits."). Thus, there is no other practical method of adjudicating these claims.

***b. No Other Litigation Precludes Class Treatment***

There are no other actions in which a plaintiff alleges that Costco wrongly failed to provide a free replacement battery when an Interstage Battery was returned during the applicable warranty period. Thus, this factor favors class certification. *Klay*, 382 F.3d at 1269 (that other class members had not filed similar individual litigation meant second factor favored finding of superiority).

***c. It Is Desirable to Concentrate Litigation in This Forum***

The Southern District of Florida is well equipped to handle class actions. Additionally, class treatment will conserve judicial resources and offers "substantial economies of time, effort and expense" for the parties. *Klay*, 382 F.3d at 1280; *see also, e.g.*, *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("Even if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources."). Because the case is subject to generalized proof and common issues of liability and damages, it makes little sense to require individual class members to litigate the same issue over and over again, even if they were inclined to do so for the low amount at issue. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). This factor also militates in favor of class treatment.

***d. Class Treatment Is Manageable***

As an initial matter, manageability concerns will rarely suffice to preclude class treatment. *Klay*, 382 F.3d at 1272 (manageability "will rarely, if ever, be in itself sufficient to prevent certification of a class."). Moreover, the crux of liability in this case is determined by the

interpretation of the uniform "Free Replacement" warranty language on the label of the Interstate Batteries and damages will be determined by simple formulas. On this record, the case is ideal for class treatment. *See, e.g., Cty. of Monroe, Fla.*, 265 F.R.D. at 672 ("Given the number of issues subject to class- wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases."). Moreover, while the Eleventh Circuit recently rejected a requirement of "administrative feasibility" in the context of determining ascertainability, the Court recognized that "administrative feasibility" may be considered by a court in analyzing manageability under Rule 23(b)(3)(D). *See Cherry*, 986 F.3d at 1303–04. As demonstrated, it is plainly apparent that the proposed Classes are both administratively feasible and ascertainable. *See* section III.A.2, *supra*. Thus, Rule 23(b)(3) is satisfied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion and enter an order: (1) certifying the Florida class for Plaintiff's FDUTPA, breach of express warranty, and breach of implied warranty claims; (2) certifying the National Class for Plaintiff's unjust enrichment claim; (3) appointing Plaintiff as Class Representative for the Classes; (4) appointing Plaintiff's counsel as Class Counsel for the Classes; and (5) directing that notice be sent to the certified Classes, together with any further relief as this Court deems just and proper.

Dated: July 1, 2022.

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**

By: <u>*/s/ Kristen Lake Cardoso*</u>
Jason H. Alperstein (FBN 64205)
Jeff Ostrow (FBN 121452)
Kristen Lake Cardoso (FBN 44401)
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email: alperstein@kolawyers.com
ostrow@kolawyers.com
cardoso@kolawyers.com

Steven G. Calamusa (FBN 992534)
Geoffrey Stahl (FBN 89240)
**GORDON & PARTNERS, P.A.**
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410

Telephone: (561) 799-5070
Facsimile: (561) 799-4050
E-mail: scalamusa@fortheinjured.com
gstahl@fortheinjured.com

*Counsel for Plaintiff and the Proposed Classes*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 1st day of July, 2022, the foregoing was filed using the Court's CM/ECF system which will send electronic notice of the same to all interested parties.

By: *<u>/s/ Jason H. Alperstein</u>*
Jason H. Alperstein