**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JOHN SKRANDEL, individually and on behalf of all others similarly Situated,<br><br>          Plaintiff,<br><br>     v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>          Defendant. | Case No. 9:21-cv-80826-AMC<br><br><u>CLASS ACTION</u> |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL BACKGROUND AND ALLEGATIONS ...........................................2

     A.     Costco and its Membership Program...........................................................2

     B.     The Interstate Batteries ...............................................................................2

     C.     Costco's Uniform Conduct Relating to the Interstate Batteries...................3

     D.     Class Members' Damage .............................................................................4

III.    ARGUMENT .........................................................................................................5

     A.     The Class Certification Threshold Requirements Are Satisfied .........................5

          1.     Plaintiff Possess Standing to Assert His Claims...............................5

          2.     The Classes Are Adequately Defined and Ascertainable ...........................6

     B.     The Proposed Classes Satisfy the Rule 23(a) Requirements ...................................8

          1.     The Classes Are Sufficiently Numerous ...........................................9

          2.     There Are Questions of Law and Fact Common to the Classes .................9

          3.     Plaintiff's Claim Is Typical of the Classes' Claim ...................................10

          4.     Plaintiff and Counsel Are Adequate Class Representatives .....................11

     C.     Class Treatment Is Appropriate Pursuant to Rule 23(b).........................................12

          1.     Common Issues Predominate Over Any Individual Issues.......................12

               a.     FDUTPA ...............................................................................13

               b.     Breach of Express Warranty .................................................14

               c.     Breach of Implied Warranty .................................................15

               d.     Unjust Enrichment ................................................................15

          2.     Class-Wide Damages Can Be Calculated ..................................................17

          3.     Class Treatment Is a Superior Method of Adjudication ...........................18

               a.     Class Member Interests Are Supported by Class Treatment ........19

               b.     No Other Litigation Precludes Class Treatment ...........................19

               c.     It Is Desirable to Concentrate Litigation in This Forum...............19

               d.     Class Treatment Is Manageable .....................................................20

IV.     CONCLUSION......................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
    321 F.R.D. 688 (S.D. Fla. 2017)................................................................ 10

*Allapattah v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) ............................................................ 9, 18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................. 19

*Bowe v. Pub. Storage*,
    318 F.R.D. 160 (S.D. Fla. 2015)........................................................... 13

*Brown v. Electrolux Home Products, Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ............................................................ 18

*Carriuolo v. GM Co.*,
    823 F.3d 977 (11th Cir. 2016) ..................................................... 13, 14, 19

*Cheny v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003)............................................................. 9

*Cherry v. Domestic Corp.*,
    986 F.R.D. 1296 (11th Cir. Feb. 2, 2021) ............................................ 6, 20

*Connor v. Permanent Gen. Assurance Corp.*,
    No. 9:20-CV-81979-WPD, 2022 WL 1642866 (S.D. Fla. Apr. 11, 2022)............ 16

*County of Monroe v. Priceline.com, Inc.*,
    265 F.R.D. 659 (S.D. Fla. 2010)..................................................... 11, 16, 20

*Cox v. Cmty. Loans of Am. Inc.*,
    625 Fed. Appx. 453 (11th Cir. 2015)........................................................ 5

*CV Relt, Inc. v. Levy*,
    144 F.R.D. 690 (S.D. Fla. 1992) ........................................................... 10

*Davis v. Powertel, Inc.*,
    776 So.2d 971 (Fla. 1st DCA) .............................................................. 13

*Debernardis v. IQ Formulations, LLC*,
    942 F.3d 1076 (11th Cir. 2019) .............................................................. 5

*Dickens v. GC Servs. Ltd. P'ship*,
    706 Fed. Appx. 529 (11th Cir. 2017)...................................................... 19

*Florida Power Corp. v. City of Winter Park*,
    887 So.2d 1237 (Fla. 2004)................................................................. 15

*Fresco v. Auto Data Direct, Inc.*,
    No. 03-61063-CIV, 2007 WL 2330895 (S.D. Fla. May 14, 2007)......................... 11

*Gibbs Properties Corp. v. CIGNA Corp.*,
    196 F.R.D. 430 (M.D. Fla. 2000)........................................................... 15

*Griffin v. Dugger,*
  823 F.2d 1476 (11th Cir. 1986) ........................................................................ 5

*In re Checking Overdraft Litig.,*
  275 F.R.D. 666 (S.D. Fla. 2011) ..................................................................... 13

*In re Checking Account Overdraft Litig.,*
  281 F.R.D. 667 (S.D. Fla. 2012) ..................................................................... 10

*In re Checking Account Overdraft Litig.,*
  286 F.R.D. 645 (S.D. Fla. 2012) ..................................................................... 17

*In re Checking Account Overdraft Litig.,*
  MDL No. 2036, 2015 WL 3551527 (S.D. Fla. June 8, 2015) ............................. 16

*In re Checking Account Overdraft Litig.,*
  307 F.R.D. 630 (S.D. Fla. 2015) ....................................................................9, 11

*In re Checking Account Overdraft Litig.,*
  307 F.R.D. 656 (S.D. Fla. 2015) ..................................................... 13, 15, 19

*James D. Hinson Elec. Constr. Co. v. BellSouth Telecomms., Inc.,*
  275 F.R.D. 638 (M.D. Fla. 2011) ..................................................................... 17

*J W v. Birmingham Bd. of Educ.,*
  904 F.3d 1248 (11th Cir. 2018) ........................................................................ 5

*Jones v. Jeld-Wen, Inc.,*
  250 F.R.D. 685 (S.D. Fla. 2008) ..................................................................... 19

*Kennedy v. Tallant,*
  710 F.2d 711 (11th Cir. 1983) ........................................................................ 20

*Kilgo v. Bowman Transp. Inc.,*
  789 F.2d 859 (11th Cir. 1986) .......................................................................... 9

*Klay v. Humana, Inc.,*
  382 F.3d 1241 (11th Cir. 2004) ..................................................... 13, 18, 19

*Leszczynski v. Allianz Ins.,*
  176 F.R.D. 659 (S.D. Fla. 1997) ..................................................................... 19

*Little v. T-Mobile, USA, Inc.,*
  691 F.3d 1302 (11th Cir. 2012) ........................................................................ 6

*Manno v. Healthcare Revenue Recovery Grp., LLC,*
  289 F.R.D. 674 (S.D. Fla. 2013) ....................................................................... 9

*McCullough v. City of Montgomery,*
  No. 2:15-cv-463-RCL, 2021 WL 20449900 (M.D. Ala. May 21, 2021).................. 8

*Miccosukee Tribe of Indians v. Florida State Athletic Comm'n,*
  226 F.3d 1226 (11th Cir. 2000) ........................................................................ 5

*Mills v. Foremost Ins. Co.,*
  269 F.R.D. 663 (M.D. Fla. 2010)..................................................................... 10

*Muzuco v. Re$ubmitit, LLC,*
   297 F.R.D. 504 (S.D. Fla. 2013) ................................................................................. 17

*Nadreau v. Lush Cosmetics NY, LLC,*
   No. 2:10-CV-298-FtM-99SPC, 2012 WL 3852231 (M.D. Fla. Aug. 13, 2012),
   *report and recommendation adopted,* 2012 WL 3853443 (M.D. Fla. Sept. 5, 2012) ............. 12

*Overka v. Am. Airlines, Inc.,*
   265 F.R.D. 14 (D. Mass. 2010) ................................................................................. 17

*Paris v. Progressive Am. Ins. Co.,*
   No. 19-21761-CIV-DIMITROULEAS, 2020 WL 7039018 (S.D. Fla. Nov. 13, 2020)............ 8

*Perez v. Metabolife Int'l, Inc.,*
   218 F.R.D. 262 (S.D. Fla. 2003) ................................................................................. 8

*Prindle v. Carrington Mortg. Servs., LLC,*
   No. 3:13-cv-1349-J-34PDB, 2016 WL 4466838 (M.D. Fla. Aug. 24, 2016)........................12

*Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co.,*
   No. 19-61422-CIV-CANNON, 2021 WL 4990313 (S.D. Fla. Sept. 22, 2021) ........................6

*Rensel v. Centra Tech., Inc.,*
   2 F.4th 1359, 1361 (11th Cir. 2021) ......................................................................6, 20

*Reyes v. BCA Fin. Servs.,*
   No. 16-24077-CIV-GOODMAN, 2018 WL 3145807 (S.D. Fla. Jun. 26, 2018) .......................6

*Rosen v. J.M. Auto Inc.,*
   270 F.R.D. 675 (S.D. Fla. 2009) ................................................................................15

*Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.,*
   601 F.3d 1159 (11th Cir. 2010) ................................................................... 10, 15, 18

*Scoma Chiropractic, P.A. v. Dental Equities, LLC,*
   No. 2:16-CV-41-JLB-MRM, 2021 WL 6105590 (M.D. Fla. Dec. 23, 2021) ........................ 20

*Singer v. AT & T Corp.,*
   185 F.R.D. 681 (S.D. Fla. 1998) ........................................................................ 11, 16

*Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.,*
   145 F. Supp. 2d 1316, 1321-22 (M.D. Fla. 2001)................................................................ 15

*Teahl v. Lazy Flamingo, Inc.,*
   No. 2:13-cv-833-FtM-38CM, 2016 WL 4136537 (M.D. Fla. Jun. 21, 2016) ............................8

*Terrill v. Electrolux Home Prods.,*
   295 F.R.D. 671 (S.D. Ga. 2013) *rev'd on other grounds,* 817 F.3d 1225 (11th Cir. 2016) ........8

*United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.),*
   220 F.R.D. 672 (S.D. Fla. 2004) ................................................................................. 8

*Upshaw v. Ga. Catalog Sales, Inc.,*
   206 F.R.D. 694 (M.D. Ga. 2002) ................................................................................ 19

*Valley Drug Co. v. Geneva Pharms., Inc.,*
   350 F.3d 1181 (11th Cir. 2003) ................................................................................. 12

iv

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ............................................................... 5, 9

*Venerus v. Avis Budget Car Rental, LLC*,
   723 Fed. Appx. 807 (11th Cir. 2018) ........................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................. 10

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ........................................................ 9, 10, 11

*Williams v. Wells Fargo Bank, N.A.*,
   280 F.R.D. 665 (S.D. Fla. 2012) ............................................................... 19

## Rules

Fed. R. Civ. P. 23(a) ........................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) .............................................................. 12, 18, 20

Fed. R. Civ. P. 23(c) .................................................................................. 2

## Statutes

Fla. Stat. § 672.313(a) and (b) ................................................................. 14

## Other Authorities

1 William B. Rubenstein, *Newberg on Class Actions*, §3.6 (5th ed. 2011-2020) ............................ 8

Appendix: The Unjust Enrichment Cause of Action by State,
   54 S. Tex. Law Rev. 265 (2012) .............................................................. 15

## I.      <u>INTRODUCTION</u>

The public understands that a "free replacement" warranty means a consumer will pay *nothing* to obtain a replacement product when the purchased product is returned within the warranty period. "Free means free," says the FTC—it's that simple. So, too, are the facts and theories of liability in this case, making it ideally suited for class treatment.

Plaintiff, John Skrandel ("Mr. Skrandel"), seeks certification of two (2) narrowly-defined and ascertainable classes, comprised of thousands of Costco Wholesale Corporation ("Costco" or "Defendant"), customers who, like him, purchased an Interstate-branded battery bearing a "Free Replacement" warranty on the main display panel ("Interstate Battery") from one of Costco's warehouses. Like Mr. Skrandel, each member of the below-defined classes ("Class members") was required to pay out of pocket to obtain a "free replacement" battery, despite returning their Interstate Battery to Costco within the designated warranty period. While the merits of Plaintiff's claims are not at issue at this stage, Costco admitted in its Amended Answer to Plaintiff's Class Action Complaint [ECF No. 29] ("Answer") that Plaintiff was wrongfully charged for his replacement battery (*id.* at ¶¶6, 25, 30, 32-33), and that Class members should not have paid any out-of-pocket cost for replacement of an Interstate Battery under the warranty (*id.* at 22).

The record amply establishes that Plaintiff's claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of express warranty, breach of implied warranty of good faith and fair dealing, and unjust enrichment will be determined on the basis of common evidence of Costco's admitted misconduct.[1] None of these claims involve individual issues of reliance, and the facts underlying each claim are materially-identical for all Class members. Questions related to lability and damages are not only common, they are *identical*. And, because Costco required each Class member to use their Costco membership card with every Interstate Battery transaction, the relevant data within Costco's business systems can be used to precisely identify each Class member along with the exact calculation of their respective damages.

Based on the above core, common facts, and for the reasons set forth below, Plaintiff seeks certification of the following classes pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> All Costco members, persons or entities that purchased an Interstate-branded battery with the words "Free Replacement" on the label (the "Interstate Batteries")

---

[1] Plaintiff's FDUTPA and warranty claims are brought on behalf of a Florida class, while the unjust enrichment claim is brought on behalf of a National class.

at a Costco location in the State of Florida who: (a) returned the Interstate Battery to Costco within the warranty period, and (b) incurred an out-of-pocket cost to obtain a replacement Interstate-branded battery within the warranty period (the "Florida Class"); and

All Costco members, persons or entities in the United States (including its Territories and the District of Columbia) that purchased an Interstate-branded battery with the words "Free Replacement" on the label (the "Interstate Batteries") at a Costco location who: (a) returned the Interstate Battery to Costco within the warranty period, and (b) incurred an out-of-pocket cost to obtain a replacement Interstate-branded battery within the warranty period (the "National Class").

Plaintiff further requests that the Court appoint him as Class Representative and his counsel as Class Counsel, and direct the parties to submit a notice plan pursuant to Fed. R. Civ. P. 23(c).

## I.     FACTUAL BACKGROUND AND ALLEGATIONS

### A.     Costco and its Membership Program

Costco is the second largest retailer in the world, operating 559 "warehouses" in the U.S., including 28 throughout the state of Florida. Class Action Complaint ¶13.[2] A membership (and card) is <u>required</u> to shop, and make any purchases, at Costco's warehouses. *See* Deposition of Derek Berndt, dated May 10, 2022, ("Berndt Depo."), attached as **Exhibit A**, at 38:1-2; Deposition of Christi Kang, dated May 18, 2022 ("Kang Depo."), attached as **Exhibit B**, at 34:16-20. Through Costco's membership program, each member's transaction is recorded and logged in Costco's electronic data systems. *See* Deposition of Peter C. Hesketh, dated May 11, 2022 ("Hesketh Depo."), attached as **Exhibit C**, at 23:10-13. This system, the ▮▮▮▮, maintains all data from Costco warehouses throughout the country, including every purchase, return, and replacement of an Interstate Battery. *See* Berndt. Depo. at 119:7-14; 133:21; Hesketh Depo. at 18:8-17; 23:10-13.

### B.     The Interstate Batteries

Costco began selling Interstate-branded batteries in or around 2014. ¶20. *See also* Deposition of Robert Moyer, dated May 27, 2022 ("Moyer Depo."), attached as **Exhibit D**, at 25:20-23, 44:17-22. From 2014 to 2019, each Interstate Battery sold at Costco's warehouses had a Costco-designated "Item Number" (*see* Fitment Guidebooks attached as **Composite Exhibit E**) and contained a label bearing the words "Free Replacement" on its main display, which Costco referred to as a "WARRANTY" on the Interstate Battery's price tag at the point of sale (¶21):

---

[2] References to "¶__" are to paragraphs of the Class Action Complaint [Dkt. No. 1] ("Complaint").



*See also* Costco_000172-173 and Costco_000175, attached as **Exhibit F** (showing the form labels used by Costco for the Interstate Batteries during the relevant period).

There was no written warranty document that described the "Free Replacement" warranty. Deposition of Chris Herbig, dated May 20, 2922 ("Herbig Depo."), attached as **Exhibit G**, at 112:11-18. The only written warranty document that existed during the relevant time was the "Costco Limited Battery Warranty." *See id.* at 113:3-10; *see also* Exhibit E. There were no qualifying limitations to the "Free Replacement" warranty on the Interstate Battery labels. *See* Herbig Depo. at 46:25-47:5. Neither Costco nor the Interstate Battery's label disclosed any terms or conditions that applied to the "Free Replacement" warranty, or directed customers to a location where such additional information could be found, prior to or at the point of sale. ¶22; Berndt Depo. at 70:17-71:15. However, for each Interstate Battery sold, Costco electronically recorded in its business system the Household making the purchase, sale date, applicable warranty term, and Costco-designated Item Number. *See infra* at fn. 7. Costco also recorded and maintains in its database specific battery information, such as the Item Number's Group size. *See id.*

Costco discontinued selling the Interstate Batteries between October and December 2019, when it began selling Interstate-branded batteries bearing the same words as the only written warranty document in circulation, *supra*, or "LIMITED WARRANTY REPLACEMENT" on their main display panels, which, contrary to the display panels of the "Free Replacement" Interstate Batteries, directed customers to Costco's website "[f]or complete warranty information." ¶30; *see* Costco_000171, attached as **Exhibit H**; *Herbig Depo.* at 60:21-61:6. Costco designated new Item Numbers for the Interstate Batteries that had carried a "Free Replacement" warranty but were then changed to carry a "LIMITED WARRANTY REPLACEMENT," even though these Interstate Batteries were, for all other purposes, the same. *See* ECF No. 105 at ¶¶2-4.

C.    <u>Costco's Uniform Conduct Relating to the Interstate Batteries</u>

While Costco represented to Plaintiff and Class members that a "Free Replacement"

"warranty" accompanied the purchase of an Interstate Battery, Costco does not have an exchange process. *See* Berndt Depo. at 61:23-25; 127:11-14; Herbig Depo. at 42:20-43:8; Kang Depo. at 38:3-4. Thus, if a member returns an Interstate Battery pursuant to the "Free Replacement" warranty, Costco's Refund Manual (excerpts attached as **Exhibit I**) notes as a policy that Costco is to refund the original purchase amount and, if the customer chooses to purchase a replacement battery, Costco is to override any increased price differential between the newly purchased, replacement battery and the originally purchased Interstate Battery. *See* Berndt Depo. at 93:22-25; Herbig Depo. at 34:4-9; Kang Depo. at 19:1-8. The manual is the only document setting forth Costco's policies and procedures for the return of Interstate Batteries. Kang Depo. at 30:24-31:6.

Despite the "Free Replacement" representation and Costco's uniform use of the Refund Manual's return policy, Costco did not provide Plaintiff and the Class with a free replacement battery when they returned their Interstate Batteries during the applicable warranty period. ¶¶27-33. Instead, Costco refunded Plaintiff and Class members the purchase price of the original Interstate Battery and then charged them the *increased* difference of the replacement battery price. *See* Kang Depo. at 31:7-12. That is, Costco never provided a "free replacement" battery under the "Free Replacement" warranty when the price of the replacement battery in stock at the time of the return was *more* than the original Interstate Battery purchase. Costco admits its practice is wrong and that customers who purchased Interstate Batteries and who incurred an out-of-pocket cost for their replacement batteries during the warranty period were overcharged (and therefore damaged), by that amount. *See* Answer at ¶¶6, 25, 30, 32-33 ("Costco admits that its records show that an error led to Plaintiff paying $2.00 for his replacement battery."); *id.* at 22 ("Costco did not intend for Plaintiff or consumers to pay any money out-of-pocket to replace a defective Interstate Battery when returned within the applicable warranty period."); Kang Depo. 31:7-12.

**D.    Class Members' Damage**

Plaintiff and Class members have all suffered the same damage—they paid an out-of-pocket amount to replace their Interstate Batteries when they should have received a "free replacement" battery under the applicable "Free Replacement" warranty. As detailed in the February 9, 2023 Expert Report of Bo Martin, Ph.D. ("Martin Report"), attached as **Exhibit J**, through written computer coding (or scripts), Costco's own transactional data can be used to electronically isolate the precise date(s) and amount(s) connected to each Class member's (1) initially purchased Interstate Battery, (2) return of the Interstate Battery, and (3) purchase of the

4

replacement Interstate Battery, so that damages can be electronically calculated in the same manner for each Class member by subtracting the *increased* difference each Class member paid for a replacement battery in comparison to the price paid for the original Interstate Battery.

## II.   ARGUMENT

To certify a class, the plaintiff must have standing, all Rule 23(a) requirements must be satisfied, and one Rule 23(b) subsection must be satisfied. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).[3] The Court should only analyze the merits of the claims to the extent necessary to determine whether Rule 23 has been satisfied and not "engage in free-ranging merits inquiries." *Cox v. Cmty. Loans of Am. Inc.*, 625 Fed. Appx. 453, 455 (11th Cir. 2015).

### A.   The Class Certification Threshold Requirements Are Satisfied

#### 1.   Plaintiff Possesses Standing to Assert His Claims

The first threshold inquiry is whether the plaintiff possesses Article III standing to assert each claim. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1986); *J W v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1272 (11th Cir. 2018) (that a suit is brought as a class action "adds nothing to the question of standing"). To satisfy Article III, a plaintiff must allege a redressable injury-in-fact that is traceable to the defendant's conduct. *See Miccosukee Tribe of Indians v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1228 (11th Cir. 2000) (setting forth the three-part test for constitutional standing). Here, Plaintiff purchased an Interstate Battery with a "Free Replacement" warranty, but instead of Costco providing him a "free" replacement battery when he returned the purchased battery within the warranty period, Costco charged him an *increased* difference between the original and replacement purchase prices. *See, e.g.*, Deposition of John Skrandel ("Skrandel Depo."), attached as **Exhibit K**, at 20:8-12; 66:12-17; 105:5-11. Plaintiff asserts that Costco's conduct constitutes an unfair and deceptive trade practice, breach of the express warranty set forth by the "Free Replacement" warranty, breach of the implied warranty of good faith and fair dealing, and that he has suffered damages as a result of this conduct. *Id.* at 92:4-95:16. Plaintiff also asserts that Costco has been unjustly enriched by its uniform practice, to Plaintiff's and Class members' detriment. *See ¶¶*79-83. By alleging that he has been damaged as a result of Costco's conduct, Plaintiff has established Article III standing. *See Venerus v. Avis Budget Car Rental, LLC*, 723 Fed. Appx. 807, 813-14 (11th Cir. 2018); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076,

---

[3] Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury.").

      **2.**      **The Classes Are Adequately Defined and Ascertainable**

      Ascertainability of the members comprising a proposed class is considered before embarking on an analysis of the Rule 23 requirements. *See Little v. T-Mobile, USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Because ascertainability is designed to aid the determination of whether proper notice is directed to class members, ascertainability is a "narrow inquiry." *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV-GOODMAN, 2018 WL 3145807, at *11 (S.D. Fla. Jun. 26, 2018). "A class is clearly ascertainable if we are certain that its membership is capable of being determined." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. Feb. 2, 2021) (holding "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination"). "[T]he party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner." *Rensel v. Centra Tech., Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Randy Rosenberg, D.C., P.A. v. GEICO Gen. Ins. Co.*, No. 19-61422-CIV-CANNON, 2021 WL 4990313, at *4 (S.D. Fla. Sept. 22, 2021).

      Here, Plaintiff easily satisfies this standard. The proposed Classes are ascertainable because their membership turns on objective, verifiable criteria of having: (1) purchased an Interstate Battery; (2) returned the same Interstate Battery during the applicable warranty period: and (3) incurred an out-of-pocket cost to obtain a replacement battery. This objective, verifiable criteria is taken from Costco's produced transactional data, which includes Household numbers specifically identifying each Costco member, Item Numbers that can be used to determine each battery purchase, return, and subsequent purchase as well as the applicable warranty period, and battery Group numbers used in the battery industry to determine which batteries are compatible in certain vehicles. The above criterion objectively shows whether the subsequently purchased battery should have been a free replacement under Plaintiff's theory. *See* Martin Report at ¶13.

      The identification of Class members can be achieved despite Costco's lack of a process to record the exchange of an Interstate Battery as a single record in its transactions data.[4] *Id.* Plaintiff's expert wrote computer scripts/coding that recognize electronic patterns within Costco's

---

[4] Per deposition testimony, ". . . because of the system's limitations that we have where we don't have an exchange program, so the way that we replace it is by giving you a refund and you're going to repurchase another one." Berndt Depo. at 93:22-25.

own transaction records.[5] *Id.* at ¶15. For example, the patterns clearly indicate when a return and replacement caused damage to the Class member. *Id.* at ¶13. Costco's transactional data spans the time period when the warranty was offered—*i.e.*, September 1, 2014 to December 31, 2019.[6] *Id.* at ¶18. This data also covers all warehouses in the U.S. where Interstate batteries were sold. *Id.*

To identify those Households that returned an original battery for replacement under warranty, Plaintiff's expert analyzed the fields within Costco's produced transactional data, which shows each return, refund, and a later purchase. *See id.* at ¶¶22-23.[7] He first reviewed the Refund and Void fields to identify Class members who have a refund or void of the original purchase associated with their Household. *Id.* at ¶22. He then reviewed the purchase transactions data associated with those Households to determine whether there was a subsequent transaction record for the purchase of a replacement battery. *Id.* at ¶23.

Plaintiff's expert's coding confirms the Item Number Costco recorded for the original battery purchased is the same Item Number recorded in the field showing a Refund or Void. *Id.* at ¶¶20-23. His analysis and coding also tracks that a warranted replacement battery would only have had a different Item Number than that of the original battery purchased if the Item Number was modified when Costco changed the Interstate Battery labels from reflecting "Free Replacement" warranty to "LIMITED WARRANTY REPLACEMENT," or if the originally purchased battery and replacement battery purchased had the same Group number, as used by Costco in its Fitment Guidebooks and databases to assist its customers in comparing Interstate batteries and batteries within the industry. *See id.* at ¶26. Plaintiff's expert's coding also confirms that any replacement purchase occurs within the warranty period for the original purchase. *Id.* at ¶24.

As described in Plaintiff's expert's report, the basic pattern in the transactions for a Household that qualifies as a Class member is the following: (1) a record for a Household's original battery purchase; (2) a record for the Household's return of the original battery, recorded as a

---

[5] The script can be amended if there are changes to the Class definitions, if Costco discovers or produces more transactions that pertain to this matter, or to the extent a court ruling modifies Plaintiff's theory of identifying Class members and quantifying their damages. *Id.* at ¶¶27, 28.

[6] Since the longest warranties were 36 or 42 months, depending on which warehouse the purchase occurred, Household damages may still be occurring, so the Classes are not yet closed.

[7] *See* spreadsheets produced by Costco at Costco_000181-000283, Costco_001358 to-001392, Costco_001438-001443, and Costco_001444-001455, attached hereto as **Composite Exhibit L**.

Refund or a Void transaction at the original purchase price; and (3) a record for the Household's purchase of a replacement battery at a greater price than the original purchase price and within the warranty period. *Id.* at ¶30. In total, Plaintiff's expert identified 337,757 Class members and Class damages in the amount of $2,423,643.79. *Id.* at ¶34.

Moreover, because every Class member purchased an Interstate Battery and was not provided with a free replacement battery when the Interstate Battery was returned during the warranty period, the Classes are not overbroad. *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (class definition should not be overly broad, amorphous, or vague); *Terrill v. Electrolux Home Prods.*, 295 F.R.D. 671, 684 (S.D. Ga. 2013) (class definition tailored to include those who suffered harm as alleged in complaint is not overbroad) *rev'd on other grounds*, 817 F.3d 1225 (11th Cir. 2016).

Costco also cannot claim the Classes are fail-safe. A "fail-safe class" is one that "require[s] a court to decide the merits of prospective individual class members' claims to determine class membership." *McCullough v. City of Montgomery*, No. 2:15-cv-463-RCL, 2021 WL 20449900, at *11 (M.D. Ala. May 21, 2021) (quoting 1 William B. Rubenstein, *Newberg on Class Actions*, §3.6 (5th ed. 2011-2020)). That is not what the proposed Class definitions do here. While the Class definitions do reference the payment of money in connection with a Class members' replacement battery transaction, they do not turn on whether Costco requiring such payment is a breach of the Interstate Batteries' "free replacement" warranty. *See Paris v. Progressive Am. Ins. Co.*, No. 19-21761, 2020 WL 7039018, at *5 (S.D. Fla. Nov. 12, 2020). Regardless of whether Plaintiff prevails on his claims, Class members who meet the Class definition will be bound by a final judgment. *Id.* The class definition, thus, does not turn on the merits of Plaintiff's claims.

Finally, because Class membership is clear, the Class definitions are not vague or amorphous. *See, e.g.*, *Teahl v. Lazy Flamingo, Inc.*, No. 2:13-cv-833-FtM-38CM, 2016 WL 4136537, at *5 (M.D. Fla. Jun. 21, 2016) (class was not vague because it made clear who qualified as a class member and was not difficult to apply).

**B.**     **The Proposed Classes Satisfy the Rule 23(a) Requirements**

After considering the threshold issues, "the analysis shifts to the requirements of Fed. R. Civ. P. 23." *United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*, 220 F.R.D. 672, 684 (S.D. Fla. 2004). First, a plaintiff must satisfy the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy. *Id.*

1.      **The Classes Are Sufficiently Numerous**

"To establish numerosity, [a plaintiff] must show that 'the class is so numerous that joinder of all members is impracticable.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). "While mere allegations of numerosity are insufficient, Rule 23(a)(1) imposes a generally low hurdle, and a plaintiff need not show the precise number of members in the class." *Id.*; *see also Kilgo v. Bowman Transp. Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"). In the Eleventh Circuit, "'[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003). Here, Costco's transactions data shows there are 337,757 Class members. Martin Report at ¶34. The Class members are, therefore, so numerous and geographically dispersed that individual joinder of each is impracticable.

2.      **There Are Questions of Law and Fact Common to the Classes**

"Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Satisfying the commonality requirement is a "low hurdle" under Fed. R. Civ. P. 23(a)(2). *Id.* at 1356. "Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 640 (S.D. Fla. 2015). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega*, 564 F.3d at 1268.

Here, Costco uniformly sold the subject Interstate Batteries to Plaintiff and Class members with the words "Free Replacement" stated as the warranty and with the applicable warranty period all printed on the label. *See* section II.B, *supra*. Thus, this litigation centers on Costco's failure to provide Plaintiff and Class members with a free replacement battery pursuant to the "Free Replacement" warranty when they returned their Interstate Batteries during the warranty period.

Commonality is satisfied because whether Costco's assessment, collection, and retention of additional charges to Plaintiff and Class members when they sought their free replacements of Interstate Batteries constitutes a deceptive and unfair trade practice, breach of express warranty, breach of implied warranty, and unjust enrichment are common questions of law, for which interpretation of the uniform Free Replacement Warranty language will provide a common answer for the entire Class. *See Allapattah v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)

(commonality established where the court interpreted materially similar contracts); *Sacred Heart Health Sys. v. Humana Mil. Healthcare Servs.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 671 (M.D. Fla. 2010) (commonality satisfied where "the [contract] documents are uniform or largely the same throughout the case").

Resolution of these common issues "will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355. Even if this was the only common question, it would satisfy the commonality requirement. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]"); *see also CV Relt, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992) ("Factual differences concerning treatment of damages will not defeat a finding of commonality."). Thus, commonality is satisfied.

### 3.  Plaintiff's Claim Is Typical of the Classes' Claim

To demonstrate Fed. R. Civ. P. 23(a)(3) typicality, a plaintiff should "demonstrate that a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017). Thus, "[t]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* Typicality is satisfied where a plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 675 (S.D. Fla. 2012). "Moreover, if the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *Id.*

Here, Costco's practices are uniform. Costco sold Interstate Batteries containing a Free Replacement Warranty to all putative Class members; when putative Class members returned their Interstate Batteries to Costco, Costco did not give them a free replacement battery, but rather, refunded or voided the transaction of the original purchase price; and then Costco sold putative Class Members a replacement battery at a higher price than the original Interstate Battery, despite the fact that the replacement purchase occurred during the applicable warranty period.

Plaintiff's and Class members' claims are also based on the same legal theories—that Costco's failure to provide Plaintiff and Class members with a free replacement battery under the

"Free Replacement" warranty is an unfair and deceptive trade practice, breach of an express warranty, breach of the implied warranty of good faith and fair dealing, and an unjust enrichment. *See County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 668 (S.D. Fla. 2010) (typicality met where class representative's claim was premised on the same injury as class members and subject to class-wide proof). Plaintiff and Class members' claims are also subject to the same defenses, meritorious or not. *See Williams*, 568 F.3d at 1356-57.

There is no record evidence of unique claims or defenses precluding a typicality finding. Plaintiff's claims have "the same essential characteristics as the claims of the [C]lass at large." *Singer v. AT&T Corp.*, 185 F.R.D. 681, 689 (S.D. Fla. 1998). "[T]ypicality turns solely on whether the plaintiff and the class have an interest in prevailing on similar claims." *Id.* "The typicality requirement does not demand homogeneity," and, "[t]herefore the existence of factual differences does not defeat typicality." *Id.* Plaintiff is typical because his claims arise from Costco's "common course of conduct." *In re Checking Account Overdraft Litig.*, 307 F.R.D. at 642.

### 4.   Plaintiff and Counsel Are Adequate Class Representatives

Finally, Fed. R. Civ. P. 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class. *See, e.g., Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *2 (S.D. Fla. May 14, 2007).

Here, Plaintiff is knowledgeable about the nature of this case and is ready and able to serve as a class representative in this action. *See, e.g.*, Skrandel Depo. at 92:4-95:16; 109:6-9; 110:25-111:12; 111:18-19. Plaintiff, himself an attorney, is seeking to serve as a class representative on behalf of a National Class and a Florida Class of persons or entities who purchased Interstate Batteries at Costco and were not provided with a free replacement battery when they were returned to Costco during the applicable warranty period. *Id.* at 10:12-13, 107:21-108:1. Plaintiff understands that he, as the class representative, will have the duty to represent the interests of all unnamed class members. *Id.*; *see also id.* at 109:18-20. Plaintiff has dedicated a significant amount of time to this matter, including working with his counsel, providing answers to interrogatories and producing documents in response to Costco's request for production of documents, and being deposed. *See id.*, at 48:1-17; 49:2-13; 111:20-25; 177:16-19; 119:6-8; 119:16-19; 120:10-121:13. Plaintiff has also remained informed as to the status of the case. *Id.* at 112:13-113:16. In addition

to having testified at his deposition, Plaintiff is willing to make himself available to testify at a trial and to consider a potential settlement with Costco on behalf of the Classes. *Id.* at 112:2-12. Plaintiff also attended the December 12, 2022 hearing before the Court.

The interests of Plaintiff and the members of the Class are fully aligned in seeking all available remedies stemming from Costco's failure to provide Plaintiff and Class members with a free replacement battery when they returned their Interstate Batteries during the applicable warranty period. Plaintiff has demonstrated his adequacy by producing discovery responses, becoming knowledgeable about the nature of the litigation, keeping informed about the status of the case, and declaring his willingness to testify at trial. *See Nadreau v. Lush Cosmetics NY, LLC*, No. 2:10-CV-298-FtM-99SPC, 2012 WL 3852231, at *5 (M.D. Fla. Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 3853443 (M.D. Fla. Sept. 5, 2012).

Plaintiff is committed to protecting the interests of the Classes, as seen by his prosecution of the claims through the counsel he retained and engagement in the discovery process. *See Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4466838, at *5-6 (M.D. Fla. Aug. 24, 2016). There is no suggestion that any conflict of interests exists, and there is no threat that action in this litigation could benefit some class members while harming others. *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (a conflict precluding class representation addresses situations where "some party members claim to have been harmed by the same conduct that benefitted other members of the class").

Plaintiff also satisfies the second prong of the adequacy requirement by retaining counsel with significant experience in prosecuting consumer class actions. *See* Firm Resumes of Kopelowitz Ostrow Ferguson Weiselberg Gilbert and Gordon & Partners, P.A., attached as **Composite Exhibit M**. Thus, Plaintiff and his counsel will protect the interests of the class and adequately prosecute the claims. The adequacy requirement is met.

**C.     Class Treatment Is Appropriate Pursuant to Rule 23(b)**

Plaintiff seeks certification pursuant to Rule 23(b)(3), which permits class treatment where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . [class treatment] is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**1.     Common Issues Predominate Over Any Individual Issues**

"When common questions present a significant aspect of the case and they can be resolved

12

for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *In re Checking Overdraft Litig.*, 275 F.R.D. 666, 676 (S.D. Fla. 2011). "Determining whether common questions of law or fact predominate over questions affecting only individual members . . . requires a showing that the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Bowe v. Pub. Storage*, 318 F.R.D. 160, 176 (S.D. Fla. 2015). An absence of individual issues is not necessary. *See, e.g.*, *Carriuolo v. GM Co.*, 823 F.3d 977, 988 (11th Cir. 2016); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

Plaintiff satisfies his burden to show that common issues predominate because the core issues at the heart of this litigation center around Costco's scheme to offer a "Free Replacement" warranty and then charge members to obtain replacement batteries when their Interstate Batteries were returned during the warranty period. Any analysis of this scheme will depend on evidence relating to the standardized Free Replacement warranty affecting all Class members in a uniform manner. "Predominance is 'a test readily met in certain cases alleging consumer . . . fraud,' particularly where, as here, uniform practices and misrepresentations give rise to the controversy." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 673 (S.D. Fla. 2015).[8]

### a.    FDUTPA

The elements of a claim under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Carriuolo*, 823 F.3d at 983. Critically, "[a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue. Hence, the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist in the present case." *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. 1st DCA 2000).

Indeed, "the mental state of each class member is irrelevant." *Carriulo*, 823 F.3d at 985. In the Eleventh Circuit, "plaintiffs need only show that a reasonable consumer would have been harmed by defendant's conduct[.]" *Bowe v. Public Storage*, 318 F.R.D. 160, 183 (S.D. Fla. 2015);

---

[8] Although Costco has not set forth evidence to support its affirmative defenses, they nonetheless do not defeat certification because they raise common question of proof that predominate over individualized issues. *See, e.g.*, *id.* at 650-651 (statute of limitations, failure to mitigate). Even if Costco had evidence to support its defenses of consent or authorization, "the presence of individualized defenses against a small number of class members would not destroy the predominance of common liability questions." *Id.* Costco's "good faith conduct" and "bona fide error" defenses turn on *Costco's* conduct and, therefore, both are common to all Class members.

*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011)). Thus, the inquiry here is whether Costco's "free replacement" warranty representation was "likely to deceive a consumer acting reasonably in the same circumstances," *Carriulo*, 823 F.3d at 984, which does not require a showing of each Class members' individualized reliance. *Id.* at 985. Plaintiff's FDUTPA claim can be resolved on a classwide basis because the same alleged misrepresentation was made in the same manner to every Class member—each Interstate Battery had a printed label representing that the battery purchase came with a "Free Replacement" warranty. *Id.*

Because each member of the Florida Class purchased an Interstate Battery, returned the Interstate Battery during the warranty period, and incurred out-of-pocket costs to obtain a replacement battery during the warranty period, "it does not matter that there may have been differences among the class members' subjective reliance." *Powertel*, 776 So.2d at 973 986. "Moreover, because the injury is not determined by the plaintiffs' subjective reliance on the alleged inaccuracy, causation and damages may also be amenable to class-wide resolution." *Id.* Indeed, "FDUTPA damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* And while individual determinations of damages do not defeat class certification, *see, e.g.*, *Carriuolo*, 823 F.3d at 988, "there is no evidence to suggest that the class-wide adjudication of any FDUTPA liability will be subsumed in or overwhelmed by an individualized damages inquiry" here. *Id.* at 989.

### b.    *Breach of Express Warranty*

Costco breached its express warranty on a class-wide basis by requiring payment from members for their replacement batteries and, thus, common issues of law and fact predominate.

Here, a singular, common representation provides the entire basis for Plaintiff's express warranty claim—*i.e.*, for each Interstate Battery purchase, as detailed above, Costco promised Plaintiff and the Florida Class members a free replacement battery if they had to return the originally purchased Interstate Battery during the warranty period. As discussed in section II.B, *supra*, the "Free Replacement" warranty was uniform and issued directly from Costco to Plaintiff and each Florida Class member with the purchase of their Interstate Batteries. Whether Costco's "Free Replacement" warranty constitutes an express warranty under section Fla. Stat. § 672.313(a) and (b), and whether Costco breached this express warranty by failing to replace the Interstate Batteries at no cost within the warranty period are common issues that can be decided at one time.

Further, to the extent that Costco maintains that reliance is a required element in a claim for breach of warranty, it is not. *See Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681 (S.D. Fla. 2009) (reliance "does not . . . apply to Plaintiffs' breach of express warranty claims"); *see also Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1321-22 (M.D. Fla. 2001) (stating "reliance is not an element in a claim for breach of warranty").

### c.    Breach of Implied Warranty

Plaintiff and Florida Class members' implied warranty claims also satisfy the predominance inquiry. The only real issue for determination is whether Costco breached the implied warranty of good faith and fair dealing accompanying the sale of its Interstate Batteries when it offered a "Free Replacement" warranty to its members, but then charged them to obtain replacement batteries when they returned their Interstate Batteries during the warranty period. This is clearly a common issue that should be decided on a class-wide basis.

Class members' subjective expectations regarding the warranty are irrelevant for this analysis. "The reasonable expectations of a party to a form contract are judged from the perspective of a reasonable person, making the subjective views of Class members irrelevant." *In re Checking Account Overdraft Litig.*, 307 F.R.D. at 675-676. Here, common issues predominate as to whether Costco violated customer expectations. *See Gibbs Properties Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 441 (M.D. Fla. 2000) (concluding defendant's uniform practice breached the covenant of good faith and fair dealing and was "susceptible to class-wide proof"); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Accordingly, the predominance inquiry is satisfied for this claim.

### d.    Unjust Enrichment

Every state provides for equitable relief where one obtains an undeserved benefit at the expense of another, regardless of whether the cause of action is termed *quantum meruit*, restitution, or unjust enrichment. *See* Appendix: The Unjust Enrichment Cause of Action by State, 54 S. Tex. Law Rev. 265 (2012). Under Florida law, the "elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004). Because the elements of unjust enrichment are similar from

state to state, this Court has held that certification of multistate and nationwide classes is appropriate. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 & n.40 (S.D. Fla. 2004) (certifying multi-state unjust enrichment class after finding that "[t]he standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical" and that minor variation in states' laws "present[ed] no obstacle to class certification"); *Singer*, 185 F.R.D. at 692 (certifying nationwide unjust enrichment claims stating that the elements of the claim were "materially the same throughout the United States"). More recently, in *In re Checking Account Overdraft Litig.*, MDL No. 2036, 2015 WL 3551527 (S.D. Fla. June 8, 2015), the Court certified a near-national unjust enrichment class, concluding that "[t]here is general agreement among courts that the minor variations in the elements of unjust enrichment under the laws of the various states ... are not material and do not create an actual conflict." *Id*. at *16.[9]

As with Plaintiff's other claims, unjust enrichment will rise and fall on the common evidence of Costco's course of conduct—selling members Interstate Batteries with a "Free Replacement" warranty and then charging those members an out-of-pocket cost to obtain their "free" replacement batteries—and the resulting unjust retention of the proceeds of its conduct, despite its claim that such conduct was a "bona fide error." Answer at 22. First, because Class members transacted directly with Costco, there is no dispute that they conferred a benefit upon Costco when they paid an out-of-pocket cost to obtain their "free" replacement battery. Second, for the same reason, there is no dispute that Costco retained the benefits conferred from the sale of the replacement batteries to Class members. Costco's continued retention of these benefits, which it claims it received by "mistake," is plainly common to the National Class. Third, whether Costco's retention of any benefits is inequitable or unjust is common to all Class members.

Given those proceeds were obtained from sales that follow a uniform conduct common to

---

[9] Where the Eleventh Circuit has found a claim to be inappropriate for class-wide resolution, its "underlying concern [was] that unjust enrichment claims typically require individualized inquiries into the equities of each class member's interaction with each defendant." *Cnty. of Monroe, Fla.*, 265 F.R.D. at 671. Here, no significant equitable differences between the Class members exist— *all the evidence* in this case shows that Costco's business practices are the same to all members of the putative Classes, and therefore, any findings of liability would be uniform across the Classes. *See Connor v. Permanent Gen. Assurance Corp.*, No. 9:20-CV-81979-WPD, 2022 WL 1642866, at *10 (S.D. Fla. Apr. 11, 2022) (certifying unjust enrichment claim where there was no significant equitable differences between class members and defendant's business practices were the same to all members of the class, thus any finding of liability would be uniform across the class).

all class members, "it is difficult to conceive of any significant equitable differences between the class members." *James D. Hinson Elec. Constr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011). This is because the unjust enrichment claim, here, focuses on the conduct of Costco, and Costco's "business operations are the same to all members of the putative class." *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 521 (S.D. Fla. 2013) ("Where, as here, highly individualized issues are absent, class certification for an unjust enrichment claim is appropriate."). *See also In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012) ("Unjust enrichment claims can be certified for class treatment where there are common circumstances bearing on whether the defendant's retention of a benefit received from class members was just or not."). Here, as in the above cases, "class-wide proof is available to show that [Costco] deliberately concealed from all customers important information about [Interstate Batteries] . . . factors which bear on the justness of [Costco's] retention of the [monetary gain] it collected as a result." *Id.*[10]

> ### 2.   Class-Wide Damages Can Be Calculated

As for the Plaintiff and Class members' damage claims, damages can be quantified using the same transactional data identified through the return and replacement pattern discussed above. *See* section III.A.2, *supra*; Martin Report at ¶13. Given this automated method of precisely identifying a Class member and calculating their exact damages, the same method can be used to identify all Class members and to calculate their individual damages from the transaction records. *Id.* at ¶14. And, while the *amount* of damages may vary (because, for example, Class members paid varying amounts for their original Interstate Batteries and/or their replacement batteries), the *measure* of damages is a common issue, and it is the methodology that matters for purposes of

---

[10] While there are minor differences between the laws of the fifty states—that Plaintiff contends are immaterial (*see* **Appendix 1** attached hereto)—unjust enrichment claims can be grouped by similarities into categories of states and managed appropriately for class certification. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 529 ("[A] district court should examine whether varying state laws can be grouped by shared elements and applied as a unit in such a way that the litigation is manageable."). Indeed, determining that the laws of thirty-seven states were substantially the same, the court in *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 20-21 (D. Mass. 2010), granted certification and developed a procedure to address the slight state differences whereby the court would put before the jury a core claim composed of the elements common to all jurisdictions and then ask the jury special questions in accordance with any additional elements. The jury would then make determinations of fact as to whether the core claim is satisfied and whether each of the special questions is satisfied. *Id.* On the basis of these determinations, the court would then apply the law of each state and decide in which jurisdictions the defendant prevails.

predominance, not the actual calculated amount. *See Klay*, 382 F.3d at 1259-60 ("[W]here damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."); *see also Newberg on Class Actions* § 12:2 ("a common method for showing individual damages—a simple formula could be applied to each class member's … records—[is] sufficient for the predominance and superiority requirements to be met."). The fact that each member of the Classes may have suffered different amounts of damages does not alter this analysis. *See Brown*, 817 F.3d at 1239 ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'"); *Allapattah Servs., Inc.*, 333 F.3d at 1248 ("Whether [defendant] breached th[e] obligation [in uniform contracts] was a question common to the class and the issue of liability was appropriately determined on a class-wide basis."). Based upon the facts of this case, Costco's "liability to the class predominate[s] over the individual issues relating to damages." *Id.*

After adjudicating class-wide issues, only the ministerial, electronic calculation of damages utilizing Costco's own records and data will remain; there will be no need for individualized proof concerning "most or all" of the elements of the claims. *See Klay*, 382 F.3d at 1255. Aggregate damages for all Class members, along with pre-judgment interest calculations, will be proven on summary judgment or at trial, and individual damages can be electronically calculated and confirmed in a supervised post-judgment process. *Id.* at 1273 (district courts may appoint magistrate to "preside over individual damages proceedings"); *see also* Martin Report at ¶14.

### 3.    Class Treatment Is a Superior Method of Adjudication

Fed. R. Civ. P. 23(b)(3) also requires that class treatment be superior to alternative methods of litigation. The focus is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Systems, Inc.*, 601 F.3d at 1183-84. Generally, where common issues predominate, class treatment is superior because "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.* at 1184.

"To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or

undesirability of concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 695 (S.D. Fla. 2008). Each factor demonstrates the superiority of class treatment.

### a.      Class Member Interests Are Supported by Class Treatment

Each Class member's claim pales in comparison to the cost of litigating the claims against Costco, the world's second largest retailer. *See Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 676 (S.D. Fla. 1997) ("Class actions are particularly appropriate, where . . . multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs."); *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 538 (11th Cir. 2017) (reversing denial of class certification where district court failed to consider that "low per-class-member recovery militates in favor of class adjudication"). That individual recovery is low is virtually dispositive of superiority. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

This Court has made clear that where the potential recovery is relatively small, the inevitable conclusion is that class members cannot have an interest in individual prosecution of a claim for which the recovery would not justify such prosecution. *See In re Checking Account Overdraft Litig.*, 307 F.R.D. at 678. This factor clearly counsels in favor of class treatment. *See Carriuolo*, 823 F.3d at 989 (S.D. Fla. 2016) (superiority met where "individual claims may be too small for a separate action by each class member"); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012) ("Since the damage amounts allegedly owed to each individual defendant are relatively low . . . the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits.").

### b.      No Other Litigation Precludes Class Treatment

There are no other actions in which a plaintiff alleges that Costco wrongly failed to provide a free replacement battery when an Interstage Battery was returned during the applicable warranty period. Thus, this factor favors class certification. *Klay*, 382 F.3d at 1269 (that other class members had not filed similar individual litigation meant second factor favored finding of superiority).

### c.      It Is Desirable to Concentrate Litigation in This Forum

The Southern District of Florida is well equipped to handle class actions. Additionally, class treatment will conserve judicial resources and offers "substantial economies of time, effort and expense" for the parties. *Klay*, 382 F.3d at 1280; *see also, e.g.*, *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("Even if sufficient incentive existed for individual

claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources."). Because the case is subject to generalized proof and common issues of liability and damages, it makes little sense to require individual class members to litigate the same issue over and over again, even if they were inclined to do so for the low amount at issue. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).

### d. Class Treatment Is Manageable

Superiority's "manageability" factor "requires a comparative analysis . . . and the court must weigh any manageability concerns against the advantages of proceeding as a class action." *Rensel*, 2 F.4th at 1369. "Any manageability concerns here are insufficient to render class certification inappropriate, since all other factors militate in favor of certification." *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-CV-41-JLB-MRM, 2021 WL 6105590, at *10 (M.D. Fla. Dec. 23, 2021). Indeed, "[a]dministrative feasibility alone will rarely, if ever, be dispositive." *Cherry*, 986 F.3d at 1305. This holds true particularly where, as here, any issues arise from the defendant's poor record keeping.

Moreover, the crux of liability here is determined by interpretation of the uniform "Free Replacement" warranty language on the Interstate Battery labels, and damages will be determined by simple formulas. On this record, the case is ideal for class treatment. *See, e.g., Cty. of Monroe, Fla.*, 265 F.R.D. at 672 ("Given the number of issues subject to class-wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases."). While the Eleventh Circuit recently rejected a requirement of "administrative feasibility" in the context of determining ascertainability, the Court recognized that "administrative feasibility" may be considered in analyzing manageability under Rule 23(b)(3)(D). *See Cherry*, 986 F.3d at 1303–04. As demonstrated above (*see* section III.A.2, *supra*), the Classes are both administratively feasible and ascertainable. Thus, Rule 23(b)(3) is satisfied.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion and enter an order: (1) certifying the Florida class for Plaintiff's FDUTPA, breach of express warranty, and breach of implied warranty claims; (2) certifying the National Class for Plaintiff's unjust enrichment claim; (3) appointing Plaintiff as Class Representative for the Classes; (4) appointing Plaintiff's counsel as Class Counsel for the Classes; and (5) directing that notice be sent to the certified Classes, together with any further relief as this Court deems just and proper.

Dated: February 9, 2023.

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**

By: */s/ Jason H. Alperstein*

Jason H. Alperstein (FBN 64205)
Jeff Ostrow (FBN 121452)
Kristen Lake Cardoso (FBN 44401)
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email:  alperstein@kolawyers.com
ostrow@kolawyers.com
cardoso@kolawyers.com

Steven G. Calamusa (FBN 992534)
Geoffrey Stahl (FBN 89240)
**GORDON & PARTNERS, P.A.**
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050
E-mail:  scalamusa@fortheinjured.com
gstahl@fortheinjured.com

*Counsel for Plaintiff and the Proposed Classes*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 9th day of February, 2023, the foregoing was filed using the Court's CM/ECF system which will send electronic notice of the same to all interested parties.

By: <u>*/s/ Jason H. Alperstein*</u>
Jason H. Alperstein

## Appendix 1 – State Law of Unjust Enrichment*

| State | Defendant Received Benefit | Benefit Provided by Plaintiff | Absence of Alternative Remedy | Inequitable for Defendant to Retain Benefit | Wrongful Conduct by Defendant |
|---|---|---|---|---|---|
| Alabama[1] | Yes | Yes | No | Yes | No |
| Alaska[2] | Yes | Yes | No | Yes | No |
| Arizona[3] | Yes | Yes | Yes | Yes | No |
| Arkansas[4] | Yes | Yes | Yes | Yes | No |
| California[5] | Yes | Yes | No | Yes | No |
| Colorado[6] | Yes | Yes | Yes | Yes | No |
| Connecticut[7] | Yes | Yes | No | Yes | No |
| Delaware[8] | Yes | Yes | Yes | Yes | No |
| District of Columbia[9] | Yes | Yes | No | Yes | No |
| Florida[10] | Yes | Yes | No | Yes | No |
| Georgia[11] | Yes | Yes | No | Yes | No |
| Hawaii[12] | Yes | Yes | Yes | Yes | No |
| Idaho[13] | Yes | Yes | No | Yes | No |
| Illinois[14] | Yes | Yes | No | Yes | Yes |
| Indiana[15] | Yes | Yes | No | Yes | Yes |
| Iowa[16] | Yes | Yes | No | Yes | No |
| Kansas[17] | Yes | Yes | No | Yes | No |
| Kentucky[18] | Yes | Yes | No | Yes | No |
| Louisiana[19] | Yes | Yes | Yes | Yes | No |
| Maryland[20] | Yes | Yes | No | Yes | No |
| Massachusetts[21] | Yes | Yes | No | Yes | No |
| Michigan[22] | Yes | Yes | No | Yes | No |
| Minnesota[23] | Yes | Yes | No | Yes | No |
| Mississippi[24] | Yes | Yes | No | Yes | No |
| Missouri[25] | Yes | Yes | No | Yes | No |
| Montana[26] | Yes | Yes | No | Yes | Yes |
| Nebraska[27] | Yes | Yes | No | Yes | No |
| Nevada[28] | Yes | Yes | No | Yes | No |
| New Hampshire[29] | Yes | Yes | No | Yes | No |

* Costco does not operate warehouse in the states of Maine, Rhode Island, West Virginia, or Wyoming, and, therefore, those states are not included in this Appendix.

| State | Defendant Received Benefit | Benefit Provided by Plaintiff | Absence of Alternative Remedy | Inequitable for Defendant to Retain Benefit | Wrongful Conduct by Defendant |
|---|---|---|---|---|---|
| New Jersey[30] | Yes | Yes | No | Yes | No |
| New Mexico[31] | Yes | Yes | No | Yes | No |
| New York[32] | Yes | Yes | No | Yes | No |
| North Carolina[33] | Yes | Yes | No | Yes | No |
| North Dakota[34] | Yes | Yes | Yes | Yes | No |
| Ohio[35] | Yes | Yes | No | Yes | No |
| Oklahoma[36] | Yes | Yes | No | Yes | No |
| Oregon[37] | Yes | Yes | No | Yes | No |
| Pennsylvania[38] | Yes | Yes | No | Yes | No |
| South Carolina[39] | Yes | Yes | No | Yes | No |
| South Dakota[40] | Yes | Yes | No | Yes | No |
| Tennessee[41] | Yes | Yes | No | Yes | No |
| Texas[42] | Yes | Yes | No | Yes | No |
| Utah[43] | Yes | Yes | No | Yes | No |
| Vermont[44] | Yes | Yes | No | Yes | No |
| Virginia[45] | Yes | Yes | No | Yes | No |
| Washington[46] | Yes | Yes | No | Yes | No |
| Wisconsin[47] | Yes | Yes | No | Yes | No |

---

[1]  *American Family Care, Inc. v. Fox*, 642 So.2d 486, 488 (Ala. 1994) (To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation.).

[2]  *Sparks v. Gustafson*, 750 P.2d 338, 342 (Alaska 1988) ("Unjust enrichment exists where the defendant received a benefit from the plaintiff and it would be inequitable for defendant to retain the benefit without compensating plaintiff for its value").

[3]  *Community Guardian Bank v. Hamlin,* 182 Ariz. 627, 630 (Ariz. 1995) ("In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law.").

[4]  *Hatchell v. Wren*, 363 Ark. 107, 117 (Ark. 2005) (To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore.).

[5]  *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 3546-47 (Cal. App. 2008) ("[A]n individual may be required to make restitution if he is unjustly enriched at the expense of another. A person is enriched if he receives a benefit at another's expense... Even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.").

[6]  *Martinez v. Colorado Dep't of Human Services*, 97 P.3d 152, 159 (Colo. App. 2003) (Unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another. Unjust enrichment occurs when (1) at the plaintiff's expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying.); *Backus v. Apishapa Land and Cattle Co.*, 44 Colo.App. 59, 61-62, 615 P.2d 42, 44 (Colo. App., 1980) ("A plaintiff is entitled to recover based on the unjust enrichment of a defendant when the plaintiff has no alternative right under an enforceable contract").

[7]  *James P. Purcell Associates, Inc. v. Hennessey*, 105 Conn. App. 1 (Conn. App. 2007) (Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.).

[8]  *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. 2001) (Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.").

[9]  *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008) (Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.).

[10]  *Timberland Consolidated Partnership v. Andrews Land &and Timber, Inc.*, 818 So.2d 609, 611 (Fla. 5th DCA 2002) ("To prevail on a claim of unjust enrichment under Florida law a plaintiff must show that: 1) the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit; 2) the defendant accepts and retains the conferred benefit; and 3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it.")

[11]  *Harris Ins. Agency, Inc. v. Tarene Farms, LLC*, 293 Ga. App. 430, 431 (Ga. App. 2008) ("Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for.")

[12] *Porter v. Hu*, 169 P.3d 994, 1007 (Haw. App. 2007) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other. . . . Equity has always acted only when legal remedies were inadequate.").

[13] *Teton Peaks Inv. Co., LLC v. Ohme*, No. 34642, 2008 WL 4595245 at * 3 (Idaho 2008) (Elements of unjust enrichment are that (1) a benefit is conferred on the defendant by the plaintiff, (2) the defendant appreciates the benefit, and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit.).

[14] *Fortech L.L.C. v. R.W. Dunteman Co., Inc.*, 366 Ill. App.3d 804, 818 (Ill. App. 2006)("A plaintiff may recover under the theory of unjust enrichment if the defendant unjustly retained a benefit to plaintiff's detriment, and defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience."); *Mulligan v. QVC, Inc.*, 382 Ill. App.3d 620, 631 (Ill. App. 2008) ("unlawful or improper conduct" required).

[15] *Wenning v. Calhoun*, 827 N.E.2d 627, 630 (Ind. App. 2005) (To recover under a quasi-contract theory, the plaintiff must show, (1) a benefit was rendered to the party sought to be charged, (2) at that party's implied request, and (3) under circumstances in which equity should demand that the person receiving the benefit should compensate the other in order to prevent unjust enrichment.).

[16] *State, Dept. of Human Services ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001) (The elements of recovery based on unjust enrichment are as follows: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.).

[17] *In re Estate of Sauder*, 156 P.3d 1204, 1221 (Kan. 2007) (The theory of unjust enrichment rests upon three elements: (1) a benefit conferred; (2) an appreciation or knowledge of the benefit by the one receiving the benefit; and (3) the acceptance or retention of the benefit under such circumstances as to make it inequitable to retain the benefit without payment of its value.).

[18] *Bogan v. Finn*, 298 S.W.2d 311, 313-14 (Ky. 1957) (On a claim of unjust enrichment, claimant must not only show that the other party has received benefit but that it has been at claimant's expense).

[19] *Estate of Walker v. Peters*, 989 So.2d 241, 246 (La. App. 2008) (There are five prerequisites for an action for unjust enrichment: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a causal relationship between the enrichment and the impoverishment, (4) there must be an absence of justification or cause for the enrichment or impoverishment, and (5) there must be no other remedy at law.).

[20] *Jackson v. 2109 Brandywine, LLC*, 952 A.2d 304, 327 (Md. Spec. App. 2008) ("A claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.").

[21] *Sutton v. Valois*, 846 N.E.2d 1171, 1177 (Mass. App. 2006) ("A determination that a party would be unjustly enriched requires, generally, that the party would hold property under such circumstances that in equity and good conscience he ought not retain it." A cause of action established when defendant received a property interest that in equity and good conscience belongs to plaintiff.).

[22] *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. App., 006) (In order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant.)

[23] *ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 306 (Minn.1996) (To establish a claim for unjust enrichment under Minnesota law, the plaintiff must "show that the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay.")

[24] *Franklin v. Franklin ex rel. Phillips*, 858 So.2d 110, 120 (Miss. 2003) (To collect under an unjust enrichment or quasi-contract theory, a claimant must show there is no legal contract but the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.)

[25] *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo. App. 2008) (The elements of unjust enrichment are: (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit.)

[26] *Albinger v. Harris*, 48 P.3d 711, 716 (Mont. 2002) (The doctrine of "unjust enrichment" is an equitable means of preventing one party from benefitting by his wrongful acts, and, as such requires a showing of misconduct or fault to recover.)

[27] *Hoffman v. Reinke Mfg. Co., Inc.*, 416 N.W.2d 216, 219 (Neb. 1987) ("Where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit party receiving them to avoid payment therefore, law requires party receiving and retaining benefits to pay their reasonable value.")

[28] *Mainor v. Nault*, 101 P.3d 308, 317 (Nev. 2004) ("We have said many times that equity does not favor a person being unjustly enriched. [U]njust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another.")

[29] *Kowalski v. Cedars of Portsmouth Condominium Ass'n*, 769 A.2d 344, 347 (N.H. 2001) ("Trial court may require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable for him to retain.")

[30] *Castro v. NYT Television*, 851 A.2d 88, 95 (N.J. App. Div. 2004) (To establish unjust enrichment as a basis for quasi- contractual liability, a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust.)

[31] *Heimann v. Kinder-Morgan CO2 Co., L.P.*, 144 P.3d 111, 118 (N.M. App. 2006) (In order to state a claim for unjust enrichment, the aggrieved party must allege that: (1) another has been knowingly benefited at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust.)

[32] *Smith v. Chase Manhattan Bank, USA*, 293 A.D.2d 598, 600 (N.Y. App. Div. 2002) (To prevail on a claim of unjust enrichment, a plaintiff must establish that it conferred a benefit upon the defendant, and that the defendant will obtain that benefit without adequately compensating the plaintiff therefore.).

[33] *Progressive American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 647 S.E.2d 111, 116, (N.C. App. 2007) (Claim for unjust enrichment requires showing that: (1) party conferred a benefit on the other party; (2) the benefit was not conferred officiously, that is, it was not conferred by an interference in the affairs of the other party in a manner that was not justified in the circumstances; (3) the benefit was not gratuitous; (4) the benefit is measurable; and (5) the defendant consciously accepted the benefit.).

[34] *McGhee v. Mergenthal*, 735 N.W.2d 867, 872 (N.D. 2007) (Five elements must be established to prove unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law.).

[35] *Chef Italiano v. Crucible Development Corp.*, No. 22415, 2005 WL 1963027, at *26, (Ohio App. 2005) (A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment.).

[36] *Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006) ("Unjust enrichment" is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; that is, the party has money in its hands that, in equity and good conscience, it should not be allowed to retain.).

[37] *Winters v. County of Clatsop*, 150 P.3d 1104, 1106 (Or. App. 2007) (To establish unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it.).

[38] *Stoeckinger v. Presidential Financial Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. 2008) (The elements of unjust enrichment are (1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.).

[39] *Ellis v. Smith Grading and Paving, Inc.*, 366 S.E.2d 12, 15 (S.C. App.1988) (Elements of "unjust enrichment": (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by defendant of the benefit under conditions that make it inequitable for him to retain it without paying its value.).

[40] *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003) (To prevail on a claim of "unjust enrichment," it must be shown that: (1) enriched party received a benefit, (2) enriched party was aware of receiving benefit, and (3) it is inequitable to allow enriched party to retain this benefit without paying for it.).

[41] *Freeman Industries, LLC v. Eastman Chemical Co.,* 172 S.W.3d 512, 525 (Tenn. 2005) (The elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.).

[42] *Mowbray v. Avery*, 76 S.W.3d 663, 678 (Tex. App. 2002) (Doctrine of unjust enrichment can be applied where there is a failure to make restitution of benefits received under circumstances which give rise to an implied or quasi-contractual obligation to repay, that is, where a benefit was wrongfully secured or passively received which would be unconscionable for the receiving party to retain.).

[43] *Hess v. Johnston*, 163 P.3d 747, 754 (Utah. App. 2007) ("To state a claim for unjust enrichment, a plaintiff must allege facts supporting three elements: (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.").

[44] *Gallipo v. City of Rutland*, 882 A.2d 1177, 1191 (Vt. 2005) ("Unjust enrichment applies if in light of the totality of the circumstances, equity and good conscience demand that the benefitted party return that which was given.").

[45] *T&M Elec., Inc. v. ProLogis Trust*, Nos. 22011, 22108, 22024, 22104, 2006 WL 1101740 at *2 (Va. Cir. Ct. 2006) ("The elements of quantum meruit are as follows: (1) A benefit conferred on the defendant by the plaintiff, (2) Knowledge on the part of the defendant of the conferring of the benefit, (3) Acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value").

[46] *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) ("Three elements must be established in order to sustain a claim based on unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.").

[47] *Staver v. Milwaukee County*, 712 N.W.2d 387, 393 (Wis. App. 2006) ("Unjust enrichment claim requires proof of three elements: (1) a benefit that has been conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment.").