**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:21-CV-80826-RKA**

| | |
|---|---|
| JOHN SKRANDEL, individually and on behalf of all others similarly situated, | ) |
| Plaintiff, | ) |
| vs. | ) |
| COSTCO WHOLESALE CORPORATION, | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## I. Introduction and Summary of Argument

Tacitly conceding that Plaintiff satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, Costco advances a false narrative to argue that Plaintiff cannot satisfy Rule 23(b)(3) by claiming this case turns on each Class members' unique facts and circumstances with battery transactions. *It does not*. To create this illusion, Costco relies on "facts" that are inconsistent with its employees' and designated Corporate Representatives' testimony, including declarations of 2 employees that are riddled with inadmissible testimony rooted in speculation, hearsay, and conjecture.[1] *See* ECF Nos. 129, 130. For example, Costco relies on Robert Moyer's newest iteration of testimony[2] to misleadingly suggest that Costco's transaction data "cannot assess whether the warranty requirements were satisfied." Opp. at 2. This suggestion disregards prior deposition testimony.[3] Moyer also states in his declaration that some *unidentified* "members" *might have* returned batteries *after* already purchasing a replacement battery, which is directly refuted by deposition testimony from Costco's 30(b)(6) designees.[4] Moyer's and Berndt's newest declarations both declare that Costco permitted

[1] Though lacking knowledge of specific information therein, Plaintiff has not moved to strike Derek Berndt's [ECF 73-1 and 130-1] and Robert Moyer's [ECF 74-1 and 129-1] Declarations because they are not pleadings. *See Benson v. Enter. Leasing Co. of Orlando*, LLC, 2021 WL 2138779, at *1 (M.D. Fla. Mar. 15, 2021).

[2] *Compare* ECF No. 129 *with* ECF No. 74.

[3] Derek Berndt unequivocally testified that "[a]s a standard, no, the [returned] battery is not tested . . . as a general practice, that's correct [if someone brings in a battery and reports that it's dead or it's not working, there's nothing that Costco does as a general practice to test or confirm whether or not that's accurate]." Berndt May 10, 2022 Depo. 82:5-15, attached as part of Composite **Exhibit A**. Further, Chris Herbig, Costco's designee for Costco's Return and Warranty policy, confirmed that Costco, not Interstate, elected to place the "free replacement" language on the battery labels and that "[a]ny warranty activity is strictly through Costco and it does not have any connection or relation to Interstate. . . . [T]he warranty is all strictly driven from us and under our policy and doesn't have anything to do with Interstate." Herbig Depo. 31:16-32:21, attached as **Exhibit B**. Herbig also testified that the "free replacement" warranty is the return policy for the purchase. *Id.* at 77:16-22.

[4] *See* Kang Depo. 32:7-23, attached as **Exhibit C** (Costco employees were trained to refund members what they paid for a battery and to then override the price to match the original purchase "if they decided to buy another battery[.]"); Moyer Depo. 24:2-17, ECF No. 114-4 at 3 (Costco's refund manual covered the entirety of what Costco used to train its clerk on "the responsibility of processing returns[.]"); Berndt May 10, 2022 Depo. 93:16-25 (Costco's written refund manual

employees to *give away* cash or a Costco shop card to members without "track[ing it] in Costco's transaction records." *See* ECF Nos. 129, 130. Tellingly, Costco cites no admissible evidence from a Costco "member"; instead, it suggests only *hypotheticals* that "members" *possibly* experienced.

Costco's expert uses these declarations to offer *subjective hypotheses* that bias his *subjective* sampling analysis. He states that his *subjective* analysis is partly based on "discussion with a representative of Costco, Peter Hesketh." ECF No. 131-1 at 9. But neither his report, nor Costco's papers, track that "discussion" with sworn testimony. And Hesketh testified at his deposition that the item numbers assigned to each Interstate battery is most germane:

> "Every item sold or returned to Costco has a Costco item number. We set up that item number with that vendor. In this case, Interstate. And we had purchase orders using that item number. We receive using that item number. We sell the product using that item number. ***So, essentially, to determine what were all the items that we sold or had refunds on for Interstate, we needed the item numbers.*"**

Hasketh Depo. at 33:15-23, attached as **Exhibit D** (emphasis added).

Plaintiff's expert's *objective criteria* and written code is tied directly to these item numbers. *See generally* ECF No. 117-10. Because Costco's expert does not know how to write such computer coding, his "methodology" was to merely sample Households and then *subjectively review* the transactions within the Households based on his off-the-record "discussions" with Hesketh, and Moyer's and Berndt's latest declarations. This clearly biased method was specifically designed to create an illusion of alleged *individual issues* where there are none.

There is also no merit to Costco's position that Plaintiff's expert's methodology fails because it cannot track when a member purchased a replacement before making a warranty return. Unlike Costco's expert, Plaintiff's expert uses computer code that utilizes only *objective criteria* grounded in Costco's own transactional data.[5] Costco argues the *objective criteria* is

---

directs that "the battery should be adjusted accordingly" to relate to "a new purchase **because the refund has happened separately** . . . the way we replace it is by giving you a refund and you're going to repurchase another one.") (emphasis added); Herbig Depo. 34:4-9 (for the "free replacement warranty," first, "they would return the battery. We would refund their money and they would purchase a new battery at the price that the original purchase was at.").

[5] Costco's membership program ***mandates customer transactions*** – *i.e.*, every purchase, return, and replacement – be recorded under the member's assigned, household number.

insufficient to ascertain the class because of Costco's poor record-keeping and failure to electronically record exchanges for its member's household accounts. But Costco should not be permitted to use its poor record-keeping as a sword and a shield. Costco's attempt to manufacture individualized issues where none exists, and its effort to claim complexity where there is none, should not be rewarded. Its arguments against class certification should be rejected.

## II. Argument

### A. Ascertainability Is Readily Satisfied

The Classes are "adequately defined and clearly ascertainable" under *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021), which states that "membership can be capable of determination without being capable of convenient determination." *Id.* Indeed, "the party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner." *Rensel v. Centra Tech., Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021). Here, the proposed Classes meet the *Cherry* ascertainability standard because their membership turn on objective, verifiable criteria of having: (1) purchased an Interstate Battery; (2) returned the same Interstate Battery during the applicable warranty period; and (3) subsequently purchased a *free replacement* battery at a higher cost. Costco's produced spreadsheets include specific household numbers and detailed transaction history for each Costco customer, including item numbers and corresponding information, such as battery group numbers, to determine whether the subsequently purchased battery should have been a free replacement under Plaintiff's theory.

#### 1. Plaintiff's Proposed Classes are Neither Overinclusive nor Underinclusive.

The Classes do not include uninjured Costco customers. Costco's argument that certain transactions may not be warranty "replacements" turns on what constitutes a free replacement and goes to the merits. *See* Opp. at 7-10. It also contradicts Costco's testimony that, practically speaking, there is ***no warranty criteria***; Costco does not test returned batteries to confirm they are defective and does not have a product exchange function to record exchanges in its computer software system. *See* n.4, *supra*. Similarly, Costco's argument that the Class improperly includes transactions that occurred outside of the applicable statute of limitations (*id.* at 9) is wrong and

irrelevant. The statute of limitations is not a barrier to Class membership. *See Cox v. Porsche Fin. Servs., Inc.*, 330 F.R.D. 322, 333 (S.D. Fla. 2019). If certain Class members are ultimately barred by the statute of limitations, the Court can simply enter an order stating those persons are not members of the Class.[6] Costco's argument that some customers were harmed, but made whole through other means (Opp. at 9) is also without merit, as it is based on pure speculation, conjecture, and unsupported by fact.[7] Costco *admits* that such "accommodations" are not "tracked in Costco's transaction records." *Id.* Likewise, Costco's claim that the Classes fail to include customers who returned their initial batteries *after* purchasing a free replacement (*id.*) is based on pure speculation and defies common sense. Moreover, the argument is completely divorced from: (1) Costco's deposition testimony (*see* n.5, *supra*); and (2) Plaintiff's actual Class definition, which logically requires a return of the Interstate Battery *before* the free replacement transaction.

**2. Administrative Feasibility is Not Relevant to the Ascertainability Analysis**

When the speculative and merits-based arguments are stripped away, Costco's only argument against certification is *feasibly* identifying Class members. Costco repeatedly asserts that individual inquiries are necessary to determine class membership. *See* Opp. at 7-9. But that argument is just a "repackage[ing of] the administrative feasibility test that *Cherry* rejected[.]" *McCullough v. City of Montgomery*, 2021 WL 20449900, at *11 (M.D. Ala. May 21, 2021).

---

[6] Since Plaintiff's expert's methodology is based purely on *objective criteria*, his coding can be revised to remove returns before a certain date, as reflected in the area highlighted in yellow below:

```
data Costco raw all;
set data.Costco raw all;
where date >= mdy(9,1,2014);
if not ( (date <= mdy(5,7,2016)) and (refund_void
= "Y") );
run;
```

*See* April 21, 2023, Declaration of Bo Martin ("Martin Decl."), attached as **<u>Exhibit E</u>**.

[7] There is absolutely no admissible evidence—only hearsay—supporting Costco's claim that some members were made whole through other means. Notably, Berndt testified at his deposition that he did not know how or if Costco reported the alleged handouts to the Internal Revenue Service. *See* Berndt Sept. 16, 2022 Depo. 40:10-41:10, attached as part of Composite Exhibit A.

Costco's argument hinges on its failure to implement an electronic exchange function to process "free replacements." Costco cannot rely on its poor record keeping to defeat class certification. *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 614 (S.D. Fla. 2009) ("Defendant's inadequate record keeping is not grounds to defeat the class certification[.]"); *see also Reyes v. BCA Fin. Services, Inc.*, 2018 WL 3145807, at *14 (S.D. Fla. June 26, 2018). Costco should not be permitted to "insulate itself from liability through its own record-keeping practices." *Lapointe v. Bank of Am.*, N.A., 2016 WL 8729824, at *3 (M.D. Fla. Apr. 26, 2016). Notwithstanding, Costco does not dispute that all potential Class members can be identified through its records or that Plaintiff can identify all but a tiny number of Class members without minimal information from Class members, themselves (though Plaintiff disputes any information is needed). Regardless, Costco has contact information for all potential Class members, so a simple affidavit or properly drafted claim form could easily confirm Class membership. *See Collins v. Quincy Bioscience, LLC*, 2020 WL 3268340, at *20 (S.D. Fla. Mar. 19, 2020) (class ascertainable where members could "be identified using a combination of a defendant's records, third-party retailer data, and potential class members' affidavits"); *see also Macarz v. Transworld Systems Inc.*, 193 F.R.D. 46, 57-58 (D. Conn. 2000) (overruling defendants' objection to class certification of FDCPA claim on grounds that class could not be readily identified based on defendant's failure to maintain records to ascertain whether debts were consumer or commercial in nature, and finding that "any disputes regarding whether a particular class members' debt is consumer or commercial can be remedied thorough proper drafting of the claim form, and at the damages phase of this case."). Accordingly, the alleged individualized inquiries Costco raises are irrelevant and do not pose a barrier to class certification.

Finally, Costco's allegation of numerous "errors" with the damage model proffered by Plaintiff's expert (Opp. at 7-9) are the result of conjecture derived from off-the-record "discussions" and the ever-changing declarations of Moyer and Berndt. *See* 2, *supra.* As depicted by the chart in Bo Martin's Declaration (*see* n.6, *supr*a), Costco's expert's *subjective analysis* of <u>Households</u> as sample units, rather than *objective analysis* of <u>transactions</u> as sample units causes his findings to be statistically biased and, thus, unreliable, all compounded by his conjectures.

### B. Plaintiff's Proposed Classes Satisfy Rule 23(a)[8]

The "low hurdle" for commonality is easily satisfied here. *See Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Costco's assessment, collection, and retention of additional charges to Plaintiff and Class members when they sought their "free" replacement turns on the same interpretation of the uniform Free Replacement Warranty language. *See* Fed. R. Civ. P. 23(a)(2); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). As stated above, Costco's argument that commonality is defeated because "Plaintiff cannot answer" whether a return was "warranty-related" or if "the warranty requirements were satisfied" fails. The same is true of Costco's argument that its own "data" does not show whether a member "made a true 'replacement'" or was "made whole by Costco through other means." Costco's claim of poor record keeping cannot insulate it from liability.

Typicality is also satisfied. "[T]ypicality turns solely on whether the plaintiff and the class have an interest in prevailing on similar claims[,] does not demand homogeneity," and, "[t]herefore the existence of factual differences does not defeat typicality." *Singer v. AT&T Corp.*, 185 F.R.D. 681, 689 (S.D. Fla. 1998). Plaintiff's claims arise from a "common course of conduct." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 642 (S.D. Fla. 2015). Plaintiff is not atypical because "questions remain whether they [the class members] were making a warranty-related return like Plaintiff." Opp. at 11-12. Costco is also wrong that any differences between the time between a return and repurchase means that "Plaintiff's experience is not typical." Opp. at 11-12. When a member purchased a replacement battery is immaterial to the claims asserted and do not change the fact that Plaintiff has "the same essential characteristics as the claims of the [C]lass at large." *Singer*, 185 F.R.D. at 689.

Costco fails to argue any facts suggesting Plaintiff will not adequately protect the interests of the class and does not challenge the adequacy of proposed Class counsel. Instead, Costco reasserts its typicality argument as a basis to deny Plaintiff's adequacy. The inquiry here concerns

[8] Costco does not argue that the Class is insufficiently numerous and thus concedes that issue.

whether Plaintiff is qualified to and capable of pursuing a class action (which Costco does not address and, thus, concedes), and whether Plaintiff has claims antagonistic to the Class. Since Costco does not argue adequacy by this standard, its argument should be rejected.

**III. Common Issues Predominate as to Each Class Members' Claims and Damages**

**A. FDUTPA**

Costco incorrectly argues that Plaintiff's "FDUPTA claim is inappropriate for class treatment because it requires individualized examinations of the circumstances of each member's transactions," specifically, the members' "return behavior." Opp. at 15. *First*, a plaintiff asserting a violation of FDUTPA "need not show actual reliance on the representation or omission at issue," because "the mental state of each class member is irrelevant." *Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). *Second* (and contrary to Costco's assertion), in the Eleventh Circuit, "plaintiffs need only show that a reasonable consumer would have been harmed by defendant's conduct[.]" *Bowe v. Public Storage*, 318 F.R.D. 160, 183 (S.D. Fla. 2015) (citation omitted); *see also Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011)). Thus, the correct inquiry here is whether Costco's "free replacement" warranty representation was "likely to deceive a consumer acting reasonably in the same circumstances," *Carriulo*, 823 F.3d at 984, which requires no showing of individualized reliance. *Id.* at 985. Plaintiff's FDUTPA claim can be resolved on a classwide basis because the same alleged misrepresentation was made in the same manner to every Class member, just like in *Carriulo*. *See Carriulo*, 823 F.3d at 986 (each class member was uniformly exposed to the defendant's misrepresentation of safety ratings because each purchased or leased a class vehicle with a printed Monroney sticker on the windshield that misstated safety information).

Costco's cited authority are easily distinguishable. In both cases, the Court found that individualized inquiries were required because different representations were made to different class members. *See Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC,* 2020 WL 5440581, at *9-12 (S.D. Fla. Sept. 9, 2020) (finding no predominance or commonality due to different contracts with different language, a result of the unique negotiation process between class members and the

defendant's employees)*; Deer Constr., LLC v. CEMEX Construction Materials Florida, LLC*, 2016 WL 8542540, at *5 (S.D. Fla. Dec. 1, 2016) (whether the fees were deceptive "depend[ed] on the terms agreed to by each customer—as the contracts were negotiated and not uniform."). It is precisely because of the uniform representation, printed on the battery, made by Costco to each Class member, that predominance is satisfied here.

**B. Express Warranty and Implied Covenant of Good Faith and Fair Dealing**

Plaintiff's warranty claims do not turn on individual evidence. Here, there is an express ***written*** warranty, thus, reliance is not a required element. *See Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1321-22 (M.D. Fla. 2001); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681 (S.D. Fla. 2009). Moreover, unlike in Costco's cited cases (*see* Opp. at 16-17), a singular common representation is the entire basis for Plaintiff's express warranty claim. There is no "individualized extrinsic evidence bear[ing] heavily on the interpretation of the class members' agreements" (Opp. at 16), including as to any purported statutory notice requirement.[9] This Court should also reject Costco's position that Class members' subjective expectations will undermine the common issues to Plaintiff's implied warranty claim. "The reasonable expectations of a party to a form contract are judged from the perspective of a reasonable person, making the subjective views of Class members irrelevant." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 675-676 (S.D. Fla. 2015). Here, common issues predominate as to whether Costco violated customer expectations. *See Gibbs Properties Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 441 (M.D. Fla. 2000); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010).

**C. Unjust Enrichment[10]**

---

[9] There was no requirement to give Costco notice under section 672.607, Fla. Stat., as it would have been unnecessary and futile, given Costco's nation-wide policy of refusing to provide free replacement batteries when consumers' Interstate Batteries became defective during the warranty period. *See Allegro at Boynton Beach, LLC v. Pearson*, 287 So. 3d 592, 600. And Costco waived this argument; it did not file a motion to dismiss on this basis or raise an Affirmative Defense.

[10] In a footnote, Costco argues that "Plaintiff misleadingly claims Costco has admitted it generally misapplied its 'free replacement' policy." Opp. at 17 n.9. Not so. Costco not only admits that an

Common questions will predominate Plaintiff's unjust enrichment claim. Mot. at 16-18. Costco argues the cases cited by Plaintiff "are inapposite because the defendants' conduct was uniform or there were no significant equitable differences among class members." Opp. at 18. Costco ignores the uniform conduct alleged by Plaintiff that identically harmed each Class member and fails to explain why the common conduct alleged here is any different than the conduct alleged in those cases. And Costco's assertion that "[t]he equities [here] varied member to member, particularly given that the data does not show whether the returned battery was defective or simply needing a recharge," is belied by Costco's unrefuted testimony that its general business practice is *not* to test or confirm whether a returned battery is defective. *See* n.4, *supra*.

**D. A Nationwide Unjust Enrichment Class Can be Certified**

Nationwide unjust enrichment classes can be certified when the applicable state law contains no relevant *material* variations. Mot. at 16-17; *see, e.g., In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012). Plaintiff not only stated that variations in the elements of unjust enrichment claims throughout the United States are immaterial, but also analyzed *each element* in the specific context of this case, showing that variations typically precluding nationwide unjust enrichment claims are *not* implicated, here, due to Costco's uniform conduct. Mot. at 17. Each element requires common proof and should result in a common resolution for all members, nationwide. The problems plaguing the proposed classes in Costco's cited cases are not present here. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (claims involving many different defendants with many different contracts, creating individualized issues.); *Kunzelman v. v. Wells Fargo Bank, N.A.*, 2013 WL 139913, at *6 (S.D. Fla. Jan. 10, 2013) (no direct benefit conferred on defendant, implicating variations in state law); *Karhu v. Vital Pharmaceuticals, Inc.*, 2014 WL 815253, at *9 (S.D. Fla. Mar. 3, 2014) (asserting "conclusory assertions that variations in the elements of unjust enrichment claims throughout the United States are immaterial.").

---

error led to Plaintiff paying $2.00 out-of-pocket for a replacement battery (ECF No. 23 at ¶6), but its representative testified that she has "heard of" Costco misapplying its free replacement policy to *other* Costco members besides Plaintiff. *See* Mot. at 3 (citing Kang Depo. 31:7-12)).

**IV. Superiority is Satisfied**

Costco argues that Plaintiff has not demonstrated class treatment is superior because he "fails to provide the required trial plan that addresses the individual issues." Opp. at 19. But, as stated above, there are no individual issues precluding a finding of superiority. Although Plaintiff disputes any actually exist, Costco claim of "individualized issues" are properly addressed at the merits stage or through proper drafting of a claim form at the damages stage. *See Macarz*, 193 F.R.D. at 57-58. "[T]he superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication." *Cherry*, 986 F.3d at 1304-1305 (citations omitted). Yet, Costco does not offer an alternative to class treatment, let alone a superior one. "Any manageability concerns here are insufficient to render class certification inappropriate, since all other factors militate in favor of certification." *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2021 WL 6105590, at *10 (M.D. Fla. Dec. 23, 2021). Indeed, "[a]dministrative feasibility alone will rarely, if ever, be dispositive." *Cherry*, 986 F.3d at 1305. This is particularly true where, as here, issues arise from the defendant's poor record keeping. Furthermore, Plaintiff does not seek to certify a fail-safe class. The proposed Class definition does not "require a court to decide the merits of prospective individual class members' claims to determine class membership." *See McCullough v. City of Montgomery*, 2021 WL 20449900, at *11 (M.D. Ala. May 21, 2021). While it does reference the payment of money in connection with a Class members' replacement battery transaction, it does not turn on whether Costco requiring such payment is a breach of the "free replacement" warranty. *See Paris v. Progressive Am. Ins. Co.*, 2020 WL 7039018, at *5 (S.D. Fla. Nov. 12, 2020). Regardless of whether Plaintiff prevails on his claims, Class members who meet the Class definition will be bound by a final judgment. *Id.* The Class definition, therefore, does not turn on the merits of Plaintiff's claims.

**V. Conclusion**

For the reasons set forth above and in Plaintiff's moving brief, the Court should grant Plaintiff's Motion for Class Certification.

Dated: April 21, 2023.

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
By: */s/ Kristen Lake Cardoso*
Kristen Lake Cardoso (FBN 44401)
Jeff Ostrow (FBN 121452)
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email: ostrow@kolawyers.com
cardoso@kolawyers.com

Steven G. Calamusa (FBN 992534)
Geoffrey Stahl (FBN 89240)
**GORDON & PARTNERS, P.A.**
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050
E-mail: scalamusa@fortheinjured.com
gstahl@fortheinjured.com

*Counsel for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 21st day of April, 2023, the foregoing was filed using the Court's CM/ECF system which will send electronic notice of the same to all interested parties.

By: */s/ Kristen Lake Cardoso*
Kristen Lake Cardoso