## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JOHN SKRANDEL, individually, and on
behalf of all others similarly situated,

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

Defendant.

CASE NO. 9:21-cv-80826-BER

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, John Skrandel, on behalf of himself and the proposed Settlement Classes[1] of individuals similarly situated, with the consent of Defendant, Costco Wholesale Corporation, respectfully requests entry of an order granting Preliminary Approval of the class action settlement set forth in the Parties' Settlement Agreement, certifying the Settlement Classes, appointing Class Counsel, appointing Plaintiff as Class Representative, providing for issuance of Notice to the Settlement Classes, continuing the stay of the Action pending Final Approval, and scheduling a date and time for the Final Approval Hearing.

### I.    INTRODUCTION

Plaintiff seeks Preliminary Approval of a proposed Settlement of claims asserted against Costco. This Settlement is the culmination of a novel and highly contested class action. Plaintiff alleges that when Costco members purchased a recreational or automotive Interstate Battery with "free replacement" on the label and then later sought to replace the battery under warranty at a Costco warehouse, Costco charged the member out-of-pocket when the replacement battery's price had increased. Costco denies liability in the Action. The Settlement represents an excellent result for the Settlement Classes as it offers the Settlement Class Members a potential recovery of approximately 100% of their total likely recoverable damages.

The Settlement follows significant litigation, is the result of arm's-length negotiations

---

[1] All capitalized terms herein have the same meaning as those set forth in the Parties' Settlement Agreement, attached as **Exhibit A.**

ultimately achieved with the assistance of the Honorable Bruce E. Reinhart and provides for substantial and meaningful relief to the Settlement Classes. If approved, the Settlement will create a non-reversionary cash settlement fund of $1,143,728.15 for the Matched Replacement Transaction Settlement Class, and $1,259,276.33 in cash available for the benefit of the Unmatched Replacement Transaction Settlement Class.[2] Costco has also agreed to separately pay up to $750,000.00 in attorneys' fees and costs (subject to Court approval), and all Settlement Administration Costs, neither of which will reduce the amount of the Settlement Class Member Payments. In consideration, Plaintiff and all Settlement Class Members will release Costco from the claims made in the Action. The Settlement will also avoid further delay in providing relief to the respective Settlement Classes and avoid further protracted litigation with uncertain results.

Because Settlement Class Members are receiving potentially all of their claimed damages, and for the reasons further addressed herein, the Parties' proposed Settlement is exceedingly fair and well within the range of reasonableness for Preliminary Approval.

## II.      PROCEDURAL HISTORY

Plaintiff filed the Complaint in this Action on May 7, 2021. [DE# 1]. The Complaint asserts causes of action against Costco for: (1) violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*); (2) breach of express warranty (Fla. Stat. § 672.313); (3) breach of the implied covenant of good faith and fair dealing; (4) fraudulent concealment; and (5) unjust enrichment, arising from Costco improperly charging consumers out-of-pocket amounts to replace Interstate Batteries advertised with a "free replacement" warranty, despite being timely returned during the warranty period. *Id.*

On June 18, 2021, the Parties filed a joint scheduling report, and on June 22, 2021, the Court entered an order setting the trial and pre-trial schedule. [DE# 14, 15]. Costco filed its Answer and Affirmative Defenses on July 1, 2021. [DE# 23]. On August 6, 2021, Costco filed its Amended Answer and Affirmative Defenses. [DE# 29]. The Parties subsequently moved to extend certain deadlines, and the First Amended Scheduling Order was entered on August 9, 2021, and upon the reassignment of the case to District Court Judge Aileen M. Cannon, the Second Amended

---

[2] The amounts of the benefits payable to the Settlement Classes will likely increase as Plaintiff's expert is in the process of calculating final damages now that all warranties associated with Interstate Batteries sold with a "free replacement" label have expired. The updated figures will be included in the Notices before the Notice Date and the Parties will file, also prior to the Notice Date, an amendment to the Agreement, reflecting the new values.

Scheduling Order was entered on October 4, 2021. [DE# 30, 31, 33].

In July 2021, the Parties agreed to mediate before Robert A. Dulberg, Esq. [DE# 25].They mediated on December 10, 2021. *See* Joint Declaration of Class Counsel Jeff Ostrow and Geoffrey Stahl, ¶ 6 ("Joint Dec."), attached as ***Exhibit B***. Before that, the Parties engaged in informal discovery, which Costco provided pursuant to Fed. R. Evid. 408 ("Rule 408 discovery") and included Costco's confidential production of transactional data that Plaintiff's expert analyzed in an initial report supporting opinions on damages. *Id.* ¶ 7. Costco's expert performed a sample size analysis offering different damage estimates. *Id.* ¶ 8. Costco's expert was deposed regarding his report; though Costco insisted this deposition was also Rule 408 discovery. Unfortunately, the mediation was unsuccessful. *Id.* ¶ 9.

Thereafter, formal discovery ensued, including expert discovery, to assist in the preparation for class certification. *Id.* ¶ 10. The Parties had previously entered into a stipulated protective order and ESI protocol. [DE# 42, 43, 44]. Plaintiff also served his First Request for Production of Documents and First Set of Interrogatories, to which Costco responded on September 22, 2021. Joint Dec. ¶ 11. On March 15, 2022, Costco served its First Set of Interrogatories and First Set of Requests for Production, and Plaintiff responded on April 22, 2022. *Id.*.

On March 25, 2022, Costco reproduced its transactional data. *Id.* ¶ 12. Plaintiff's expert reanalyzed that data for a second report. *Id.* Likewise, Costco's expert created a second report and sat for a second deposition. *Id.* Overall, Costco produced, and Class Counsel and their expert reviewed, numerous documents that included Excel spreadsheets with hundreds of thousands of data points. *Id.* The Parties then began taking depositions. *Id.* ¶ 13. In total, the Parties took 11 depositions, including five where Plaintiff deposed Costco's corporate representatives. *Id.*

Plaintiff moved for class certification on July 1, 2022, and thereafter filed a renewed motion on August 9, 2022. [DE# 61, 67]. Costco filed its opposition on October 3, 2022. [DE# 81]. Plaintiff filed his reply in support of class certification on October 13, 2022. [DE# 84].

Beginning on August 29, 2022, the Parties filed *Daubert* motions to exclude the other's experts, with briefing concluding on November 21, 2022. [DE# 76, 86, 89, 93]. Costco moved to exclude the opinion and rebuttal opinion of Plaintiff's expert, Plaintiff responded, and Costco replied. [DE# 76, 85, 91, 93, 100, 101]. Plaintiff moved to exclude Costco's expert, Costco filed an opposition, and Plaintiff replied. [DE# 86, 89, 95, 99].

After full briefing, the Parties attended a hearing before Judge Cannon on December 12,

2022, to address Plaintiff's Motion for Class Certification and the pending *Daubert* motions. [DE# 106]. However, prior to the hearing, on November 9, 2022, Costco supplemented its production of transactional data and produced an additional 1,199,981 line-items of data including transactions from January 1, 2020, to March 31, 2022. Joint Dec. ¶ 14. Due to this supplemental data production, the pending motions were taken under advisement pending the supplementation of expert discovery and possible re-briefing. [DE# 107].

The significant amount of new data, in part, filled in holes from Costco's initial data production, which Plaintiff sought in discovery. Joint Dec. ¶ 15. Thus, additional expert analysis required a third report by Plaintiff's expert. *Id*. Similarly, Costco's expert created a third report. *Id*. To that end, the Parties agreed on December 13, 2022, to withdraw the motions and to re-brief Plaintiff's Motion for Class Certification, including finalizing data production and supplemental expert discovery. [DE# 111].

Thereafter, Plaintiff filed a second Motion for Class Certification on February 9, 2023. [DE# 114, 117]. Costco filed its opposition on March 23, 2023. [DE# 127]. Plaintiff replied on April 21, 2023, and a hearing was set for May 16, 2023. [DE# 132, 134].

During briefing on the second Motion for Class Certification, the Parties began discussing a potential settlement. Joint Dec. ¶ 16. After weeks of negotiations, the Parties reached agreement on most of the material Settlement terms. *Id*.. Thus, on May 12, 2023, the Parties filed a Notice of Settlement with the Court advising that they reached an agreement, in principle, on most of the material class-wide settlement terms, and would continue to negotiate the remaining terms. [DE# 135]. During the next two weeks, the Parties continued to attempt to negotiate the remaining terms. Joint Dec. ¶ 18. Realizing that they were at an impasse on those terms, on May 30, 2023, the Parties asked the Court for assistance and the Court scheduled a settlement conference with Judge Bruce Reinhart. *Id*. ¶ 19; [DE# 140].

On June 30, 2023, the Parties appeared before Judge Reinhart and made significant progress towards resolving the remaining issues. Joint Dec. ¶ 20; [DE # 140]. Although a final agreement was not reached that day, the Parties continued their discussions over the next few weeks. Joint Dec. ¶ 20. As a result of those continued discussions, the Parties ultimately agreed on all material terms which were memorialized in a term sheet on August 3, 2023. *Id*. ¶ 21. Thereafter, the Parties worked diligently to prepare a comprehensive Settlement Agreement which was finally completed and fully signed on September 7, 2023. *Id*. ¶ 22.

### III.   MATERIAL SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

#### A. The Settlement Classes

The proposed Settlement establishes two Settlement Classes as follows:

**The Matched Replacement Transaction Settlement Class:** All current and former Costco members who returned and replaced an Interstate Battery under warranty during the Class Period at a Costco warehouse located in the United States, and who meet the Matched Replacement Criteria.

**The Unmatched Replacement Transaction Settlement Class:** All current and former Costco members who returned and replaced an Interstate Battery under warranty during the Class Period at a Costco warehouse located in the United States, and who meet the Unmatched Replacement Criteria.

Settlement ¶ 1.3., *et seq.* The Settlement excludes all persons who are employees, directors, officers, agents of Costco or its subsidiaries and affiliated companies, the Court, the Court's immediate family, and Court staff. *Id.* The Class Period is May 7, 2016, through June 30, 2023.

#### B. Settlement Consideration

Pursuant to the Settlement, Costco has agreed to create a non-reversionary cash settlement fund in the amount of $1,143,728.15 for the benefit of the Matched Replacement Transaction Settlement Class, and to make $1,259,276.33 available for the benefit of the Unmatched Replacement Transaction Settlement Class. Settlement ¶ 3.1. As noted above, these amounts will be updated prior to sending Notice to the Settlement Classes. Costco has also agreed to separately pay up to $750,000.00 in attorneys' fees and costs (subject to Court approval), and all Settlement Administration Costs, estimated to be $260,000.00, both of which will be paid separate and apart from the Settlement Class Member Payments. Settlement ¶¶ 7.5, 8.1, 8.2. These amounts shall be the maximum Costco shall be required to pay under this Settlement. This is unique compared to most settlements where these costs are regularly deducted out of the class funds prior to distribution. Joint Dec. ¶ 24.

#### C. The Settlement Administrator and Notice Program

The Parties have agreed to utilize Angeion Group as the third-party Settlement Administrator to assist with the dissemination of Notice, the Claims process for the Unmatched Replacement Transaction Settlement Class, and the implementation of the Settlement following Final Approval. Angeion is one of the nation's leading class action settlement administrators. *See* Declaration of Settlement Administrator Steven Weisbrot ("Admin Dec."), attached as ***Exhibit C***.

The Notice Program shall begin 30 days after the entry of a Preliminary Approval Order and will conclude 60 days thereafter.  Settlement ¶¶ F, W. The Notice Program includes the following three Notices, subject to this Court's approval and/or modification: (1) Email Notice; (2) Postcard Notice; and (3) Long Form Notice. Copies of the Notices are attached to the Settlement as Exhibits 1-3. The Notice Program provides for direct notice via the Email Notice and Postcard Notice, combined with the implementation of the Settlement Website and a toll-free number. Admin Dec. ¶ 11. Costco will provide the Settlement Administrator with the names, addresses, emails, and purchase information, for all Settlement Class members for whom it has available records, within 15 days of the date of entry of the Preliminary Approval Order. Settlement ¶ 7.1. Settlement Class members will receive either an Email Notice or a Postcard Notice directing them to complete a Claim Form online or to submit one by mail. *Id.* ¶¶ 7.3.3, 7.3.4. If Costco does not have an email address, or if an Email Notice is undeliverable to or invalid for a Settlement Class member, that Settlement Class member will receive a Postcard Notice. *Id.* The Email Notice and Postcard Notice will direct Unmatched Replacement Transaction Settlement Class members to the Settlement Website to complete Claims Forms to receive benefits under the Settlement. *Id.* If a Postcard Notice sent by U.S. Mail is returned as undeliverable, the Settlement Administrator will run the Settlement Class member's name through the National Change of Address registry and re-mail the Notice within 10 days. Admin Dec. ¶ 19.

In addition to the Notices, the Settlement Administrator will establish a toll-free number to answer frequently asked questions and for Settlement Class members to request a paper Claim Form or Long Form Notice, as well as a Settlement Website for Settlement Class members to submit Claim Forms and/or to obtain other important information. Settlement ¶¶ 7.3.1, 7.3.2. The Long Form Notice will be available for review on the Settlement Website or will be sent to Settlement Class members who request one by mail. *Id.* ¶¶ GG, 7.3.2.

The Notice Program is designed to provide members of the Settlement Classes with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a link to the Settlement Website to complete and submit a Claim Form; a date by which Settlement Class members may opt-out of the Settlement; a date by which Settlement Class Members may object to the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs; the date of the Final Approval Hearing; and information regarding the Settlement Website where Settlement Class members may access the Agreement and other

important documents, including the Long Form Notice. Complete opt-out and objection requirements are listed in the Agreement and in the Long Form Notice. Settlement ¶ 7.3; Admin Dec. ¶¶ 10-11, 24. The Notice Program provides the best notice practicable and complies with due process and Federal Rule of Civil Procedure 23(c)(2). *Id.*

### D.  Payments to Matched Replacement Transaction Settlement Class

Matched Replacement Transaction Settlement Class Members need not do anything to receive a payment. Settlement ¶ 3.1.1. Payments will be for the full amount of money they spent out-of-pocket for their replacement Interstate Battery, based upon Costco's internal transaction records, and will be issued by paper check or electronically. *Id.* ¶ 3.2.1.

### E.  Payments to Unmatched Replacement Transaction Settlement Class

For an Unmatched Replacement Transaction Settlement Class Member to receive a payment, the Settlement Class Member must timely sign and return a Claim Form no later than 60 days from the Notice Date. *Id.* ¶ 3.4. The Claim Form will be available on the Settlement Website or upon request to the Settlement Administrator and may be submitted electronically or by mail. *Id.* ¶¶ GG, 3.4. Claim Forms will be pre-populated with purchase and return transaction records, and Settlement Class Members will be required to match their original, return, and replacement transactions resulting in an out-of-pocket payment for a replacement battery. *Id.* ¶ 3.1.2. Settlement Class Members must timely submit and personally sign the Claim Form under penalty of perjury. *Id.* ¶ KK. Settlement Class Members will receive a payment for the amount they paid out-of-pocket for their replacement Interstate Battery, based on Costco's records. *Id.* ¶ 3.1.2. Payments will be issued by check or electronically. *Id.* ¶ 3.2.1. If valid and timely Claims exceed $1,259,276.33, payments will be reduced pro rata.  *Id.* ¶ 3.1.2.

### F.  Funds Remaining After Distribution

After distribution of the Matched Replacement Transaction Fund, if digital payments are not completed or fail, or checks remain uncashed after 120 days, the Parties agree to pay the unclaimed amounts to a *cy pres* recipient of the Parties' collective choosing and related to the subject matter of the litigation, subject to Court approval. Settlement ¶ 3.2.2.

### G.  Opt-Out and Objection Procedures

In accordance with the opt-out procedures detailed in the Notices and the Settlement, Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the original date set for the Final Approval Hearing. Settlement ¶ 6.1, 6.3, Exhibits

1-3 thereto. Written opt-out requests may be made online on the Settlement Website or mailed to the Settlement Administrator. *Id*. ¶ 6.2.

Settlement Class Members who wish to object to the Settlement must do so no later than 30 days before the original date set for the Final Approval Hearing. *Id*. ¶ X. The Settlement and the Long Form Notice outline all the requirements to object and instructs that objectors must send a written document to the Clerk of Court, Settlement Administrator, Class Counsel, and Costco's Counsel that includes: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each such case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Approval of Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each such case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient). *Id*. ¶ 5.2. The Parties will have 15 days before the Final Approval Hearing to respond to any objections. Settlement ¶ 5.5.

### H. Release of Claims

Plaintiff and Settlement Class Members who do not timely and validly opt-out of the

Settlement will be bound by the terms of the Settlement, including the release and discharge of the Released Claims against the Released Persons. The Released Claims are narrowly tailored and are limited to the claims that that have been or could have been asserted in the Action related to the purchase, sale, and warranty of Interstate Batteries during the Class Period, excluding claims for personal injury. Settlement ¶ 10.1.

### I.   Class Counsel Attorneys' Fees and Costs.

Costco has agreed, subject to Court approval, to an Attorneys' Fees and Costs Payment to Class Counsel up to $750,000.00, and, therefore, Costco will not oppose Class Counsel Application for Approval of Attorneys' Fees and Costs Payment for $750,000. Settlement ¶ 8.1. The discussion of attorneys' fees and costs did not take place until after all material terms of the Settlement had been agreed on by the Parties. Joint Dec. ¶ 25.

### IV.   THE PROPOSED SETLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Legal Standard for Preliminary Approval

The Eleventh Circuit recognizes the strong public and judicial policy favoring the pretrial settlement of class-action lawsuits. *See, e.g.*, *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813 *4 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co*., No. 09-cv-60646, 2010 WL 2401149 at *3 (citation omitted). Approving a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. 2007).

Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id*. (citations omitted). The threshold for granting preliminary approval is low: a proposed settlement will be preliminarily approved "as long it is 'fair, adequate and reasonable and not the product of collusion between the parties.'" *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671-72 (S.D. Fla. 2006) (quoting *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (quoting *Smith,* 2010 WL 2401149

at *2). In the second step of approving a settlement, after notice to the settlement class and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Fresco,* 2007 WL 2330895, at *4.

Plaintiff respectfully requests that the Court take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness, and it satisfies all standards for Preliminary Approval, including Plaintiff's obligations under Rule 23(e)(1), as amended effective December 1, 2018. Specifically, effective December 1, 2018, amendments to Rule 23(e)(2) added a mandatory but non-exhaustive set of similar final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As set forth below, the above criteria are met as well.[3]

### B.  The Settlement Meets the Criteria for Preliminary Approval

A preliminary review of the fairness and adequacy factors demonstrates that the Settlement warrants Preliminary Approval under Rule 23(e)(2). The Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's-length negotiations by competent counsel with the assistance of Judge Reinhart, after previously (albeit unsuccessfully) negotiating with the assistance of another experienced mediator. Joint Dec. ¶ 26.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. *Id.* ¶ 27. Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. *Id.* Costco denies liability, believes it acted in good faith and in compliance with the law, and that it would prevail in opposing class certification, and has shown a willingness to continue vigorous

---

[3] There is no agreement made in connection with the Settlement that is required by Fed. R. Civ. P. 23(e)(3) to be identified other than the Settlement.

litigation by opposing Plaintiff's class certification motions. *Id.* With continued litigation, the putative class will undoubtedly have a long wait for their recovery, if they have one at all. *Id.* ¶ 28. Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery and the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, including, the risks, time, and expenses associated with completing a trial and any appellate review. *Id.* ¶¶ 28, 41.

### C.  The Settlement Agreement is the Product of Good Faith, Informed, and Arm's-Length Negotiations

"A proposed settlement action should be approved as long as it is 'fair, adequate and reasonable and it is not the product of collusion between the parties.'" *Borcea,* 238 F.R.D. at 672 (quoting *Bennett,* 737 F.2d. at 986); *see also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arm's-length negotiations by experienced Class Counsel").

Here, the Settlement is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at the center of this Action. Joint Dec. ¶ 26. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of class action cases. *Id*. ¶ 29, 40. This experience proved beneficial to Plaintiff and the Settlement Classes during negotiations of the Settlement. *Id.* Class Counsel conducted significant informal discovery prior to the first mediation and formal discovery before the settlement conference that enabled them to gain a complete understanding of the evidence related to central issues in the Action, including damages and liability, and prepare for well-informed settlement negotiations. *Id*. ¶¶ 29, 42; *see Burrow v. Forjas Taurus S.A*., No. 16-21606-CIV, 2019 WL 4247284, at *8 (S.D. Fla. Sept. 6, 2019) (the record showed substantial discovery, which supported finding that the settlement was reasonable). Full class certification briefing further aided the negotiations. Joint Dec. ¶ 29. The negotiations that culminated in the Settlement were conducted over many weeks, were at arm's-length and extensive, and overseen by Judge Reinhart. *Id*. ¶ 26; *see Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"). Thus, Rule 23(e)(2)(B) is satisfied.

### D. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate, and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement is warranted. To determine whether a settlement is fair, adequate, and reasonable, the Court considers all relevant factors, including:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved.

*Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466–67 (S.D. Fla. 2002). Each of these factors relevant to Preliminary Approval are discussed in more detail below, along with reference to the applicable Fed. R. Civ. P. 23(e)(2) factors.

#### i. Likelihood of Success at Trial

Class Counsel are confident in the strength of Plaintiff's case. Joint Dec. ¶ 30. However, they are also pragmatic of the risks and challenges. *Id.* They are aware that there are uncertainties in a trial, particularly given the case theory, and expert issues here. *Id.* Class Counsel are also aware of the risks inherent from any appeal and subsequent proceedings of a successful trial verdict. *Id.* Further, it is unclear whether Plaintiff would be able to certify a class for purposes of trial. *Id.* Under the circumstances, and considering the Settlement offers Settlement Class Members potential payment of approximately 100% of the value of their claims, Class Counsel determined the Settlement outweighs the risks of continued litigation. *Id.*

Even if Plaintiff and the Settlement Classes ultimately prevailed at trial, recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members without further delay and avoids the risk of an adverse judgment at trial or on appeal. Rule 23(e)(2)(C)(i) is satisfied.

#### ii. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which Settlement is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Here, Plaintiff was able to through the Settlement to have Costco agree to potentially pay approximately 100% of the likely damages that the Settlement Class would recover at trial, making the cash benefits beyond reasonable when considering the complexity and uncertainty of certain issues in the litigation. Joint Dec. ¶ 31. This Settlement far exceeds the reasonableness bar, as settlements may be considered reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *In re Checking Account Overdraft Lit.*, 830 F.Supp.2d 1330, 1346 (S.D.Fla.2011) (a recovery of between 9% and 45% was an "exemplary result").

This is an excellent result for the Settlement Class and far more than a mere fraction that has been approved in other cases in this district and in the Eleventh Circuit. *Id.*; *see also Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *2 (S.D. Fla. Feb. 3, 2016) (approving settlement "providing near-complete relief to class members on a claims-made basis–as extraordinary"). There can be no doubt this Settlement is a fair and reasonable recovery because it is the best possible recovery that could reasonably expected at trial, without the risk of Costco's vigorous defense, the uncertainty of class certification, and the challenging and unpredictable path the Settlement Class would face absent a settlement. Joint Dec. ¶ 32.

Furthermore, the Settlement Class Member Payments will be equitably distributed to compensate each Settlement Class Member consistent with the value of their individual claims. Settlement Class Members will be treated equally, are eligible to receive the same benefit, and will be compensated the same way as other members of the respective Settlement Classes through fair, convenient, and effective Settlement Class Member Payments. The proposed Claim process for Unmatched Replacement Transaction Cash Payments is also fair, convenient, and effective, as Costco's data for the Unmatched Replacement Transaction Class members' transactions supports having these Settlement Class Members submit a Claim Form matching their original, return, and replacement transactions that resulted in an out-of-pocket payment for a replacement battery, attesting that they purchased and returned the listed Interstate Batteries. *See* Settlement ¶ 3.1.2. Appointing the Settlement Administrator reinforces the efficacy of the relief process because a qualified third party will be designated to manage the entire process. *See Id.* ¶¶ 3.1-3.6. Thus, this

Settlement satisfies Rule 23(e)(2)(C)(ii) and (D).[4]

### iii.   Complexity, Expense, and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system; require a massive expenditure of public and private resources; and, given the relatively small value of the claims compared to the cost of individual lawsuits by class members, would be impracticable. Joint Dec. ¶ 33. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. *Id.*

### iv.   Stage of Proceedings

Courts consider the stage of proceedings at which a settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

As fully discussed above, the Settlement here was reached after extensive, contested litigation and after discovery was completed. Joint Dec. ¶ 34. After twice fully briefing their class certification motion, and attending a class certification hearing, Class Counsel went into the settlement conference with Judge Reinhart armed with full knowledge of the damages at issue after consulting with a data expert and knowing the arguments for and against class certification. *Id.* As a result, Class Counsel was well-positioned to evaluate the strengths of Plaintiff's claims, Costco's defenses, and prospects for success. *Id.*

### E.   Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiff and Class Counsel respectfully request the Court certify the Settlement Classes, as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class – *i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied . . ." *Papa v. Grieco Ford Fort Lauderdale, LLC,* No. 18-21897-CIV, 2019 WL 11623985, at *2 (S.D. Fla. Jan. 28, 2019) (citations omitted). The manageability of a potential trial need not be addressed because if the Settlement is approved, the need for a trial would be eliminated. *Id.*

Here, the Rule 23(a) and (b)(3) requirements are met. Certification of the proposed

---

[4] The Court should also find that the Settlement's provision regarding Class Counsel attorneys' fees and costs (paid separately and apart from the recovery for the Settlement Classes) likely satisfies Rule 23(e)(2)(C)(ii).

Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to opt-out, of their right to object and be heard on its fairness, and of the date, time, and place of the Final Approval Hearing. *See* Manual for Compl. Lit., Fourth, at §§ 21.632, 21.633 (2004). For the reasons set forth below, certification is appropriate. In accordance with Rule 23(e)(1), the Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable.

### i.    The Settlement Class satisfies the requirements of Rule 23(a)

Certification under Fed. R. Civ. P. 23(a) requires:

> (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) questions of law or fact common to the class must exist ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation").

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 668 (S.D. Fla. 1997).

**Numerosity.** The numerosity requirement is satisfied because the Settlement Class has thousands of members, and joinder of all is impracticable. Joint Dec. ¶ 35; *see* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

**Commonality.** "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, Fed. R. Civ. P. 23(a)(2)'s commonality requirement is readily satisfied. Plaintiff has asserted multiple questions of law and fact – centering on whether Costco members are owed money for having to pay out-of-pocket for "free replacement" batteries that were replaced under warranty – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same or similar way, and that would generate common answers. Joint Dec. ¶ 36. Additionally, Plaintiff alleges all Settlement Class members purchased and replaced Interstate Batteries, were subject to the same warranty and were all charged money for replacing the battery. *Id.* There will be no issue proving Settlement Class members have suffered the same injury. *Id.*

*Typicality.* Fed. R. Civ. P. 23(a)(3) typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). Here, Plaintiff's claims arise from the same event as the absent Settlement Class members' claims, Plaintiff is typical of the entire Settlement Class. Here, Plaintiff purchased an Interstate Battery with the same warranty as the rest of the Settlement Class members and paid out-of-pocket to replace the battery under warranty. Joint Dec. ¶ 37.

*Adequacy.* Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Fed. R. Civ. P. 23(a)(4) relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotations omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Classes, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Joint Dec. ¶ 38. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel. *Id*. ¶ 39. Each firm is a leader in the class action field and each attorney has extensive experience prosecuting complex class actions which has helped them to vigorously litigate on behalf of the Settlement Class thus far. *See Id*. ¶¶ 39-40, Exhibits 1-2 thereto. Class Counsel has devoted substantial time and resources and will continue to do so. *Id.* ¶ 43. Therefore, Plaintiff and Class Counsel satisfy Rule 23(a)(4). Fed. R. Civ. P. 23(g)(1)(A)-(B) and Rule 23(e)(2)(A) are also satisfied.

### ii.     The Settlement Class also satisfies the requirements of Rule 23(b)(3)

Rule 23(b)(3) requires a "direct impact" of common issues of law and fact "on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotations omitted). Rule 23(b)(3) predominance is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible issues that are

individual to some Settlement Class members. Joint Dec. ¶ 44. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *Id*. ¶ 45; *see* Fed. R. Civ. P. 23(b)(3).

For these reasons, the Court should certify the Settlement Classes.

### F. The Court Should Approve the Proposed Notice Program

Fed. R. Civ. P. 23(e)(1)(B) states: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, substantive claims must be "adequately described" and "the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotations omitted); *see also* Manual for Compl. Lit., Fourth, § 21.312 (2004).

The Notice Program detailed above satisfies all of these criteria. As recited in the Settlement Agreement and above, the Notice Program will inform Settlement Class members of the Settlement's substantive terms. Joint Dec. ¶ 46. It will advise Settlement Class members of their options for remaining part of the Settlement Class or for opting out of the Settlement; for submitting Claim Forms; for objecting to the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs; and how to obtain additional information about the Settlement. *Id.* The Notice Program is designed to directly reach a very high percentage of Settlement Class members with Email Notice or Postcard Notice, with consideration that Settlement Class members' contact information is readily available to Costco. *Id.* Therefore, the Court should approve the Notice Program and the form and content of the Notices. Settlement, Exhibits 1-3.

### V.   PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

In connection with Preliminary Approval, the Court should also set the Final Approval Hearing date and time. Other deadlines in the approval process, including the deadlines for opting out from the Settlement Class or objecting to the Settlement, will be determined based on the original Final Approval Hearing date.  Class Counsel propose the following schedule:

| | |
|---|---|
| Notice Program Begins (Email and Postcard Notices go out) | 30 days after Preliminary Approval Order |
| Notice Program Ends (remailing of bounced Emails or undeliverable Postcard Notices) | 60 days after Notice Program begins |
| Deadline for Class Counsel to file their Motion for Final Approval of the Settlement, including Class Counsel's Application for Attorneys' Fees and Costs | 45 days prior to the Final Approval Hearing |
| Deadline for Settlement Class members to Opt-Out of the Settlement | 30 days prior to the Final Approval Hearing |
| Deadline for Settlement Class Members to Object to the Settlement | 30 days prior to the Final Approval Hearing |
| Deadline to Submit Claim Forms | 60 days after the Notice Program begins |
| Final Approval Hearing | _____ __, 2024, at ____ ___.m. (Preferably the week of 2/19/24 or after) |

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Classes, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claims process; (5) approve the opt-out and objection procedures set forth in the Notice Program; (6) appoint Plaintiff as Class Representative; (7) appoint as Class Counsel the law firms and attorneys listed in Section 1.1 of the Agreement; (8) continue to stay the Action pending Final Approval; and (9) schedule a Final Approval Hearing. A proposed Preliminary Approval Order is attached as ***Exhibit D***.

<u>**CERTIFICATE OF COUNSEL PURSUANT TO LOCAL RULE 7.1(a)(3)**</u>

Counsel for Plaintiff conferred with counsel for Costco, and Costco does not oppose the relief requested in this Motion.


Dated: September 8, 2023.                           Respectfully submitted,


<u>*/s/ Jeff Ostrow*</u>
Jeff Ostrow FBN 121452                             Geoffrey Stahl FBN 89240
Jonathan M. Streisfeld FBN 117447                  Steven Calamusa FBN 992534
**KOPELOWITZ OSTROW P.A.**                         **GORDON & PARNTERS, P.A.**
1 West Las Olas Blvd. Suite 500                    4114 Northlake Blvd.
Fort Lauderdale, FL 33301                          Palm Beach Gardens, FL 33410
Telephone: 954.332.4200                            Telephone: 561.799.5070
ostrow@kolawyers.com                               gsthal@fortheinjured.com
streisfeld@kolawyers.com                           scalamusa@fortheinjured.com

*Counsel for Plaintiff and the Settlement Class*

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 8, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *<u>/s/ Jeff Ostrow</u>*
Jeff Ostrow