**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOHN SKRANDEL, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

Defendant.

CASE NO. 9:21-cv-80826-BER

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPLICATION FOR ATTORNEYS' FEES AND COSTS, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, John Skrandel, on behalf of himself and the proposed Settlement Classes[1] of individuals similarly situated, with the consent of Defendant, Costco Wholesale Corporation, respectfully requests entry of an order granting Final Approval of the class action settlement as set forth in the Parties' Settlement Agreement, certifying the Settlement Classes, appointing Class Counsel, appointing Plaintiff as Class Representative, approving an award of attorneys' fees and costs, and entering final judgment.

## I. INTRODUCTION

Plaintiff seeks Final Approval of a proposed Settlement against Costco following novel and highly contested class action litigation. Plaintiff alleges when Costco members purchased a recreational or automotive Interstate Battery with "free replacement" on the label, and later sought to replace the battery under warranty, Costco charged the member out-of-pocket for any increase in cost of the replacement battery. Costco denies liability. The Settlement represents an excellent result offering Settlement Class Members nearly 100% of their total likely recoverable damages.

Following significant litigation, the Settlement is the result of arm's-length negotiations achieved with the assistance of the Honorable Bruce E. Reinhart providing substantial and meaningful relief. The total Settlement benefits equal $3,469,637.00. That includes $2,417,637.00 for the Settlement Classes (a non-reversionary cash settlement fund of $1,119,583.00 for the

[1] All capitalized terms herein have the same meaning as those set forth in the Parties' Settlement Agreement and Releases, as amended, attached as ***Exhibits A** and **B**, respectively***.

Matched Replacement Transaction Settlement Class and $1,298,054.00 in cash available for the benefit of the Unmatched Replacement Transaction Settlement Class. Costco also agrees to separately pay up to $750,000.00 in attorneys' fees and costs (subject to Court approval), and all Settlement Administration Costs estimated at $302,000, neither of which will reduce the Settlement Class Member Payments. In consideration, Plaintiff and all Settlement Class Members will release Costco from all claims made in the Action. The Settlement will avoid further delay in providing relief to the Settlement Classes. Thus, for the reasons addressed below, the proposed Settlement is fair, reasonable and adequate, and therefore warrants Final Approval. Lastly, Class Counsel's request for attorneys' fees and costs is likewise reasonable and should be approved.

## II. PROCEDURAL HISTORY

The history of this Action is fully set forth in the Procedural History section of the Motion for Preliminary Approval, which is incorporated by reference to avoid burdening the Court with repetition. Dkt. 152 at § II. It is also set forth in the Joint Declaration of Class Counsel, attached as ***Exhibit C*** ("Decl."), ¶¶ 5-23. On September 12, 2023, this Court granted Preliminary Approval, conditionally certified the Settlement Class, and set a Final Approval Hearing. Dkt. 153. As the Agreement contemplated, the Parties entered into the Amendment to Settlement Agreement and Release, dated October 9, 2023, to modify the Settlement as to the Matched Replacement Transaction Settlement Fund, as well as the maximum amount Costco will pay for Valid Claims made by the Unmatched Replacement Transaction Settlement Class.[2] Dkt. 157.

## III. MATERIAL SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

### A. The Settlement Classes

The proposed Settlement establishes two Settlement Classes as follows:

> **Matched Replacement Transaction Settlement Class:** All current and former Costco members who returned and replaced an Interstate Battery under warranty during the Class Period at a Costco warehouse located in the United States, and who meet the Matched Replacement Criteria.
>
> **Unmatched Replacement Transaction Settlement Class:** All current and former Costco members who returned and replaced an Interstate Battery under warranty

[2] Plaintiff's expert analyzed Costco's production of additional data, produced after the Settlement was reached, for all relevant transactions through the end of the Class Period, which is tied to when Costco stopped using a "Free Replacement" label on Interstate Batteries in December 2019. Decl. ¶ 22. Warranties expired as of that end date. *Id.*

> during the Class Period at a Costco warehouse located in the United States, and who meet the Unmatched Replacement Criteria.

Agreement ¶ 1.3., *et seq*. The Settlement excludes all persons who are employees, directors, officers, agents of Costco or its subsidiaries and affiliated companies, the Court, the Court's immediate family, and Court staff. *Id.* The Class Period is May 7, 2016, through June 30, 2023.

**B. Settlement Consideration**

As introduced above, Costco agreed to create a non-reversionary $1,119,583.00 cash settlement fund for the Matched Replacement Transaction Settlement Class, and to make $1,298,054.00 available to the Unmatched Replacement Transaction Settlement Class. Agreement ¶ 3.1; Amendment ¶¶ 1-2 (substituting Definition R. and ¶3.1.2). Costco also agreed to separately pay up to $750,000.00 for attorneys' fees and costs (subject to Court approval) and all Settlement Administration Costs, estimated to be $302,000.00. Agreement ¶¶ 7.5, 8.1, 8.2. This is unique compared to most class action settlements where attorneys' fees, costs, and settlement administration costs are deducted from the amount payable to the settlement class. Decl. ¶ 25.

**C. The Settlement Administrator, Notice Program, and Claim Process**

The Settlement Administrator is Angeion Group, LLC, which implemented the Notice Program that was designed to and did provide the best notice practicable and was tailored to take advantage of the Defendant's available information about the Settlement Classes. Decl. ¶¶ 48-49. It was reasonably calculated under the circumstances to apprise the Settlement Classes of the Action, the Settlement terms, the Claim Process, that Class Counsel would file its Application for Approval of Attorneys' Fees and Costs Payment, and their rights to opt-out of or object to the Settlement. *Id*. *See also* Declaration of Steven Weisbrot of Angeion Group LLC on Settlement Administration ("Admin. Decl."), attached as ***Exhibit D***.

The Settlement Classes include approximately 342,368 members. *Id.* ¶ 5. The Notice Program requires sending Email Notice and Postcard Notices. *Id.* ¶¶ 7-15. On October 26, 2023, 177,053 Email Notices were sent to Settlement Class members for whom Costco had an available email address. *Id.* ¶ 8. On October 26, 2023, Postcard Notices were sent to 154,591 Settlement Class members for whom Costco did not have a valid and available email address. *Id.* ¶ 10. On November 8, 2023, 5,797 Postcard Notices were also sent to Settlement Class members for whom Email Notices were returned undeliverable, using an available mailing address. *Id.* ¶ 11. On December 1, 2023, Postcard Notices that had been returned undeliverable were re-mailed if a

forwarding address existed or a skip trace provided an updated address (2,393 out of 4,641 were re-mailed). *Id.* ¶ 13. The Settlement Administrator confirms that direct Email Notice and Postcard Notice was successfully delivered to approximately 96.32% of the members of the Settlement Classes. *Id*. ¶ 15. During the Notice Program, the Parties agreed to send a reminder Email Notice to the Unmatched Replacement Transaction Settlement Class who had a valid email address, had not opened the original Email Notice, and had not yet submitted a Claim Form. *Id.* ¶ 14. Reminder Email Notices were sent to 62,197 members. *Id.*

The Long Form Notice is available both via hard copy delivery on request to the Settlement Administrator and for viewing on the Settlement Website (www.batterywarrantyclassaction.com), which was publicly available beginning on October 26, 2023. *Id*. ¶ 16. Other Action-related documents are available on that website. A toll-free telephone number with answers to frequently asked questions was publicly available beginning on October 26, 2023. *Id*. ¶ 18.

The Notice Program also included the Claim process. Agreement ¶ 3.1.2. Notices included pre-populated Claim Forms for the Unmatched Replacement Transaction Settlement Class. *Id.* The Settlement Administrator determines Valid Claims and sends deficiency notices via email to Claimants. *Id.* ¶¶ 3.5-3.6. The Claim Form Deadline passed on January 1, 2024, and as of January 14, 2023, 2,050 Claim Forms were submitted. Admin. Decl. ¶ 20.

**D. Payments to Settlement Class Members**

Matched Replacement Transaction Settlement Class Members will automatically receive a payment. Agreement ¶ 3.1.1. Payments will be for the full amount of money they paid out-of-pocket for their replacement Interstate Battery, based upon Costco's Interstate Battery transaction records, and will be issued by paper check or digitally. *Id*. ¶ 3.2.1.

Payments to Unmatched Replacement Transaction Settlement Class Members require the submission of Claim Forms no later than 60 days from the Notice Date (January 1, 2024 deadline). *Id*. ¶ 3.4. The Claim Form was available on the Settlement Website or on request to the Settlement Administrator and could be submitted electronically or by mail. *Id*. ¶¶ GG, 3.4. Claim Forms were pre-populated with Costco's purchase and return transaction records, and these Settlement Class Members were required to match their original, return, and replacement transactions resulting in an out-of-pocket payment for a replacement battery. *Id.* ¶ 3.1.2. They will also receive full payment for the amount they paid out-of-pocket, by check or digitally. *Id*. ¶ 3.1.2, 3.2.1.

**E. Funds Remaining After Distribution**

Following distribution of the Matched Replacement Transaction Fund, if digital payments are not completed or fail, or checks remain uncashed after 120 days, the Parties agree unclaimed amounts should be paid to a *cy pres* recipient of the Parties' collective choosing and related to the Action's subject matter, subject to Court approval. Agreement ¶ 3.2.2. The Parties will file a motion proposing and seeking approval of a *cy pres* recipient, if necessary.

**F. Release of Claims**

Plaintiff and Settlement Class Members (those who did not opt out) will be bound by the Settlement terms, including the release and discharge of the Released Claims against the Released Parties. The Released Claims are narrowly tailored and are limited to the claims that that have been or could have been asserted in the Action related to the purchase, sale, and warranty of Interstate Batteries during the Class Period, excluding personal injury claims. Agreement ¶¶ 10.1-10.2.

**G. Class Counsel Attorneys' Fees and Costs.**

Although Class Counsel's total lodestar and litigation costs incurred well exceed $750,000.000 (as described *infra*), Costco has agreed, subject to Court approval, to an Attorneys' Fees and Costs Payment to Class Counsel of up to $750,000.00, and, therefore, Costco does not oppose this application. Agreement ¶ 8.1. The discussion of attorneys' fees and costs did not take place until after all material terms of the Settlement had been agreed on by the Parties. Decl. ¶ 26.

## IV. MOTION FOR FINAL APPROVAL

As a prerequisite to directing Notice of the Settlement, the Court determined it would likely be able to approve the Settlement and certify the Settlement Class. Dkt. 152; *see* Fed. R. Civ. P. 23(e)(1)(B). This Court should conclude that the Settlement is fair, reasonable, and adequate, and grant Final Approval. *See* Fed. R. Civ. P. 23(e)(2).

**A. <u>The Legal Standard for Final Approval</u>**

The Eleventh Circuit recognizes the strong public and judicial policy favoring the pretrial settlement of class-action lawsuits. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813 *4 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149 at *3 (S.D. Fla. June 15, 2010) (citation omitted). Approving a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, No.

03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). The Court previously granted preliminary approval of the Settlement. Dkt. 153.

"Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement is clearly within the range of reasonableness, and it satisfies all standards for Final Approval, including Plaintiff's obligations under Rule 23(e)(1). This Court should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e), Committee Notes on Rules–2018 Amendment.

Rule 23(e)(2) includes a mandatory but non-exhaustive set of final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3] In conjunction with the Rule 23(e)(2) factors, exercising its discretion, the Court may analyze the Settlement using the so-called *Bennett* factors.[4] Final Approval here is warranted under the applicable factors.

[3] There is no agreement made in connection with the Settlement that is required by Fed. R. Civ. P. 23(e)(3) to be identified other than the Settlement.

[4] *See Bennett*, 737 F.2d at 986 (factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved).

Similar to Rule 23, a court should make findings that settlement "is not the product of collusion" and "that it is fair, reasonable, and adequate." *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (citing *Bennett*). Courts have continued to weigh the *Bennett* factors after the 2018 amendments to Rule 23(e)(1). *See In re Equifax Inc. Customer Data Breach Litig*, 999 F.3d 1247, 1273 (11th Cir. 2021).

**B. <u>The Settlement Meets the Criteria for Final Approval</u>**

**1. Adequacy of Representation - Rule 23(e)(2)(A)**

As the court held in *Petersen v. Am. Gen. Life Ins. Co*., 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *1 (M.D. Fla. Oct. 22, 2019):

> In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]"

*Id*. at *5 (footnote and additional citation omitted). *See also Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation."). Here, Plaintiff is an adequate representative. His interests are coextensive and do not conflict with the interests of the Matched Replacement Transaction Settlement Class and Unmatched Replacement Transaction Settlement Class. Decl. ¶ 39. He has the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id*. Likewise, Class Counsel are experienced in complex class action litigation, including similar pricing and fee class actions, and they devoted substantial time and resources to vigorous litigation, evaluating the merits, and weighing the benefits against further litigation. *Id.* ¶¶ 27, 30.

Courts consider the stage of proceedings at which a settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). As detailed above, the Settlement here was reached after contested litigation and extensive discovery was completed. Decl. ¶ 35. The parties fully briefed Plaintiff's class certification motions twice (due to the Court reopening expert discovery after the hearing on the initial class certification motion). *Id.* ¶ 15. After mediation ended in an impasse earlier in the litigation, Class Counsel went into a settlement conference with Judge Reinhart armed with full knowledge of the damages at issue and knowing the arguments for and against class certification. *Id.* ¶ 35. The parties continued to consult with data experts even after the Preliminary Approval to ensure accuracy. *Id.* ¶ 23. Thus, Class Counsel was (and remains) well-positioned to evaluate the Plaintiff's claims strength, Costco's defenses, and prospects for success. *Id.* ¶ 35.

**2. Settlement Was Negotiated at Arm's Length - Rule 23(e)(2)(B)**

"A proposed settlement action should be approved as long as it is 'fair, adequate and reasonable and it is not the product of collusion between the parties.'" *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 672 (S.D. Fla. 2006) (quoting *Bennett*, 737 F.2d at 986); *see also Lipuma*, 406 F. Supp. 2d at 1318-19 (settlement approved where "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel"). Here, the Settlement is the result of extensive, arm's-length negotiations between experienced attorneys familiar with class action litigation and with the legal and factual issues at the center of this Action. Decl. ¶ 27. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of class action cases. *Id.* ¶ 30. This experience proved beneficial to Plaintiff and the Settlement Classes during Settlement negotiations. *Id.* Class Counsel conducted significant informal discovery before the first mediation and completed formal discovery before the settlement conference enabling them to gain a complete understanding of the evidence related to central issues, including damages and liability, and prepare for well-informed settlement negotiations. *Id.*; *see Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *8 (S.D. Fla. Sept. 6, 2019) (the record showed substantial discovery, which supported finding that the settlement was reasonable). Full class certification briefing further aided the negotiations. Decl. ¶ 30. The negotiations that culminated in the Settlement were conducted over many weeks, were at arm's-length and extensive, and overseen by Judge Reinhart. *Id.* ¶ 27; *see Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Moreover, attorneys' fees and costs were not discussed until the Parties agreed to all other material Settlement terms. *Id.* ¶ 26. For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986. Thus, Rule 23(e)(2)(B) is satisfied.

**3. Adequacy of the Settlement Relief - Rule 23(e)(2)(C)**

Class Counsel have significant class action experience and strongly believe the Settlement is fair, reasonable, and adequate. Decl. ¶ 42; *see Bennett*, 737 F.2d at 986. The Court may rely upon the judgment of experienced counsel. *See, e.g.*, *In re Equifax*, 999 F.3d at 1274 (trial judge "should be hesitant to substitute its own judgment for that of counsel") (internal quotations omitted). Rule 23(e)(2)(C)'s factors also show the Settlement is fair, reasonable, and adequate.

***a. Settlement Benefits Are Outstanding***

In determining a settlement's fairness given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). *See also In re Checking Account Overdraft Lit*., 830 F.Supp.2d 1330, 1346 (S.D.Fla.2011) (a recovery of between 9% and 45% was an "exemplary result"). When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* Here, Costco agreed to pay approximately 100% of the Settlement Classes' likely recoverable damages. This is highly uncommon in class litigation, making the cash benefits beyond reasonable when considering the complex and uncertain issues in the Action. Decl. ¶ 32.

This Settlement far exceeds the reasonableness and adequacy bar, as settlements are, as a matter of course, considered reasonable when the class recovers only a fraction of its losses. It provides an extremely fair and reasonable recovery in light of the defenses and challenging, unpredictable litigation path Plaintiff would have continued to face. *Id.* ¶ 33.

***b. Costs, Risks, and Delay of Trial and Appeal***

Class Counsel believe Plaintiff has a strong case, but even so, Class Counsel are mindful that Costco advanced significant defenses. Decl. ¶ 33. Apart from the risks, continued litigation would have involved substantial delay and additional great expense, which further counsels in favor of Final Approval. *Id.* ¶ 28. The uncertainties and delays from this process would have been significant. *Id*. The traditional means for handling claims like those at issue here would tax the court system; require a massive expenditure of public and private resources; and, given the relatively small value of the claims compared to the cost of individual lawsuits by class members, would be impracticable. Decl. ¶ 34. Thus, the Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner. *Id*.

Class Counsel are confident in the strength of Plaintiff's case and are also pragmatic of the risks and challenges. Decl. ¶ 31. They are aware that there are uncertainties in a trial, particularly given the case theory and expert issues here. *Id.* Class Counsel are also aware of the risks inherent from any appeal and subsequent proceedings of a successful trial verdict. *Id.* Further, it is unclear

whether Plaintiff would be able to certify a class for purposes of trial. *Id.* This Action involved several major litigation risks that loomed in the absence of settlement, including, but not limited to, class certification, summary judgment, *Daubert* motions, trial, and appellate review following a final judgment. *Id*. Under the circumstances, and considering the Settlement offers Settlement Class Members payment of approximately 100% of the value of their claims, Class Counsel determined the Settlement outweighs the risks of continued litigation. *Id.*

Given the myriad risks attendant to these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise. *See, e.g.*, *In re Checking Account Overdraft Lit.*, 830 F.Supp.2d at 1345 ("The claims and defenses are complex; litigating them has been difficult and time consuming. Although this litigation has been pending for more than two years, recovery by any means other than settlement would require additional years of litigation in this Court and the appellate courts.") With Settlement Class Members having the ability to receive 100% of their likely recoverable damages, a successful trial would not yield more favorable results than the Settlement terms already achieved, and recovery might be delayed for years by an appeal. *See Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *2 (S.D. Fla. Feb. 3, 2016) (approving settlement providing "near-complete relief to class members on a claims-made basis–as extraordinary"); *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

All that is certain is that with continued litigation, the putative class would face a notably longer wait before receiving any potential recovery, if they received any recovery at all. Decl. ¶ 29. Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent class recovery, and the benefits outweigh the risks of continued litigation. *Id.*; *see also In re Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"). This Settlement provides substantial relief without further delay and avoids the risk of an adverse judgment at trial or on appeal. Rule 23(e)(2)(C)(i) is satisfied.

***c. Effective Method of Distributing Relief and Processing Claims***

Settlement Class Members in the Matched Replacement Transaction Settlement Class do not have to submit claims or take any other affirmative step to receive Settlement benefits. Agreement ¶ 3.1.1. Instead, the Settlement Administrator will automatically make payments to the Matched Replacement Transaction Settlement Fund. *Id.* The Claim submission method for

Unmatched Replacement Transaction Cash Payments is also fair, convenient, and effective, as Costco's data for the Unmatched Replacement Transaction Class members' transactions supports having these Settlement Class Members submit a Claim Form matching their original, return, and replacement transactions that resulted in an out-of-pocket payment for a replacement battery, attesting that they purchased and returned the listed Interstate Batteries. *See Id.* ¶ 3.1.2. Appointing the Settlement Administrator reinforces the efficacy of the Claims process because a qualified entity will be designated to manage the entire process. *See Id.* ¶¶ 3.1-3.6. The Settlement Administrator is highly qualified to manage the entire process. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1245 (S.D. Fla. 2016) (noting presence of an experienced administrator); Decl. ¶ 48; Admin Decl. ¶ 2 (citing Dkt. 152-3). The Settlement benefits will be equitably distributed to compensate each Settlement Class Member consistent with the value of their individual claims. Settlement Class Members will be treated equally, are eligible to receive the same benefit, and will be compensated the same way as other members of the respective Settlement Classes through fair, convenient, and effective Settlement Class Member Payments. Thus, this Settlement satisfies Rule 23(e)(2)(C)(ii).[5]

***d. Reasonable Terms Relating to Attorneys' Fees***

Whether the attorneys' fees are reasonable on their own terms is a Fed. R. Civ. P. 23(h) analysis. By contrast, under Rule 23(e)(2)(C)(iii), the question is not the fee amount in a vacuum, but rather whether attorneys' fees impact the other settlement terms. Here, attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms, and Costco will separately make the Attorneys' Fees and Costs Payment. *See also James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, No. 3:07–CV–598–TJC–MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). Also, the Settlement, including Settlement Class Member Payments, is not contingent on approval of attorneys' fees and costs. Agreement ¶ 8.3. As argued in Section IV,

---

[5] The Court should also find that the Settlement's provision regarding Class Counsel attorneys' fees and costs (paid separately and apart from the recovery for the Classes) satisfies Rule 23(e)(2)(C)(ii).

*infra*, the proposed Attorneys' Fees and Costs Payment is also fair and reasonable.

***e. Agreements Identified Pursuant to Rule 23(e)(3)***

Rule 23(e)(3) states "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no other agreements than what are in the Agreement.

**4. Equitable Treatment of Settlement Class Members Relative to Each Other - Rule 23(e)(2)(D)**

As noted in Section IV.B.3.c. above, each Matched Replacement Transaction Settlement Class member and Unmatched Replacement Transaction Settlement Class member is eligible to receive the same benefits as other members of their respective Settlement Class. Thus, the proposed Settlement treats all Settlement Class members equitably. Agreement ¶¶ 3.1.1-3.1.2.

**5. The Opinions of Class Counsel, Plaintiff, and Absent Settlement Class Members Favor Approval of the Settlement**

Class Counsel endorse the Settlement. The Court should give "'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'" *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *12 (S.D. Fla. July 13, 2021) (citations omitted).

There is no opposition to the Settlement. As of January 14, 2024, there are only 17 opt-outs and no objections. Admin. Decl. ¶ 22. If any occur before the January 30, 2024 deadline, the Court will be informed. This is a clear indication the Settlement Classes agree with the Settlement. Even if a timely objection is made, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co*., 211 F.R.D. 457, 467 (S.D. Fla. 2002).

Any settlement requires the Parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Decl. ¶ 28. Class Counsel believe the claims asserted are meritorious and Plaintiff would prevail at trial. *Id.* Costco denies liability; believes it acted in good faith and in compliance with the law and would prevail in opposing class certification; and has shown a willingness to continue litigation by opposing Plaintiff's class certification motions. *Id.* With continued litigation, the putative class will undoubtedly have a long wait for their recovery, if they have one at all. *Id.* ¶ 29. Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery and the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, including, the risks, time,

and expenses associated with completing a trial and any appellate review. *Id.*

### C. Certification of the Settlement Class is Appropriate

Plaintiff seeks final certification of the Settlement Classes pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Generally, an action may be certified for class treatment for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997). The Court conditionally certified the Settlement Classes, Dkt. 153, and there is no reason to deviate from that ruling.

#### 1. The Settlement Classes Satisfy the Rule 23(a) Requirements

***Numerosity.*** Numerosity is satisfied because the Settlement Classes have over 300,000 members, and joinder of all is impracticable. Admin Decl. ¶ 5; *see* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied with at least 31 class members "from a wide geographical area").

***Commonality.*** "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation omitted). Here, Fed. R. Civ. P. 23(a)(2)'s commonality is readily satisfied. Plaintiff has asserted multiple questions of law and fact – centering on whether Costco members are owed money for having to pay out-of-pocket for "free replacement" batteries that were replaced under warranty – that are common to the Settlement Class, are alleged to have injured all Settlement Class members in the same or similar way, and would generate common answers. Decl. ¶ 37. Additionally, Plaintiff alleges all Settlement Class members purchased and replaced Interstate Batteries, were subject to the same warranty, and were all charged money for replacing the battery under warranty. *Id.* There will be no issue proving Settlement Class members have suffered the same injury. *Id.*

***Typicality.*** Fed. R. Civ. P. 23(a)(3) typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,*741 F.2d 1332, 1337 (11th Cir. 1984). Here, as Plaintiff's claims arise from the same event as the absent Settlement Class members' claims, he is typical. Here, Plaintiff purchased an Interstate Battery with the same warranty as the rest of the Settlement Class members and paid out-of-pocket to replace the battery under warranty. Decl. ¶ 38.

***Adequacy.*** Plaintiff and Class Counsel also satisfy the adequacy of representation

requirement. Adequacy under Fed. R. Civ. P. 23(a)(4) relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotations omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Classes, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Decl. ¶ 39. Plaintiff is pursuing the same legal theories as the rest of the Settlement Class members relating to the same course of Costco's conduct. *Id.* Plaintiff seeks remedies equally applicable and beneficial to himself and all other members of the Settlement Classes. *Id.* He has actively participated in the litigation. *Id.* Further, Plaintiff and the Settlement Classes are represented by qualified and competent Class Counsel. *Id*. ¶ 40. Each firm is a leader in the class action field and each attorney has extensive experience prosecuting complex class actions. *See Id*. ¶ 40, Exhibits 1-2 thereto. Class Counsel has devoted substantial time and resources and will continue to do so. *Id.* ¶ 44. Therefore, Plaintiff and Class Counsel satisfy Rule 23(a)(4). Fed. R. Civ. P. 23(g)(1)(A)-(B) and Rule 23(e)(2)(A) are also satisfied.

**2. The Settlement Classes Also Satisfies the Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires a "direct impact" of common issues of law and fact "on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotations omitted). Rule 23(b)(3) predominance is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to some Settlement Class members. Decl. ¶ 45. Further, resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *Id.* ¶ 46; *see* Fed. R. Civ. P. 23(b)(3).

For these reasons, the Court should certify the Settlement Classes.[6]

---

[6] Ascertainability is also satisfied. "The ascertainability inquiry is satisfied where membership is capable of being determined; specifically, a proposed class is ascertainable if it is adequately

**D. <u>The Notice Program and Claim Process Satisfied Due Process and Rule 23</u>**

In addition to having personal jurisdiction over Plaintiff, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Classes because they received Notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Notice Program implemented by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23 that make sure settlement class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice process mechanics are within the Court's discretion, subject to broad reasonableness standards imposed by due process.

Here, following the Court's approval of the Notice Program, the Settlement Administrator directed notice to the Settlement Class via direct mail and/or email. Admin. Decl. ¶¶ 7-15. A Long Form Notice was also available to Settlement Class members on request and posted on the Settlement Website. *Id.* ¶ 16. To ensure notice reached as many Settlement Class members as possible, the Settlement Administrator performed reasonable address traces for the initial Postcard Notice and to re-mail any Postcard Notices returned undeliverable. *Id.* ¶¶ 12-13. All of the Notices included important Settlement information, including how to opt-out or object, how to submit a Claim Form, and where to find more information about the Action or to contact Class Counsel. Decl. ¶ 27. Reminder Email Notices were sent about the Claim process. *Id.* ¶ 14. The Notice fully apprised the Settlement Classes of their rights. Additionally, the Notice Program was designed to satisfy Rule 23 and due process considerations. Decl. ¶ 49; Admin Decl. ¶ 27. As Rule 23 requires, the Notices generally described the Settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard, and the Notices contained all of the critical information required to apprise Settlement Class members of their rights. Decl. ¶ 51. Thus, the Notice Program was adequate to allow Settlement Class members with adverse viewpoints to come forward and be heard.

The Federal Judicial Center states that a notice plan that reaches 70% of class members reaches a "high percentage" and is within the "norm." Admin. Decl. ¶ 26. Here, notice reached

---

defined such that its membership is capable of determination." *Ferron*, 2021 WL 2940240, at *17 (citing *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1302-03 (11th Cir. 2021)). Both Settlement Classes are objectively defined, and membership is verified using Costco's Interstate Battery transaction data. For the Unmatched Replacement Transactions Settlement Class, the Claim Form allows for objective self-identification. *Id.*; Decl. ¶ 47.

approximately 96.32% of the Settlement Classes. *Id*. Notice here was the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class actions.

The Claim process has fairly permitted the submission of Claims forms by members of the Unmatched Replacement Transaction Settlement Class. *Id.* ¶ 16. The Settlement Administrator will be sending deficiency notices to help Claimants submit Valid Claims and is currently evaluating all Claim Forms for sufficiency. Admin. Decl. ¶ 21.

## V. APPLICATION FOR ATTORNEYS' FEES AND COSTS

Class Counsel respectfully request approval of a $750,000.00 Attorneys' Fees and Costs Payment. That amount is divided $543,652.00 for attorneys' fees and $206,348.00 for litigation costs. Decl. ¶¶ 53-55. Class Counsel and Costco negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id*. The requested fee is within the range of reasonableness under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). The Court should afford deference to the Parties' Agreement given the absence of collusion regarding attorney's fees. *See Roth v. Geico Gen. Ins. Co*., Nos. 16-62942-CIV, 18-61361-CIV, 2020 WL 10818393, at *2 (S.D. Fla. Oct. 8, 2020) (citing *Manners v. Am. Gen. Life Ins. Co*., No. Civ. A. 3–98–0266, 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) and noting that the agreement as to attorneys' fees "is entitled to great weight"); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving substantial weight to negotiated fee amount in the absence of any evidence of collusion).

Further, "[w]hen the parties agree to a fee that is to be paid separately by defendants rather than one that comes from, and therefore reduces, a settlement fund available to the class, . . . the danger of conflicts of interest between attorneys and class members is diminished." *Simerlein v. Toyota Motor Corp.*, No. 3:17-cv-1091 (VAB), 2019 WL 2417404, at *24 (D. Conn. June 10, 2019) (citations omitted). Thus, Class Counsel submit the requested fee is appropriate, fair, and reasonable and respectfully request it be approved.

### A. <u>The Requested Fee Is Reasonable Under the Percentage Method.</u>

#### 1. The Applicability of the Common Benefit Doctrine.

Class Counsel's requested $543,652.00 for attorneys' fees, evaluated under a constructive common fund analysis applying Eleventh Circuit precedent, constitutes approximately 15.7% of the total benefits made available to the Settlement Class and is reasonable. As introduced above, the Settlement includes a common fund for the Matched Replacement Transaction Settlement

Class and a reasonable claims-made settlement for the Unmatched Replacement Transaction Settlement Class. Together these benefits, along with Costco's agreement to separately pay Class Counsel for their attorneys' fees and costs and the Settlement Administration Costs, justify the Attorneys' Fees and Costs Payment that Class Counsel respectfully request.

Counsel whose work results in a substantial benefit to a class are entitled to a fee under the common benefit doctrine. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig*., 727 F. Supp. 1201, 1202 (N.D. Ill. 1989). It also ensures those who benefit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478. Indeed, due to the alignment of interests and the sake of efficiency, the percentage method should generally be used when like here the settlement's value can be reliably calculated.

The Eleventh Circuit's controlling authority is *Camden I*, which holds attorneys' fees in common fund cases must be calculated using the percentage rather than the lodestar approach.[7] 946 F.2d at 774-75. "Where class action settlements are concerned, courts will often classify the fee arrangement as a 'constructive common fund' that is governed by common-fund principles even when the agreement states that fees will be paid separately." *In re Home Depot, Inc., Customer Data Sec. Breach Litig*., 931 F.3d 1065, 1080 (11th Cir. 2019). This methodology may apply when the class counsel's attorney's fees are capped by agreement, as here. *Id. See also In re Johnson & Jonson Aerosol Sunscreen Mktg. Sales Pract. and Prod. Liab. Litig.*, No. 0:21-md-3015-SINGHAL/Valle, 2023 WL 2284684 (S.D. Fla. May 4, 2023) (approving defendant's

[7] A lodestar cross-check is not required in this Circuit. *See, e.g., In re Equifax*, 999 F.3d at 1280 n.26 (11th Cir. 2021). But "courts . . . sometimes apply a rough lodestar 'cross-check' to assess the reasonableness of the percentage-based fee. *In re Ethicon Physiomesh Flexible Compos. Hernia Mesh Prod. Liab. Litig.*, No. 1:17-md-02782-RWS, 2022 WL 17687425, at *6 (N.D. Ga. Nov. 14, 2022). Any cross-check should not "impose" the lodestar approach "through the back door." *See, e.g., SEC v. Davison*, No. 8:20-cv-325-MSS-MRM, 2023 WL 2931641, at *3 (M.D. Fla. Mar. 8, 2023) (citations omitted). Here, Class Counsel's lodestar as of the filing of this Motion is $1,519,468.00, translating to a lodestar multiplier of negative 3.6. Decl. ¶ 60, demonstrating the requested fee is reasonable. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (citation omitted) (noting lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5, while 'three appears to be the average.'"). *See also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023) (approving attorneys' fee request where class counsel presented a negative lodestar multiplier).

separate payment of attorneys' fees and costs under a constructive common fund).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20% to 30% of the fund" – though "an upper limit of 50% of the fund may be stated as a general rule." *Id.* (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where district court determined benchmark should be 30% and then adjusted the fee award higher in view of the circumstances of the case). The fee request falls within this accepted range.

Since this Settlement requires Costco to separately pay Class Counsel's attorneys' fees and costs, it does not provide a finite fund from which attorneys' fees will be deducted. Rather, **$1,119,583.00** will automatically be distributed to the Matched Replacement Transaction Settlement Class and **$1,298,054.00** was made available to the Unmatched Replacement Transaction Settlement Class. The total value of this class relief alone is up to **$2,417,637.00**. Notably, attorneys' fees and costs the defendant agrees to pay to class counsel, here **$750,000.00**, should be included in the calculation of a constructive common fund. *See In re Home Depot*, 931 F.3d at 1092 n.26 ("The formula would read like this: (percentage) x (payment to class + expected payment to counsel) = actual payment to counsel."). *See also, e.g.*, *Amin v. Mercedes-Benz USA*, LLC, No. 1:17-cv-01701-AT, 2020 WL 5510730, at *4 (N.D. Ga. Sep. 11, 2020) ("To determine the fee percentage from a constructive fund, courts add the requested fee and expenses to the denominator." (citing *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-mi-55555-WMR, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019)). Settlement Administration Costs, which here are estimated to be **$302,000.00** and Costco is separately paying, are also properly considered to be part of the Settlement Benefit. *See, e.g.*, *In re Equifax Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *37 (N.D. Ga. Mar. 17, 2020) ("It has long been the practice in this Court to use the gross amount of a common fund in calculating a percentage-based fee award without deducting the costs of notice or administration . . . . because notice and administration costs inure to the benefit of the class.") *aff'd in part, rev'd in part* 999 F. 3d 1247, 1284 (11th Cir. 2021) (affirming "rulings in their entirety, except as to the narrow issue of incentive

awards”). Thus, the total Settlement constructive common fund benefits equal **$3,469,637.00**. The attorneys’ fees requested will be **15.7%** of those total benefits.

Additionally, Eleventh Circuit precedent clearly states the calculation should include *all* potential relief made available to the class, not just the amount Settlement Class Members choose to claim and what Costco actually pays. *See Waters*, 190 F.3d at 1297 (for purposes of calculating attorneys’ fees, approving valuation based on total value of relief available, as “[t]he fact that there were a reduced number of claimants had no effect at all on the amount each class member received”). Indeed, “[t]he Supreme Court has approved the practice of basing attorneys’ fees off the total possible amount recoverable by members of the class, not the total amount actually recovered, as the ‘right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.’” *Arkin v. Pressman*, 38 F.4th 1001, 1006 n.4 (11th Cir. 2022) (citing *Van Gemert*, 444 U.S. at 480); *see also South v. Progressive Select Ins. Co.*, Nos. 19-cv-21760-WPD/Becerra, 19-cv-21761-WPD/Becerra, 2023 WL 2733548 (S.D. Fla. Mar. 21, 2023), *report and recom. adopted on* April 3, 2023 at Dkt. 258; *Poertner v. Gillette Co.*, 618 F. App’x 624, 628 n.2 (11th Cir. 2015) (“While no published opinion of ours extends *Camden I*’s percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so.”). *See also, e.g.*, *Montoya v. PNC Bank, NA*, No. 14-204740-CIV, 2016 WL 1529902, at *16 (S.D. Fla. Apr. 13, 2016); *Pinto*, 513 F. Supp. 2d at 1339; *Stahl v. MasTec, Inc.*, No. 8:05-CV-1265-T-27TGW, 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008). Thus, the attorneys’ fees should be judged on the entire common fund for the Matched Replacement Transaction Settlement Class and claims-made fund for the Unmatched Replacement Transaction Settlement Fund.

Applying the above-described standards, Class Counsel seek a reasonable amount of the constructive common fund. Accounting for the true common fund, claim-made fund, attorneys’ fees and costs, and estimated Settlement Administration Costs, all four distinct Settlement benefits, the requested attorneys’ fees amount is a wholly reasonable and well below benchmark.

**2. The Johnson Factors Support the Requested Attorneys’ Fees.**

The requested attorneys’ fees meet the *Camden I* guidelines and, at approximately 15.7% of the class benefits, is consistent with the lower end of the 20% threshold approved by the Eleventh Circuit. Therefore, it is justified under the case law and the facts. *See, e.g., Waters*, 190 F.3d at 1295 (approving fee of 33 1/3%); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-

02836-JLK, 2014 WL 11370115, at *13 (S.D. Fla. 2014) (awarding fees of 30%); *Pinto*, 513 F. Supp. 2d at 1342 (same). In selecting the percentage in a particular case, a district court should apply the factors from *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717 (5th Cir. 1974), as well as any other pertinent factors. *See Camden I*, 946 F.2d at 772. A consideration of the *Johnson* factors, as shown below, supports the reasonableness of the requested fee.

***a. The Time and Labor Required.***

This Action, filed on May 7, 2021, has required substantial time and labor. Class Counsel worked efficiently to investigate the claims; prepare the operative pleading; participate in extensive formal discovery, including written discovery and 11 depositions; analysis of extensive Interstate Battery transaction data; expert reports and depositions; twice prepare motions for class certification and related *Daubert* motions; prepare themselves for settlement discussions; thoroughly assess the options of settlement or litigation; mediate and later attend a settlement conference with Judge Reinhart; and settle the claims. Decl. ¶¶ 5-21. Class Counsel negotiated and prepared an exhaustive Agreement and incorporated exhibits, including robust Notice provisions to ensure fair and direct Notice to Settlement Class members, with a simple Claim process for the Unmatched Replacement Transaction Settlement Class. *Id.* ¶¶ 22-26. After preparing the Motion for Preliminary Approval, Class Counsel has extensively worked with both Plaintiff's and Defendant's data experts as well as Costco and the Settlement Administrator to implement the Notice Program and the Claim process. *Id.* ¶ 23. Class Counsel prepared this Motion and supporting declaration, working with Costco's Counsel and the Settlement Administrator. *Id.* Class Counsel has expended 2,222.6 hours for all of these efforts, and they will continue to spend significant time and effort (estimated at 50 hours) in connection with obtaining Final Approval and overseeing the Settlement Administrator's efforts to administer the Settlement and distribute the Settlement Benefits. Decl. ¶ 60.

Class Counsel were able to efficiently identify the pertinent issues in this Action because of their collective experience in litigating the claims and their class actions and complex litigation experience more generally. Decl. ¶¶ 40-42 and Ex. 1-2 thereto (firm resumes). Class Counsel's grasp of the issues and expertise provide an additional basis supporting the fee, as described below.

***b. The Novelty and Difficulty of the Questions.***

"It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "Attorneys should be

appropriately compensated for accepting complex and difficult cases." *Chis v. Peerless Indem. Ins. Co.*, No. 5:14-cv-277-MTT, 2016 WL 9185305, at *7 (M.D. Ga. Nov. 17, 2016) (citing *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2012 WL 12540344, at *3 (N.D. Ga. Oct. 26, 2012). "'Undesirability' and the risks and difficulty of the litigation should be evaluated from the standpoint of class counsel when they commenced the suit—not retroactively, with the benefit of hindsight." *Id.* (citations omitted). This Action presented difficult legal and factual issues, centering on whether Costco members are owed money for paying out-of-pocket for "free replacement" batteries under warranty. Decl. ¶ 62. If Plaintiff was unsuccessful, no relief would be afforded to him or the putative class. *Id.* Further, if Costco was successful in opposing class certification, at most plaintiff could individually prevail for a small dollar amount. *Id.*

Notwithstanding these challenges, Class Counsel and Costco worked to identify the population of Interstate Battery purchasers in Costco's records, with the need to refine the data even after Plaintiff's first motion for class certification was fully briefed. Decl. ¶ 63. There remained uncertainty as to which Costco members had acted to enforce the warranty leading to the Unmatched Replacement Transaction Settlement Class. *Id.* For those Settlement Class Members, a simple attestation that they indeed sought to replace the battery under warranty is required. *Id.* That Class Counsel were able to secure a Settlement on such favorable terms, notwithstanding the foregoing challenges, is a factor strongly supporting the requested fee.

***c. The Skill Requisite to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys.***

The next factors courts consider is the skill required and the skill, experience, and expertise of the attorneys, which are overlapping factors. *See Gevaerts v. TD Bank*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *12 (S.D. Fla. Nov. 5, 2015) ("In the private marketplace, counsel of exceptional skill commands a significant premium. So too should it here."). That Class Counsel faced challenges and obtained 100% relief for the Settlement Class demonstrates their skill, experience, and reputation.

This Court witnessed the quality of Class Counsel's legal work, including briefing two motions for class certification and attending the settlement conference, conferring a substantial benefit on the Settlement Class, facing significant litigation obstacles. Decl. ¶ 64. Class Counsel's work required the acquisition and analysis of detailed facts and law, including multiple requests to obtain additional and refined Interstate Battery transaction data from Costco. *Id*. In any given case,

the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. *Id.* ¶ 65. Litigation of this Action required counsel trained in class action law and procedure. *Id.*. Class Counsel possess these attributes, and their participation added value to the Settlement Classes' representation. *Id.* The record demonstrates the complex and novel challenges which Class Counsel met at every juncture. *Id.*

Assessing Class Counsel's quality of representation, the Court should also consider opposing counsel. *See Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). Costco is represented by very capable counsel, with the national firm Morrison & Foerster LLP, worthy adversaries. Decl. ¶ 66.

***d. Preclusion of Other Employment.***

But for this Action, Class Counsel would have spent time on other cases. Class Counsel worked 2,222.6 hours on this matter. Decl ¶ 60. Class actions are notably the most complex, requiring tremendous time. *Cotton*, 559 F.2d at 1331. This factor supports the requested fee.

***e. The Customary Fee.***

Complex consumer class litigation customarily is handled on a contingent basis because consumers are unwilling and unable to pay substantial hourly rates, and the potential low individual recovery usually does not justify the economic investment. The usual fee range for common fund cases is 20% to 30%, with 50% as the upper limit. *Camden I*, 946 F.2d at 774-75. The amount requested here of approximately 15.7% is at the bottom end of this customary range. Class Counsel's requested award from the constructive common fund is far below benchmark.

***f. Whether the Fee is Fixed or Contingent***

This Action was prosecuted on a contingent basis. If Class Counsel had not achieved a recovery, they would have received nothing, and would have suffered significant out-of-pocket losses due to the costs they advanced. This risk justifies their requested fee.

> A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548, *aff'd* 899 F.2d 21 (11th Cir. 1990) (citations omitted); § 15 Newberg and Rubenstein on Class Actions § 15:87, n.5 (6th ed.) ("A lawyer who both bears the risk of not

being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.") (citation omitted).

***g. The Amount Involved and the Results Obtained***

The most important factor in determining the appropriate fee award in a common fund case is generally considered to be the results obtained for the class. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1204-05 (S.D. Fla. 2006). Class Counsel secured excellent results for the Settlement Classes despite the challenges the Action presented. Other courts have held this factor favors the requested fee even where the settlement involved a lesser percentage of total potential damages. *See, e.g., Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255-56 (S.D. Fla. 2016) (settlement for 20% of total potential damages weighed in favor of requested fees of 33 1/3% of settlement value). The relief available to the Settlement Classes (excluding attorneys' fees and costs and Settlement Administration Costs benefits), is $2,417,637.00. Eligible Settlement Class Members can receive 100% of the out-of-pocket amount paid to Costco when replacing the Interstate Battery pursuant to the warranty. Agreement ¶ 3.1. And, due to the direct individual Notice and simple attestation on the Claim Forms for the Unmatched Replacement Transactions Settlement Class, Settlement Class Members will easily receive Settlement benefits. *Id.* ¶ 3.1.2.

***h. Awards in Similar Cases***

Awards in similar cases more than justifies the requested fees, which are, as a percentage, significantly lower than fees in similar cases. *See, e.g., Waters*, 190 F.3d at 1295 (11th Cir. 1999) (33 1/3%); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d. 1330, 1358 (S.D. Fla. 2011) (30%); *Columbus Drywall*, 2012 WL 12540344, at *6 (awarding fee of 33.3% and listing cases awarding fees based on similar or higher percentages); *Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in the Eleventh Circuit are "roughly one-third" of the benefit to the class and listing cases awarding fees of 30% or higher). One-third of the Settlement benefits is typically sought for attorneys' fees and approved in the Eleventh Circuit. Had Class Counsel sought such an award, it would equal $1,156,430.00, but they agreed to seek far less despite their hard work and time devoted to the action.

**i. *Other Factors*[8]**

Currently, there is no opposition to the Settlement terms or attorneys' fees requested. The economics involved in prosecuting a class action further supports the requested fee. *Camden I*, 946 F. 2d at 775. Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they advanced. Decl. ¶ 68. If not awarded fees, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *In re Checking Account Overdraft Litig*., 2014 WL 11370115, at *17 (S.D. Fla. Jan. 3, 2014). Not awarding attorneys' fees would discourage competent lawyers from acting as private attorneys general, thus weakening the deterrent impact of our laws. *See, e.g.*, *Columbus Drywall*, 2012 WL 12540344, at *1, 7.

For all the foregoing reasons, the Court should award the requested $543,652.00 for attorneys' fees as part of the Attorneys' Fee and Costs Payment, ordering that Costco pay it separately, as the Agreement provides.

**B. <u>The Court Should Reimburse Class Counsel for Their Costs.</u>**

The $750,000.00 Attorneys' Fees and Costs Payment requested incorporates litigation costs reasonably and necessarily incurred to successfully prosecute this Action. Class Counsel's lodestar exceeds that amount before considering Class Counsel's $206,348.00 in costs for court fees, process server fees, mediator fees, expert fees, and deposition costs. Decl. ¶ 54. "[C]ourts normally grant expense requests in common fund cases as a matter of course." *Gonzalez v. TCR Sports Broadcasting Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (citations omitted). The Court should thus approve Class Counsel's request for costs to be included in the Attorneys' Fees and Costs Payment.

## VI. CONCLUSION

Plaintiff respectfully requests the Court grant the relief as set forth in the proposed Final Approval Order, attached hereto as ***Exhibit E***.

---

[8] "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The remaining *Johnson* factors—the undesirability of the case, time limitations imposed, and nature of relationship with the client—are either neutral or overlap with the previously discussed factors.

**CERTIFICATE OF COUNSEL PURSUANT TO LOCAL RULE 7.1(a)(3)**

Counsel for Plaintiff conferred with counsel for Costco, and Costco does not oppose the relief requested in this Motion.

Dated: January 15, 2023.

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow FBN 121452
Jonathan M. Streisfeld FBN 117447
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: 954.332.4200
ostrow@kolawyers.com
streisfeld@kolawyers.com

Geoffrey Stahl FBN 89240
Steven Calamusa FBN 992534
**GORDON & PARNTERS, P.A.**
4114 Northlake Blvd.
Palm Beach Gardens, FL 33410
Telephone: 561.799.5070
gsthal@fortheinjured.com
scalamusa@fortheinjured.com

*Counsel for Plaintiff and the Settlement Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jeff Ostrow*
Jeff Ostrow